## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | **Chapter 11** |
| THE EDUCATION RESOURCES INSTITUTE, INC., ) | **Case No. 08-12540(HJB)** |
| ) | |
| Debtor. ) | |

## ASSENTED TO MOTION OF DEBTOR THE EDUCATION RESOURCES INSTITUTE, INC., FOR ORDER AUTHORIZING DEBTOR TO REJECT AND TERMINATE CERTAIN EXECUTORY CONTRACTS AND FOR ORDER APPROVING SETTLEMENT UNDER FED.R.BANKR.P. 9019 OF CLAIMS AND DISPUTES OVER THE CONSEQUENCES THEREOF
[RBS CITIZENS, N.A. – LOAN ORIGINATION AND GUARANTY AGREEMENTS]

The Education Resources Institute, Inc., the debtor and debtor in possession in the

above-captioned case ("TERI" or the "Debtor"), respectfully submits this Motion (the

"Motion") seeking an order under Fed.R.Bank.P. 9019 and Sections 363, 365 and 503 of the

Bankruptcy Code: (a) authorizing the rejection and termination of its existing Loan

Origination Agreements and Guaranty Agreements with RBS Citizens, N.A. (successor in

interest to Charter One Bank, N.A., Albank, and Citizens Bank of Rhode Island)

("Citizens"); (b) approving a settlement between TERI and Citizens by which Citizens will

release certain post-petition administrative claims in exchange for TERI's release of its post-

petition guaranty fees which would otherwise secure Citizens' claim; and (c) approving a

certain "Transition Agreement" (as said term is defined in paragraph 16, below) for the

orderly termination and wind down of loan programs, which seeks to minimize adverse

consequences  to qualified applicants whose loans are in the "Pipeline".  Citizens assents to

the relief requested in the Motion.

The Debtor seeks to reject and terminate all existing Loan Origination Agreements (referred to herein as "Loan Origination Agreements or "LOAs") and Guaranty Agreements (referred to herein as the "Guaranty" or "Guarantees") with Citizens, including but not limited to those agreements identified on Exhibit A attached hereto (the "Terminated Contracts"). Citizens contends that the Terminated Contracts were automatically terminated by TERI's chapter 11 filing. While TERI is not prepared to concede that issue, TERI has determined that it is in the Debtor's best interest to terminate the Terminated Contracts on the terms and conditions set forth herein, without prejudice to the position of Citizens, TERI or any party in interest on the issue of automatic termination. Consequently, TERI hereby moves the Court for authority to reject the Terminated Contracts (to the extent that they are subject to assumption or rejection); moves the Court for approval of TERI's settlement with Citizens by which Citizens will release certain asserted administrative claims as provided herein and TERI will release its rights to post-petition guaranty fees relating to Pipeline Loans (as that term is defined below); and moves the Court to authorize and approve TERI's proposed Transition Agreement with Citizens in order to effectuate an orderly wind down, rejection and termination of the Terminated Contracts.[1] The issue of whether the contracts are terminated on the Petition Date or on the effective date of the Order approving this Motion is reserved, and may never be consequential to the Debtor, as the agreements contained in this Motion will likely render the issues moot. In support of this Motion, the Debtor respectfully represents as follows:

---

[1] TERI and Citizens agree that any obligations of either party that may arise under the Terminated Contracts upon "termination" will be superseded by the contemplated Transition Agreement, and shall not constitute post-petition obligations of TERI that could give rise to any administrative claim against the Debtor's estate, except as expressly provided the Transition Agreement.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §1334. This

is a case proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court

pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief sought herein

are sections 105(a), 363, 365 and 503 of title 11 of the United States Code (the "Bankruptcy

Code" or the "code"). Federal Rules of Bankruptcy Procedure ("FRBP") 2002, 6004, 6006

and 9019 apply to this Motion as does Local Bankruptcy Rule of the United States

Bankruptcy Court for the District of Massachusetts ("Local Rule") 9019-1.

## BACKGROUND

2.     On April 7, 2008 (the "Petition Date"), the Debtor commenced its bankruptcy

case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the

Bankruptcy Code.

3.     The Official Committee of Unsecured Creditors in this Chapter 11 Case (the

"Creditors' Committee") was appointed on April 30, 2008. No trustee or examiner has been

appointed in this Chapter 11 Case.

4.     The Debtor is operating its business and managing its property as a debtor in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     Founded in 1985, the Debtor is a nonprofit organization incorporated under

Massachusetts General Laws, chapter 180, located in Boston, Massachusetts. TERI provides

education opportunities for all through its college access and loan guarantee activities. TERI is a

national leader in promoting strategies for improving college access. The Debtor manages

college access programs that target low-income individuals and those who are the first

generation in their families to attend college. These programs are designed to raise student and

adult aspirations to include college and other post-secondary education and provide guidance and information directly to students and their families on planning and paying for college. The Debtor is also the managing director of the Pathways to College Network, an alliance of over 30 nonprofit organizations and funders committed to advancing college access and success for underserved students.

6.      TERI's loan guarantee programs help students close the gap between education costs and their other resources such as financial aid, federal student loans, savings and family support. TERI is the oldest and largest guarantor of private (non-government) student loans with more than $18 billion in outstanding guarantees. TERI brings together lenders, schools, students and families to make available low-cost, high quality financing for postsecondary education.

### BASIS FOR RELIEF REQUESTED

7.      The Debtor seeks to reject and terminate the Terminated Contracts and to resolve certain rights, claims and disputes pertaining to the consequences of the rejection and termination, without prejudice to any contention that the Terminated Contracts terminated automatically on the Petition Date. The Debtor and Citizens are parties to each of the Terminated Contracts. The Terminated Contracts are integral components of certain student loan programs funded by Citizens, and include, among other agreements: (a) LOAs by which TERI underwrites and originates student loans, (b) Guarantees by which TERI guarantees all of Citizens' subject student loans in order to enhance the creditworthiness of the loans and to make them more saleable and liquid in the securities market; (c) Note Purchase Agreements with The First Marblehead Corporation ("FMC") by which FMC purchases, securitizes and sells the student loans to special purpose entities ("SPEs"); and (d) various security, servicing, and marketing agreements (the operative documents are generally referred to as

the "Program Agreements," which collectively (and as amended) embody loan "Programs,"
as those terms are defined in the Terminated Contracts). [2]

8.      The Debtor is party to numerous agreements with Citizens that govern the
terms of the Programs and the making of loans pursuant to the Programs ("Program
Loans"). The Programs are student loan origination, funding, guaranty and servicing
arrangements that anticipate that, in most cases, Program Loans will be sold to FMC for
resale to SPEs. Each Program Guaranty serves as the foundation for the Program LOA and
for the Program Note Purchase Agreements.  Under the Program LOAs, the Debtor acts as
the agent of Citizens for the purpose of evaluating loan applications and disbursing student
loans in accordance with the Program Guidelines (as that term is defined in the Program
Documents) and procedures.  As an integral part of the Loan Programs, the Debtor
guarantees payment of each Program Loan pursuant to the terms and conditions of the
Guarantees between the Debtor and Citizens.

9.      In return for the Debtor's Guarantees of payment of the student loans, the
Debtor receives guaranty fees which are specified in the Guarantees. Prior to the Petition
Date, on funding of a Program Loan, an initial portion of the guaranty fees (generally 1.5%
of principal) were paid to TERI and became part of the Debtor's general funds, and the
balance of the accrued guaranty fees was deposited into a segregated account pledged to
Citizens to secure the Debtor's obligations under the Guarantees ("Pledged Accounts").
When the Program Loans were securitized and sold, the guaranty fees held in the Pledged
Account would be transferred to Pledged Accounts held by the SPE.  When the credit
markets were disrupted in 2007, FMC stopped securitizing Program Loans; a portion of

---

[2] Certain "Full Recourse Agreements" between TERI and Citizens are not subject to this Motion and are not being
rejected by the Debtor.

TERI's revenues dependent on securitization ceased flowing; TERI's credit rating was downgraded in March 2008; and, ultimately, TERI commenced the Chapter 11 Case.

10.     Before the Petition Date, the Debtor subcontracted the origination function (the processing of applications and disbursement of loans) to First Marblehead Education Resources, Inc. ("FMER"), but the fees paid to TERI under the Terminated Contracts with Citizens do not cover FMER's charges to TERI of performing the origination services. Consequently, the Debtor currently loses money on Citizens' loan originations. Further, since FMC has not been purchasing and securitizing the Program Loans, a portion of TERI's guaranty fees which are payable only on securitization have not been payable to TERI. As a result, the Debtor advised Citizens that it desired to reject and terminate the Terminated Contracts. TERI believes that rejection and termination of the Terminated Contracts is in the best interest of the estate, because those contracts are burdensome to TERI and are unnecessary for TERI's contemplated reorganization under Chapter 11 of the Bankruptcy Code.

11.     Citizens has maintained that the Terminated Contracts are not capable of assumption under Section 365 of the Code insofar as the Terminated Contracts are contracts to extend financial accommodations under Section 365(c)(2) and personal services contracts under Section 365(c)(1). Consequently, Citizens contends that the Terminated Contracts terminated automatically by their terms on the Petition Date since the usual invalidation of so-called bankruptcy *ipso facto* termination clauses found in §365(e)(1) does not, by virtue of §365(e)(2), apply to personal service contracts or contracts to make financial accommodations. TERI has not conceded this issue or the effect of such a determination. TERI has asserted the position that the Terminated

Agreements are agreements that may be rejected and that Citizens would not have a basis
to assert an administrative claim under any circumstance.

12. As stated above, Citizens and the Debtor reserve their rights and positions on
issues of whether the Terminated Contracts were terminated as of the Petition Date or are
subject to rejection, which dispute will be rendered moot by the allowance of this Motion.

13. TERI has determined that it is in the best interests of TERI and its estate to
seek rejection and termination of the Terminated Contracts, to settle any post-petition
administrative claims that could be asserted by Citizens and to agree with Citizens as to
consequences of termination. As set forth herein, TERI and Citizens have agreed to settle
their dispute on Citizens' post-petition administrative claims and Citizens' rejection
damages, and have also agreed on the terms and conditions of a wind down of loan
programs in order to minimize disruption to the operations of both the Debtor and Citizens
and in order to minimize the adverse consequences to qualified student loan applicants.

14. On and after the Petition Date, and in the ordinary course of its business,
TERI has originated and guaranteed, and Citizens has funded, Program Loans based on
applications submitted both before and after the Petition Date ("Pipeline Loans"[3]). TERI's
guaranty fees in respect of Pipeline Loans (other than with respect to "Refinance Loans")
have to date been placed in the Pledged Account, and will be disbursed to Citizens[4] upon

---

[3] The term Pipeline Loans will include all Citizens loans funded after the Petition Date whether or not the
application was submitted prior to the Petition Date and will include loans funded after approval of this motion with
respect to applications submitted prior to the Termination Date (as defined below). The term Pipeline Loans will
also include "Refinance Loans" funded by Citizens as contemplated under the Supplement to the Guaranty and Loan
Origination Agreements with Citizens as successor to Charter One Bank /ALBANK dated as of November 1, 2004,
(and any amendments or similar agreements) that are submitted prior to the Termination Date, provided, however,
that the Transition Agreement shall address the date when Citizen's obligation to fund Refinance Loans shall cease.
Guaranty fees associated with Refinance Loans have not been placed in a Pledged Account. Since the Petition Date,
TERI has been paid approximately $50,813 in guaranty fees relating to Refinance Loans, which amount would be
repaid to Citizens upon approval of this Motion.
[4] The pre-petition guaranty fees in the Pledged Account will not be affected by this Motion.

approval of this Motion, as set forth in paragraph 15, below. Citizens has agreed with
TERI to continue to fund Pipeline Loans based on qualified applications submitted prior to
an agreed date of August 2, 2008, or such earlier date as the parties may agree with respect
to certain loan programs (the "Termination Date"). This agreement will minimize the
disruption to TERI's operations, will minimize potential impact on qualified applications
submitted prior to the Termination Date, and will permit TERI to wind down the
Terminated Contracts in an orderly and reasonable fashion.

15.    In addition, TERI and Citizens have agreed to settle Citizens' alleged post-
petition administrative claim for Citizens loans originated and/or guaranteed by TERI from
and after the Petition Date. In exchange for TERI waiving and releasing any and all claims
by TERI for post-petition guaranty fees on Pipeline Loans (including any guaranty fees for
Refinance Loans), Citizens has agreed to waive and release any post-petition administrative
claim under Section 503 of the Code on the Guaranty of the Pipeline Loans. Since all
guaranty fees (other than relating to Refinance Loans) would have otherwise been placed in
the Pledged Account as collateral for TERI's obligations to Citizens, and since Citizens has
indicated that it will assert an administrative claim under Section 503 of the Code, above
and beyond the post-petition guaranty fees in the Pledged Account, TERI believes that this
settlement is beneficial to the estate because it relieves the estate of a potential
administrative claim in exchange for the waiver of guaranty fees that may not be due for an
indefinite period of time, if at all. It is not clear that future defaults of Pipeline Loans
would result in Guaranty claims in excess of guaranty fees, but TERI has determined that it
is more efficient and beneficial at this juncture to compromise what is not likely a material
benefit to the estate. This would eliminate administrative claims that could arise and the

need for potentially costly litigation regarding TERI's objections to any such claims and any related estimation hearings. Without prejudice to the parties positions on the application of Sections 365 and 503, TERI and Citizens have agreed that TERI shall waive, relinquish and release to Citizens all guaranty fees for any Pipeline Loan; such released Pipeline Loan guaranty fees shall therefore be deemed not to be property of the estate, as that term is defined in Section 541(a) of the Code, and as that term is used in 362(a).[5] No Guaranty shall apply to the Pipeline Loans, and Citizens shall have no recourse to TERI in respect of any Pipeline Loan except as provided in the Transition Agreement.

16.     Citizens and the Debtor will also cooperate to minimize disruption to borrowers as a consequence of the rejection and termination of the Terminated Contracts and to provide for ongoing servicing of Program Loans which are funded prior to the Termination Date. The parties will submit a transition agreement or stipulation (the "Transition Agreement") to the Court as a condition to entry of the order on this Motion, which will incorporate, as appropriate, the termination provisions contained in the Terminated Contracts; will include provisions for the dismantling of the application process and other termination mechanics; and will contain such other agreements between Citizens and TERI as are appropriate for the wind down of the Terminated Contracts.

17.     Operative on the date eleven (11) days following entry of the Court's order approving this Motion, with no appeal having been filed (the "Effective Date"):

        (a)     Citizens releases and waives (i) any and all claims for damages arising from termination and rejection of all Loan Origination Agreements, but shall retain all pre-petition claims under the Guarantees, and any security agreements and other

---

[5] As such, upon approval of this Motion, Citizens shall be entitled to withdraw the Pipeline Loan guaranty fees from the Pledged Accounts, for Citizens' benefit.

Program documents; (ii) all post-petition administrative claims on account of TERI's

Guaranty of any Pipeline Loan by Citizens; and (iii) any and all claims arising from

accrued interest charges credited to Program Loan borrower's account balances

under the Program Loans due to delays in Program Loan disbursements resulting

from certain Program Loan disbursement checks drawn by the Debtor not having

been honored by the Debtor's drawee bank during the month of April 2008, which

waiver shall be limited to the maximum amount of $35,000, with any excess over

$35,000 to be reimbursed by the Debtor to Citizens within two business days

following the Effective Date.

     (b)    Citizens will continue to deliver to TERI information concerning

Program Loans identified as Servicer Data Requirements in the exhibits to certain

Guarantees. The confidentiality provisions of the Program Agreements shall apply to

such information, as shall the other termination provisions contained in the

Terminated Contracts, except to the extent modified by the Transition Agreement.

     (c)    Except as provided in paragraph 17(a) above, the Motion does not waive,

release, relinquish or otherwise compromise any other claim, obligation, collateral,

agreement, right or any defense that either party may have against or with respect to the

other, including, without limitation, any claims for performance of guaranty obligations

and obligations concerning indemnities, warranties, intellectual property, confidentiality

and/or any pre-petition claims under Section 502, 506 or any other provision of the Code;

provided, however, that any such claim asserted by Citizens shall be deemed to be (i) a

secured claim to the extent that such claim is secured by the pre-petition Pledged

Accounts pursuant the Program Agreements and (ii) otherwise, a general unsecured claim.

## APPLICABLE AUTHORITY

18.     Section 105(a) of the Bankruptcy Code provides, in relevant part as follows: "(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  Section 105 permits the court to grant the relief embodied in this Motion that implicates §§363 and 365.

19.     Section 363(b) of the Bankruptcy Code, provides, in relevant part as follows: "(b)(1)The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  The court should approve the use, sale or lease of property where there is sound business reason to justify it.  *See In re Aerovox, Inc.,* 269 B.R. 74, 80 (Bankr. D. Mass. 2001) ("Section 363(b) of the Bankruptcy Code provides that a 'trustee [or debtor-in-possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate,' 11 U.S.C. § 363(b), when a sound business purpose justifies such action."); *In re Continental Airlines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986) (same).  *In re Ionosphere Clubs, Inc.,* 98 B.R. at 175 ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances.").  Here, the Debtor seeks to use its property to enter into the Transition Agreement in order to permit a smooth transition upon rejection and termination of the Terminated Contracts.

20. Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract." The rejection of an executory contract by a debtor is subject to review under the business judgment standard. *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993); *Eagle Ins. Co. v. BankVest Capital Corp. (In re BankVest Capital Corp.)*, 290 B.R. 443, 447 (B.A.P. 1st Cir. 2003) ("Under a motion to assume or reject an executory contract, the only issue properly before a court is whether the assumption or rejection of the subject contract is based upon a debtor's business judgment" (citations omitted)). If the debtor's business judgment has been reasonably exercised, a court should approve the rejection of an unexpired contract. *See, e.g., NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *Group of Institutional Investors v. Chicago Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943); *Eagle Ins. Co. v. BankVest Capital Corp. (In re BankVest Capital Corp.)*, 360 F.3d 291, 302 (1st Cir. 2004) ("[I]f a debtor wants to assume [a contract] in its business judgment...the debtor should be allowed to do so." (citation omitted)); *Sharon Steel Corp. v. National Fuel Gas Distribution*, 872 F.2d 36, 39-40 (3d Cir. 1989).

21. In applying the "business judgment" standard, courts show great deference to a debtor's decision to reject. *See In re Aerovox, Inc.*, 269 B.R. at 80 ("[A] debtor's business decision 'should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" (citation omitted)); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding court approval of a debtor's

decision to assume or reject an executory contract "should be granted as a matter of course (absent extraordinary circumstances)").

22.     In the exercise of the Debtor's business judgment, it is no longer in the Debtor's best interests to maintain the Terminated Contracts. The Debtor's obligations under the Terminated Contracts constitute a potential burden to the Debtor's estate and could arguably give rise to additional and potentially substantial administrative claims if the Terminated Contracts are not promptly rejected and terminated in the orderly fashion contemplated by this Motion. Further, at this stage of the Chapter 11 case, the Debtor cannot – and does not wish to, in the exercise of its business judgment – commit its assets to support guaranty obligations for post-petition loans which cannot be securitized, while at the same time exposing itself to claims that may be asserted by lenders that TERI's guaranty obligations are expenses of administration. Accordingly, it is in the Debtor's best interest to wind down the Program Loans with Citizens in an agreed and orderly manner, which will eliminate the potential administrative claims by Citizens which are described in paragraph 17(a) and will minimize the financial commitments of, and burden upon, the Debtor and its estate. In addition, while the Debtor does not concede the issue, the Terminated Contracts and the other documents that embody the student loan programs, are at least arguably contracts to make financial accommodations which cannot be assumed by virtue of §365(c)(2) of the Bankruptcy Code. Consequently, TERI may be compelled to reject such contracts or may be forced to acquiesce to termination pursuant to §365(e)(2) of the Bankruptcy Code. *See Steele v. Boutiette (In re Boutiette)*, 168 B.R. 474, 480 (Bankr. D. Mass.1994) (section 365 "exempt[s] *ipso facto* clauses from invalidation in contracts that extend loans, debt financing or financial accommodations." ).

23. In TERI's business judgment, by authorizing rejection of the Terminated
Contracts and approving the transition Agreement between Citizens and TERI, the Court will
enable TERI to avoid a dispute with Citizens on whether or not the Terminated Contracts are
financial accommodation contracts, a proposition for which Citizens asserts substantial
support. *See Transamercia Commercial Fin. Corp. v. Citibank N.A. (In re Sun Runner
Marine, Inc.)* 945 F.2d 1089, 1092 (9th Cir.1991); *John Deere Co. v. Cole Bros. Inc. (In re
Cole Bros., Inc.)*, 154 B.R. 689 (W.D. Mich. 1992); *Boutiette, supra*, at 481; *In re
Whiteprize, LLC*, 275 B.R. 868 (Bankr. D. Ariz. 2002); *In re Twin City Power Equipment,
Inc*, 308 B.R. 898 (Bankr. C.D. Ill. 2004). As this court noted in *Boutiette*, "[t]he language
of the statute seems to contemplate a broader definition of 'financial accommodations' than
merely extending credit or making new loans." *Id*. at 481. Where the LOAs and Guarantees
between Citizens and TERI are clearly an indispensable means of financing the loans to
students and are integral components of the Program Agreements, such an arrangement may
constitute a financial accommodation within the meaning of section 365(c)(2). *Whiteprize*,
*supra*, at 874 (quoting *Sun Runner*). *See also Twin City*, *supra,* at 900-901.

24. By rejecting the Terminated Contracts, settling potential administrative claims
arising from the LOAs and the Guaranty of the Pipeline Loans, and agreeing on the
consequential terms described above, the Debtor minimizes unnecessary administrative
expenses, minimizes disruption to borrowers, minimizes disruption to the Debtor's business
operations and prospects, minimizes injury to third party student loan applicants and obtains
a release of certain claims by Citizens against the Debtor. Accordingly, the Debtor believes
that the rejection of the Terminated Contracts, the settlement with Citizens, and the
Transition Agreement are in the best interests of the Debtor's estate and its creditors.

25.     The Motion includes a settlement and compromise of controversies between

the Debtor and Citizens in respect of the agreement on the wind down of the Terminated

Contracts, the wind down of the Programs, the Debtor's release and waiver of any guaranty

fees due on Pipeline Loans in exchange for Citizens' release and waiver of any alleged

administrative claim on the TERI Guarantees of the Pipeline Loans, and Citizen's release

and waiver of up to $35,000 of interest charges. Bankruptcy Rule 9019(a) expressly

permits a debtor in possession to compromise and settle claims, subject to approval by the

bankruptcy court. *See* Fed. R. Bankr. P. 9019(a). The legal standard for determining the

propriety of a bankruptcy settlement is whether the settlement is in the "best interests of

the estate." *In re 110 Beaver St. Partnership*, 244 B.R. 185, 187 (Bankr. D. Mass. 2000)

("The burden is on the trustee to demonstrate that the compromise is in the best interest of

the estate and should therefore be approved." (citations omitted)); *In re Energy Coop. Inc.,*

886 F.2d 921, 927 (7th Cir. 1989) ("The benchmark for determining the propriety of a

bankruptcy settlement is whether the settlement is in the best interests of the estate." (citation

omitted)); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 523 (S.D.N.Y. 1993). To

determine that a settlement is in the best interests of the estate, a court must find that the

settlement is "fair and equitable." *Protective Comm. for Indep. Stockholders of TMT*

*Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Boston & Providence R.R.*,

673 F.2d 11, 12 (1st Cir. 1982); *In re Purofied Down Prod. Corp.*, 150 B.R. at 523.

26.     The settlement need not be the best that the debtor could have obtained.

Rather, the settlement must fall within the range of reasonableness. *See In re 110 Beaver*

*St. Partnership*, 244 B.R. at 188 ("[T]he Court has an independent obligation to satisfy

itself that the proposed compromise falls above 'the lowest possible point in the range of

reasonableness.'" (citation omitted); *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir.

1983); *In re Int'l Distribution Centers, Inc.*, 103 B.R. 420, 423 (S.D.N.Y. 1989) ("Indeed, a

court may approve a settlement even if it believes that the Trustee ultimately would be

successful.").

27.     Ultimately, the determination whether the proposed settlement is in the best

interest of creditors and the estate or is fair and equitable lies within the discretion of the

court. *See Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995) ("The approval of a

compromise is within the sound discretion of the bankruptcy judge..." (citation omitted));

*In re Hibbard Brown & Co., Inc.,* 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) ("The decision to

grant or deny a settlement or compromise lies squarely within the discretion of the bankruptcy

court" (citation omitted)); *In re Purofied Down Prods. Corp.*, 150 B.R. at 522 ("A

Bankruptcy Court's decision to approve a settlement should not be overturned unless its

decision is manifestly erroneous and a 'clear abuse of discretion.'") (citation omitted).

Moreover, the bankruptcy court may exercise its discretion "in light of the general public

policy favoring settlements." *In re Hibbard Brown & Co., Inc*., 217 B.R. at 46.

## NOTICE

28.     The Debtor has served notice of this Motion on (i) the Office of the United

States Trustee for the District of Massachusetts, (ii) Citizens, (iii) FMER, (iv) FMC, (v) U.S.

Bank National Association, (v) State Street Bank and Trust Company, (vi) proposed counsel to

the Creditors' Committee, (vii) the members of the Creditors' Committee and (vii) all parties that

have requested notice and service of pleadings in this case.  The Debtor believes that the

foregoing constitutes adequate notice of this motion is required, and of any objection date and

hearing date, and requests this Court to approve such notice, as adequate, in accordance with

FRBP Rule 2002(i).

## **COURT APPROVAL**

29.     Upon entry, the Order on this Motion shall be effective immediately as a final

order for purposes of 28 U.S.C. § 158(a)(1) and the Order shall be binding upon and

enforceable against the estate and the parties hereto, and upon their respective successors and

assigns, including any subsequently appointed trustee under Chapter 11 or 7 of the Code.

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting (i) the

relief requested herein and (ii) such other and further relief as is just and proper.

Respectfully submitted,

THE EDUCATION RESOURCES INSTITUTE, INC.

May 28, 2008                          By its attorneys,

/s/ Christopher J. Panos
CRAIG AND MACAULEY
   PROFESSIONAL CORPORATION
Christopher J. Panos (BBO# 555273)
Kathleen A. Rahbany (BBO# 654322)
Craig and Macauley
   Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 367-9500
fax (617) 742-1788

-and-

GOODWIN PROCTER LLP
Daniel M. Glosband (BBO# 195620)
Gina Lynn Martin (BBO# 643801)
Goodwin Procter LLP
Exchange Place
Boston, Massachusetts 02109
(617) 570-1000
fax: (617) 523-1231

Assented To:
RBS Citizens N.A.
By its attorneys,

/s/ Paul S. Samson
RIEMER & BRAUNSTEIN LLP
Steven T. Greene (BBO#210000)
Paul S. Samson (BBO#440160)
Three Center Plaza
Boston, Massachusetts 02108
(617 880-3555
Fax (617) 692-3555

## EXHIBIT A

### Loan Origination Agreements and Guaranty Agreements[1]

Each of the following Loan Origination Agreements and Guaranty Agreements is included as a Terminated Contract:

1. (a) Loan Origination Agreement dated February 15, 2005, between TERI and Charter One Bank, N.A. (the "Charter One Core Loan Program") (including loans in "Charter One Bank Alternative Loan Program," "E-Loan Private Loan Program," "Collegiate Solutions Alternative Loan Program," "Axiom Alternative Loan Program," "ThinkFinancial Alternative Loan Program," "ING Direct," "Student Loan Financial Group," "Priority Student Loans," "Omnis Student Loans," "Gradesaver LLC," "Student Loan Xpress," "American Student Loan Corporation," "NBuy Associates," "National Lending Associates," "UPromise," and "College Board").

   (b) Guaranty Agreement dated February 15, 2005, between TERI and Charter One Bank, N.A. (the "Charter One Core Loan Program") (including loans in "Charter One Bank Alternative Loan Program," "E-Loan Private Loan Program," "Collegiate Solutions Alternative Loan Program," "Axiom Alternative Loan Program," "ThinkFinancial Alternative Loan Program," "ING Direct," "Student Loan Financial Group," "Priority Student Loans," "Omnis Student Loans," "Gradesaver LLC," "Student Loan Xpress," "American Student Loan Corporation," "NBuy Associates," "National Lending Associates," "UPromise," "College Board," and "Private Student Loan Consolidation Program").

2. (a) Loan Origination Agreement dated April 30, 2004, between TERI and Citizens Bank of Rhode Island ("Citizens Core Loan Program") (including loans in "Compass Bank," "FinanSure (Graduate Loan Center)," "Navy Federal," "Southwest," and "Xanthus").

   (b) Guaranty Agreement dated April 30, 2004, between TERI and Citizens Bank of Rhode Island ("Citizens Core Loan Program") (including loans in "Compass Bank," "FinanSure (Graduate Loan Center)," "Navy Federal," "Southwest," and "Xanthus").

3. (a) Loan Origination Agreement dated December 29, 2003, between TERI and Charter One Bank, N.A. ("AAA Southern New England Bank Alternative Loan Program").

   (b) Guaranty Agreement dated December 29, 2003, between TERI and Charter One Bank, N.A. ("AAA Southern New England Bank Alternative Loan Program").

4. (a) Loan Origination Agreement dated October 31, 2003, between TERI and Charter One Bank, N.A. ("AES EducationGAIN Loan Program").

   (b) Guaranty Agreement dated October 31, 2003, between TERI and Charter One Bank, N.A. ("AES EducationGAIN Loan Program").

---

[1] Each reference to an agreement includes any and all supplements and/or amendments to that agreement.

1

5. (a) Loan Origination Agreement dated March 25, 2004, between TERI and Charter One Bank, N.A. ("Charter One Start Education Loan Program," subsequently rebranded as the Astrive and AstriveAlliance Loan Programs) (including loans in "Simple Tuition," "ConnectEdu," and "careerbuilder d/b/a Findtuition.com").

   (b) Guaranty Agreement dated March 25, 2004, between TERI and Charter One Bank, N.A. ("Charter One Start Education Loan Program," subsequently rebranded as the Astrive and AstriveAlliance Loan Programs) (including loans in "Simple Tuition," "ConnectEdu," and "careerbuilder d/b/a Findtuition.com").

6. (a) Loan Origination Agreement dated May 15, 2002, between TERI and Charter One Bank, N.A. ("CFS Direct to Consumer Loan Program").

   (b) Guaranty Agreement dated May 15, 2002, between TERI and Charter One Bank, N.A. ("CFS Direct to Consumer Loan Program").

7. (a) Loan Origination Agreement dated May 10, 2004, between TERI and Charter One Bank, N.A. ("Edfinancial Loan Program").

   (b) Guaranty Agreement dated May 10, 2004, between TERI and Charter One Bank, N.A. ("Edfinancial Loan Program").

8. (a) Loan Origination Agreement dated September 20, 2003, between TERI and Charter One Bank, N.A. ("M&I Alternative Loan Program").

   (b) Guaranty Agreement dated September 20, 2003, between TERI and Charter One Bank, N.A. ("M&I Alternative Loan Program").

9. (a) Loan Origination Agreement dated November 17, 2003, between TERI and Charter One Bank, N.A. (the "National Education Loan Program (IDAPP)").

   (b) Guaranty Agreement dated November 17, 2003, between TERI and Charter One Bank, N.A. (the "National Education Loan Program (IDAPP)").

10. (a) Loan Origination Agreement dated May 15, 2002 (executed May 16, 2002), between TERI and Charter One Bank, N.A. ("NextStudent Loan Program").

    (b) Guaranty Agreement dated May 15, 2002 (executed May 16, 2002), between TERI and Charter One Bank, N.A. ("NextStudent Loan Program").

11. (a) Loan Origination Agreement dated June 30, 2003, between TERI and Charter One Bank, N.A. ("Citibank Flexible Education Loan Program" or "CFELP" (amended on September 30, 2003 to add "Citibank Education Assistance Loan Program" or "CEALP") (terminated on September 15, 2005 to terminate agreement as it relates to loans under CFELP).

    (b) Guaranty Agreement dated June 30, 2003, between TERI and Charter One Bank, N.A. (CFELP (amended on September 30, 2003 to add CEALP) (terminated on September 15, 2005 to terminate agreement as it relates to loans under CFELP).

2

12. (a) Loan Origination Agreement dated April 14, 1999, between TERI and
Albank ("Refinance Program").

   (b) Guaranty Agreement dated April 14, 1999, between TERI and Albank ("Refinance
Program").

13. (a) Loan Origination Agreement dated September 15, 2003, between TERI and Charter One
Bank, N.A. ("HESC North Texas Loan Program").

   (b) Guaranty Agreement dated September 15, 2003, between TERI and Charter One Bank,
N.A. ("HESC North Texas Loan Program").

14.     Guaranty Agreement dated October 1, 2002, between Citizens Bank of Rhode Island and
TERI ("PENN State Private Source Loan Program").

15. (a) Guaranty Agreement dated as of February 25, 2000, between TERI and Citizens
Bank of Rhode Island (including loans in the legacy portfolio and "IEFC")

   (b) Loan Origination Agreement dated as of February 25, 2000, between TERI and Citizens
Bank of Rhode Island (including loans in the legacy portfolio and "IEFC")

The following Loan Origination Agreements and Guaranty Agreements appear to have been
terminated prior to the Petition Date but, to the extent that any such agreement was not so terminated, it is
included as a Terminated Contract:

16. (a) Guaranty Agreement dated May 15, 2002, between TERI and Charter One Bank, N.A.
("AMS Tuition Pay Diploma Loan Program").

   (b) Loan Origination Agreement dated May 15, 2002, between TERI and Citizens ("AMS
Tuition Pay Diploma Loan Program").

17. (a) Guaranty Agreement dated May 15, 2002, between TERI and Charter One Bank, N.A.
("Education Assistance Services Alternative Loan Program").

   (b) Loan Origination Agreement dated May 15, 2002, between TERI and Charter One
Bank, N.A. ("Education Assistance Services Alternative Loan Program").

18. (a) Guaranty Agreement dated July 1, 2002, between TERI and Charter One Bank, N.A.
("College Loan Corporation Alternative Loan Program").

   (b) Loan Origination Agreement dated July 1, 2002, between TERI and Charter One
Bank, N.A. ("College Loan Corporation Alternative Loan Program").

19. (a) Guaranty Agreement dated July 15, 2002, between TERI and Charter One Bank,
N.A. ("GMAC Alternative Loan Program").

   (b) Loan Origination Agreement dated July 15, 2002, between TERI and Charter One
Bank, N.A. ("GMAC Alternative Loan Program").

20. (a)  Guaranty Agreement dated September 20, 2002, between TERI and Charter One
Bank, N.A. ("Southwest Student Services Corporation").

   (b)  Loan Origination Agreement dated September 20, 2002, between TERI and Charter
One Bank, N.A. ("Southwest Student Services Corporation").

21. (a)  Guaranty Agreement dated December 4, 2002, between TERI and Charter One
Bank, N.A. ("Comerica Bank").

   (b)  Loan Origination Agreement dated December 4, 2002, between TERI and Charter
One Bank, N.A. ("Comerica Bank").

22. (a)  Guaranty Agreement dated March 17, 2003, between TERI and Charter One Bank,
N.A. ("PNC Bank").

   (b)  Loan Origination Agreement dated March 17, 2003, between TERI and Charter One
Bank, N.A. ("PNC Bank").

23. (a)  Guaranty Agreement dated May 1, 2003, between TERI and Charter One Bank, N.A.
("Student Assistance Foundation of Montana").

   (b)  Loan Origination Agreement dated May 1, 2003, between TERI and Charter One
Bank, N.A. ("Student Assistance Foundation of Montana").

24. (a)  Guaranty Agreement dated May 15, 2003, between TERI and Charter One Bank,
N.A. ("Navy Federal Credit Union").

   (b)  Loan Origination Agreement dated May 15, 2003, between TERI and Charter One
Bank, N.A. ("Navy Federal Credit Union").

25. (a)  Guaranty Agreement dated May 15, 2003, between TERI and Charter One Bank,
N.A. ("Washington Mutual Bank, F.A.").

   (b)  Loan Origination Agreement dated May 15, 2003, between TERI and Charter One
Bank, N.A. ("Washington Mutual Bank, F.A.").

26. (a)  Guaranty Agreement dated May 15, 2003, between TERI and Charter One Bank,
N.A. ("Education Services Foundation").

   (b)  Loan Origination Agreement dated May 15, 2003, between TERI and Charter One
Bank, N.A. ("Education Services Foundation").

27. (a)  Guaranty Agreement dated July 15, 2003, between TERI and Charter One Bank,
N.A. ("Brazos Higher Education Service Corporation").

   (b)  Loan Origination Agreement dated July 15, 2003, between TERI and Charter One
Bank, N.A. ("Brazos Higher Education Service Corporation").

28. (a) Guaranty Agreement dated December 1, 2003, between TERI and Citizens
("Educredit (Creditron Financial Services) Program").

   (b) Loan Origination Agreement dated December 1, 2003, between TERI and Citizens
("Educredit (Creditron Financial Services) Program).

29. Guaranty Agreement dated March 26, 2004, between TERI and Charter One Bank,
N.A. ("Next Student Private Loan Consolidation Program").

1083990.2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| | ) | **Chapter 11** |
| **THE EDUCATION RESOURCES INSTITUTE, INC.,** | ) | **Case No. 08-12540(HJB)** |
| | ) | |
| Debtor. | ) | |
| | ) | |

ORDER AUTHORIZING THE EDUCATION RESOURCES INSTITUTE, INC.
TO REJECT AND TERMINATE CERTAIN EXECUTORY CONTRACTS AND
APPROVING SETTLEMENT UNDER FED. R. BANKR. P. 9019 OF CLAIMS AND
DISPUTES OVER THE CONSEQUENCES THEREOF
[RBS CITIZENS, N.A. – LOAN ORIGINATION AND GUARANTY AGREEMENTS]

Upon the motion of The Education Resources Institute, Inc., the debtor and debtor in

possession in the above-captioned case (the "Debtor"), seeking entry of an order (a) authorizing

the Debtor to reject and terminate its existing loan origination agreements and guaranty

agreements with RBS Citizens, N.A. ("Citizens"), (b) approving a settlement between the Debtor

and Citizens by which Citizens will release certain post-petition administrative claims in

exchange for the Debtor's release of its post-petition guaranty fees which would otherwise

secure Citizens' claim, and (c) approving a certain Transition Agreement for the orderly

termination and wind down of loan programs, which seeks to minimize adverse consequences to

qualified applicants whose loans are in the Pipeline (the "Motion")[1]; and upon the record of the

hearing on the Motion, the Court finds that: (i) the relief requested is in the best interests of the

Debtor's estate, its creditors and other parties in interest; (ii) this Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334; (iii) the Motion is a core proceeding pursuant to

28 U.S.C. § 157(b)(2); (iv) venue of this proceeding and the Motion is proper in this district

---

[1]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the
Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; (v) proper and adequate notice of the Motion and any

hearing thereon has been given and no other or further notice is necessary; and (vi) upon the

record herein, after due deliberation thereon, good and sufficient cause exists for the granting of

the relief as set forth herein.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED and APPROVED.

2.      Notice of the Motion as set forth in the Motion and herein is sufficient under the

circumstances.

3.      Effective immediately, and in accordance with the provisions of the Motion, the

Terminated Contracts are hereby rejected and terminated, without prejudice to Citizen's

contention that said Terminated Contracts are not capable of assumption under Section 365 of

the Code.

4.      The Transition Agreement in the form attached hereto as Exhibit A, is

APPROVED, effective immediately, and the Debtor is authorized to enter into the Transition

Agreement.

5.      Citizens shall continue to fund Pipeline Loans in accordance with the terms of the

Transition Agreement.

6.      The Debtor shall waive, relinquish and release to Citizens all guaranty fees for

any Pipeline Loan; and such released Pipeline Loan guaranty fees are hereby deemed not to be

property of the estate, as that term is defined in Section 541(a) of the Code, and as that term is

used in Section 362(a) of the Code.

7.      On the Effective Date, in accordance with the provisions of the Motion, Citizens

shall be deemed to have released and waived the following, and only the following: (i) any and

all claims for damages arising from termination and rejection of all Loan Origination

Agreements, but shall retain all prepetition claims under the Guarantees, and any security

agreements and other Program documents; (ii) all post-petition administrative claims on account

of the Debtor's Guaranty of any Pipeline Loans by Citizens; and, (iii) any and all claims arising

from accrued interest charges credited to Program Loan borrower's account balances under

the Program Loans due to delays in Program Loan disbursements resulting from certain

Program Loan disbursement checks drawn by the Debtor not having been honored by the

Debtor's drawee bank during the month of April 2008, which waiver shall be limited to the

maximum amount of $35,000, with any excess over $35,000 to be reimbursed by the Debtor

to Citizens within two business days following the Effective Date.

       8.     Citizens shall continue to deliver to the Debtor information concerning Program

Loans identified as Servicer Data Requirements in the exhibits to certain Guarantees. The

confidentiality provisions of the Program Agreements shall apply to such information, as shall

the other termination provisions contained in the Terminated Contracts, except to the extent

modified by the Transition Agreement.

       9.     Except as provided in numbered paragraph 8 above, nothing herein waives,

releases, relinquishes or otherwise compromises any other claim, obligation, collateral,

agreement, right or any defense that either the Debtor or Citizens may have against or with

respect to the other, or with respect to any other person or entity, including, without limitation,

any claims for performance of guaranty obligations and obligations concerning indemnities,

warranties, intellectual property, confidentiality or other prepetition claims under Sections 502,

506 or any other provision of the Code; provided, however, that any pre-petition claim asserted

by Citizens is hereby deemed to be (i) a secured claim to the extent that such claim is secured by

3

the prepetition Pledged Accounts pursuant to the Program Agreements and (ii) otherwise, a general unsecured claim.

10.     This Order is effective immediately as a final order for purposes of 28 U.S.C. § 158(a)(1) and this Order is binding upon and enforceable against the Debtor's estate, the Debtor and Citizens, and upon their respective successors and assigns, including any subsequently appointed trustee under Chapters 11 or 7 of the Code.

11.     This Court shall retain jurisdiction to interpret, enforce and implement the terms of this Order.

Dated: June __, 2008

_____
Honorable Henry J. Boroff
United States Bankruptcy Judge

4

## EXHIBIT A

[To be filed prior to hearing.]

1083489.3