## EXHIBIT A

## REDACTED TRANSITION SERVICES AGREEMENT

# TRANSITION SERVICES AGREEMENT

This Transition Services Agreement is dated as of May 30, 2008 (the "Agreement") between The Education Resources Institute, Inc., a Massachusetts non-profit corporation ("TERI"), The First Marblehead Corporation, a Delaware corporation ("FMC") and First Marblehead Education Resources, Inc. ("FMER"; together with FMC, the "FMC Entities").

WHEREAS, TERI and FMC, FMER and/or TERI Marketing Services, Inc. ("TMSI") are parties to several agreements, including (i) the Master Loan Guaranty Agreement dated as of February 2, 2001 (the "Guaranty Agreement"); (ii) the Master Servicing Agreement dated as of July 1, 2002 (the "MSA"); (iii) the Database Sale and Supplementation Agreement dated as of June 20, 2001 (the "Database Agreement"); (iv) the Marketing Services Agreement dated as of July 1, 2001 (the "Marketing Agreement" and together with the Guaranty Agreement, MSA, and Database Agreement, the "FMC Agreements");

WHEREAS, on April 7, 2008 (the "Petition Date"), TERI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court");

WHEREAS, TERI has informed FMC that it seeks to reject, pursuant to Section 365 of the Bankruptcy Code, the FMC Agreements and that TERI will request that the effective date of such rejection will be May 31, 2008, 11:59 p.m. (Eastern Time) and that this Agreement become effective as of June 1, 2008, 12:01 a.m. (Eastern Time) (the "Effective Date");

WHEREAS, upon the terms and subject to the conditions set forth herein, each of the parties hereto has agreed to provide or cause to be provided (in such capacity, the "Provider") to the other party (in such capacity, the "Recipient") certain transitional services on the terms set forth in this Agreement and the appendices hereto ("Appendices" and each an "Appendix");

WHEREAS, the parties seek for this Agreement to govern the provision of certain Services (defined below) for the term of this Agreement beginning on the Effective Date and agree that the parties shall cooperate with one another to have the Motion seeking rejection of the FMC Agreements and approval of this Agreement approved by the Bankruptcy Court as soon as practicable;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I

## SERVICES PROVIDED

1.1   Services. Upon the terms and subject to the conditions set forth in this Agreement (including the Appendices hereto), Provider will provide or cause to be provided each of the services (collectively, the "Services") described in the Appendices hereto (each of which Appendix sets forth, among other things: (i) a description of the Services to be rendered, the provider of such Services and the recipient of such Services; (ii) the period during which such

Services will be provided (the "Time Period"); (iii) the cost or charges for providing such Services and the arrangements for payment thereof; (iv) the procedures necessary to cancel such Services; and (v) the person to whom notices and communications regarding such Services should be given).

    1.2    Level of Services. Provider shall generally provide the Services in substantially the same manner and of the same quality and standards as it generally performs comparable services consistent with past practices but shall not be obligated in connection with its performance of the Services to: (i) hire any additional employees, consultants or independent contractors; (ii) maintain the employment of any specific current employees, consultants or independent contractors; (iii) maintain any specific level of staffing; or (iv) purchase, lease, or license any additional equipment, software, facility or other asset or property. The Services shall be further subject to the terms and conditions of any agreements between Provider and any third party, as well as any terms and conditions set forth in the Appendices.

    1.3    Reimbursement for Services. In full compensation for the Services, Recipient shall pay Provider the charges and costs for providing Services (determined in accordance with the applicable Appendix) within fifteen (15) days after receipt of Provider's monthly invoice therefor unless payment is required more often or in advance pursuant to any such Appendix. The Recipient shall not be required to pay for any meetings with management, other assistance or consultation provided by any employees or consultants of the Provider during the terms of this Agreement unless the applicable Appendix specifically identifies and/or charges for the costs of such services. All payments will be made in U.S. dollars. Each invoice shall set forth in reasonable detail the calculation of the charges and costs upon which the amount to be reimbursed is based, broken down by the Services rendered during the period to which such invoice relates.

    1.4    Conditions Precedent. Notwithstanding anything herein to the contrary, the effectiveness of this Agreement is subject to the satisfaction of the following conditions precedent:

(a) TERI shall have paid to FMER all amounts due under the MSA through May 31, 2008 on or before June 23, 2008;

(b) TERI will have obtained from the Bankruptcy Court no later than three (3) business days following the hearing date set by the Bankruptcy Court, and in no event later than June 30, 2008, a final order in a form and substance reasonably acceptable to FMC (i) acknowledging the first priority security interests of the Trusts (defined below) in the pledged accounts (including all assets and funds in such accounts) established for such Trusts pursuant to the various guaranty agreements and deposit and security agreements by TERI in favor of such Trusts, and (ii) authorizing and directing TERI to honor its obligations under such guaranty agreements and deposit and security agreements to purchase defaulted loans using cash collateral in the pledged accounts established for the benefit of the following securitization trusts (collectively, the "Trusts"): The National Collegiate Trust-2001-CP1; The National Collegiate Student Loan Trust 2001 AR 1, 2, 3; The National Collegiate Trust 2002-CP1; The National Collegiate Student Loan Trust 2003-1; The National Collegiate Student Loan Trust 2004-1; The National Collegiate Student Loan Trust 2004-2; The National Collegiate Student Loan Trust 2005-1; The National Collegiate Student Loan Trust 2005-2; The National Collegiate Student Loan

LIBC/3315992.1

Trust 2005-3; The National Collegiate Student Loan Trust 2006-1; The National Collegiate Student Loan Trust 2006-2; The National Collegiate Student Loan Trust 2006-3; The National Collegiate Student Loan Trust 2006-4; The National Collegiate Student Loan Trust 2007-1; The National Collegiate Student Loan Trust 2007-2; The National Collegiate Student Loan Trust 2007-3; and The National Collegiate Student Loan Trust 2007-4;

(c) The Bankruptcy Court shall have entered a final order in form and substance reasonably acceptable to FMC approving this Agreement by June 30, 2008.

1.5  Term. Subject to the terms hereof, this Agreement shall become effective as of the Effective Date and shall terminate on July 31, 2008 (or such later date specified in any Appendix), provided, however, that TERI shall have the right to extend this Agreement (a) for one additional 30 day period provided that it gives written notice of such election to extend in accordance with the provisions of Section 3.1 hereof no later than July 15, 2008 and (b) for a second 30 day period subject to the consent of FMC (not to be unreasonably withheld) provided that TERI gives written notice of such election to extend in accordance with the provisions of Section 3.1 hereof no later than August 12, 2008. Notwithstanding the foregoing or any contrary language in this Agreement or any Appendix, TERI may, upon ten (10) business days notice to FMC, cancel and terminate any specific Service or all of the Services specified in any Appendix hereto with no effect on any other Service or Appendix. FMC may, upon three (3) business days notice to TERI, terminate this Agreement or any Specific Service in the event of breach by TERI of Section 1.3 of this Agreement if such breach is not cured within three (3) business of receipt of such notice. TERI shall not be excused from paying any monies due to or earned by Provider prior to the effective date of termination.

## ARTICLE II

## DATA TRANSFER

2.1 The FMC Entities agree, at TERI's sole cost determined according to Appendix D, and subject to the conditions set forth herein, to provide TERI with the data comprising the Loan Database (as defined in the Database Agreement) to the extent such data is or has been received by TERI solely in connection with its business as a loan guarantor and is stored, maintained or held by FMER and is data owned by TERI and a copy of the data identified on Appendix E hereto, certain of which data may be included in, and shall constitute a part of, the Loan Database. FMER will provide such data as soon as practicable but in any event on or before July 31, 2008. FMC and/or FMER will deliver the data in machine readable form where appropriate, otherwise in printed form. TERI shall be responsible for any and all data transformation and transport within the TERI infrastructure to make the data usable for TERI's purposes. TERI shall not be entitled to any software, application or other system owned or developed by or licensed by the FMC Entities-, or any proprietary information of FMC.

Notwithstanding the rejection or other termination of the Database Agreement, (i) FMER shall continue to possess all right, title and interest in and to the Delivered Database (as defined in the Database Agreement), including the right to use and possess the Delivered Database and the right to share the data with FMC, to disclose the data to others, to copy and manipulate the data and generally to exercise ownership of the Delivered Database and all modifications and

LIBC/3315992.1

enhancements thereof and (ii) the Loan Database transferred from FMER to TERI pursuant to Section 2.1 of this Agreement shall remain subject to sections 2.01 (Grant), 2.02 (FMER Restrictions) and 2.03 (TERI Restrictions) of such Database Agreement and any and all additional terms of the Database Agreement that pursuant to section 10.01 of the Database Agreement survive termination of such agreement and remain in full force and effect.

Subject to section 3.11, TERI hereby acknowledges and agrees that the FMC Entities have paid all amounts due under the Database Agreement as of the date hereof and that no fees shall be due after the date hereof for any Updates or Queries (each as defined in the Database Agreement), and TERI is no longer obligated to furnish any.

2.2  To the extent not prohibited by applicable law, regulation, rule or contract-, and notwithstanding the definition of Excluded Data under the Database Agreement, TERI hereby grants to FMC and FMER-a non-exclusive, fully paid and perpetual right and license to use the following data solely for "fraud prevention purposes" data in the case management systems, the last 13 months of the "ALE" data and data in the internal fraud table from the Capstone system (the "Fraud Data"). TERI will use reasonable efforts to (a) cooperate with any requests by FMER to third parties for consent to the use of the Fraud Data and (b) to otherwise facilitate the use of the Fraud Data by FMER.

## ARTICLE III

## MISCELLANEOUS

3.1.  <u>Notices and Communications</u>.  All notices and communications provided for herein shall be deemed to have been duly given if delivered to the persons noted in the applicable Appendix or by notification via electronic mail or overnight delivery, to Willis J. Hulings, President and Chief Executive Officer (hulings@teri.org) and Amy W. Bizar, General Counsel (bizar@teri.org) of TERI, Park Square Building, 31 St. James Avenue, 4th Floor, Boston, MA 02116 and Jack L. Kopinsky, President, Chief Executive Officer and Chief Operating Officer (jkopnisky@firstmarblehead.com) and Peter B. Tarr, Chairman and General Counsel (ptarr@firstmarblehead.com) of FMC, Prudential Tower, 800 Boylston Street, 34th Floor, Boston, MA 02199.

3.2.  <u>Successors and Assigns</u>.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, including any trustee appointed in TERI's chapter 11 or in any chapter 7 proceeding; provided that neither TERI nor FMC may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the consent of the other; and provided further that no permitted transfer or assignment will relieve the transferring or assigning party of its obligations under this Agreement.

3.3.  <u>No Third Party Rights</u>.  Nothing contained in this Agreement is intended to confer any rights or benefits on any Person other than the parties hereto.

LIBC/3315992.1

3.4. <u>Governing Law and Jurisdiction</u>. This Agreement shall be construed in accordance with and governed by the law of the Commonwealth of Massachusetts, without giving effect to the conflicts of law rules of such state.

3.5. <u>Force Majeure</u>. Neither party shall be liable to the other party for its failure or delay in performing its obligations hereunder (other than its obligation to pay money) due to any contingency beyond such party's control including, without limitation, acts of God, fires, floods, wars, acts of war, sabotage, terrorism, accidents, labor disputes (whether or not such disputes are within the power of the party to settle), shortages, governmental laws, ordinances, rules or regulations (whether valid or invalid), inability to obtain power, materials, equipment or transportation and any other similar contingency (each a "<u>Force Majeure Event</u>").

3.6. <u>Headings</u>. The descriptive headings used in this Agreement are inserted for convenience of reference only and shall in no way be construed to define, limit, describe, explain, modify, amplify, or add to the interpretation, construction or meaning of any provision of, or scope or intent of, this Agreement nor in any way affect this Agreement.

3.7. <u>Indemnity</u>. TERI and FMC respectively will indemnify, defend and hold each other harmless from and against any and all claims, demands or suits (by any person or entity), losses, liabilities, damages (but excluding any consequential, special, indirect, punitive or incidental damages), obligations, payments, costs and expenses (including, without limitation, the costs and expenses of any and all actions, suits, proceedings, assessments, judgments, settlements and compromises relating thereto and reasonable attorneys' fees and reasonable disbursements in connection therewith) to the extent the foregoing are not covered by insurance (each, an "Indemnifiable Loss"), asserted against (a) TERI or (b) FMER and/or FMC by an unrelated third party relating to, resulting from or arising out of any breach by TERI or FMER and/or FMC, respectively, of this Agreement; provided, however, that the indemnity provided to TERI by FMC shall not exceed in scope the indemnity provided under the MSA.

3.8. <u>Severability</u>. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or any other jurisdiction, and this Agreement shall be reformed, construed and enforced in such jurisdiction so as to best give effect to the intent of the parties under this Agreement.

3.9. <u>Counterparts</u>. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto were upon one and the same instrument.

3.10. <u>Amendments; No Waivers</u>.

(a) Any provision of this Agreement may be amended or waived (including any term set forth in any Appendix hereto) if, and only if, such amendment or waiver is in

writing and signed, in the case of an amendment, by TERI and FMC, or in the case of a waiver, by the party against whom the waiver is to be effective.

(b) No failure or delay by either party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

3.11 Reservation of Rights. Notwithstanding anything herein to the contrary, nothing herein shall limit or otherwise affect any claims, rights or remedies of FMC, FMER, TMSI, or any of their affiliates that such entities may have against TERI or any of its affiliates, including without limitation all claims, rights or remedies arising from or in connection with the rejection of the FMC Contracts, all of which claims, rights and remedies are preserved. TERI reserves any claims, rights or remedies that it may have against the FMC entities, including without limitation, its rights in respect of the balance of the Database Note, as defined in the Database Agreement, of approximately $3,168,000.

3.12 Non-Solicitation. During the term of this Agreement and for a period of six (6) months thereafter, neither party shall hire or solicit the employment of a then-actively employed employee of the other who has participated in the provision of services hereunder (an "Engaged Party"). This prohibition shall not apply if such employment results from a general circulation advertisement. If either party hires an Engaged Party in violation of the foregoing restriction, such party shall pay to the other party as liquidated damages an amount equal to three hundred and fifty (350) times the party's standard hourly billing rate (or hourly wage rate) for the Engaged Party, which amount is intended to compensate the party for its loss, including all costs and expenses that may be incurred by the party in replacing such employee. Each party agrees and acknowledges that the restrictions and amounts of damages set forth in this Section are reasonable and necessary in order to protect the party's legitimate business interests.

3.13 Survival. Article II shall survive termination of this agreement.

LIBC/3315992.1

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

**THE EDUCATION RESOURCES INSTITUTE, INC.**

By: s/William G. Davidson, Jr.
Name: William G. Davidson, Jr.
Title: Senior Vice President and CFO


**THE FIRST MARBLEHEAD CORPORATION**

By: s/Kenneth Klipper
Name: Kenneth Klipper
Title: Senior Vice President


**FIRST MARBLEHEAD EDUCATION RESOURCES, INC.**

By: s/Kenneth Klipper
Name: Kenneth Klipper
Title: Senior Vice President

<u>Appendix A</u>

PIPELINE LOANS

| | |
|---|---|
| DESCRIPTION: | Any and all services related to the collection, evaluation, administration, approval or denial, processing and funding of student loans pursuant to which an application was received pursuant to any existing loan program on or before the later of (i) the termination of this Agreement pursuant to Section 1.5 and (ii) the date that is 60 days after all lenders suspend or terminate loan programs with TERI ("Pipeline Loans").  To the extent that any such services are provided after the termination of this Agreement, TERI will pay for those services on the same terms as if the Agreement remained in effect. |
| PROVIDER: | FMER |
| TIME PERIOD: | The earlier of (i) the termination of this Agreement pursuant to Section 1.5 and (ii) the date that is 60 days after all lenders suspend or terminate loan programs with TERI. |
| COST: | FMER will charge TERI a fee equal to the amount of the Origination Fee that the lender is obligated to pay TERI pursuant to its existing agreement with TERI. |
| CONTACT: | Anne P. Bowen |

<u>Appendix B</u>

MULTIPLE DISBURSEMENTS

| | |
|---|---|
| DESCRIPTION: | A portion of certain student loans are disbursed in multiple segments. FMER tracks and ensures that multiple disbursements are made to the proper borrower or educational institution at the proper time. |
| PROVIDER: | FMER |
| TIME PERIOD: | FMER has agreed to provide this service with respect to (i) any loan which had its first disbursement prior to May 31, 2008 and (ii) any loan for which an application is received on or after May 31, 2008 and for which FMC has received the fee described in Appendix A to this Agreement. Such disbursements may extend beyond the termination of the Agreement. |
| COST: | No Cost |
| CONTACT: | Anne P. Bowen |

<u>Appendix C</u>

COLLECTION ACTIVITIES

FMER will perform certain activities with respect to collection of TERI-guaranteed loans as set forth in this Appendix C. TERI-guaranteed loans that have been purchased by the Trusts prior to default are referred to herein as the "Securitized Loans". All other TERI-guaranteed loans are referred to herein as the "Non-Securitized Loans." As a condition precedent to FMER's obligations under this Appendix C, TERI agrees that it will continue to remit payments owed to collection agencies (i) for post-default services, which amounts the collection agencies generally net out of recoveries being remitted to TERI; (ii) for loan rehabilitation services, which amounts TERI withholds from the purchase proceeds for such loans (i.e. amounts paid by the Trusts to TERI for the purchase of rehabilitated loans) and remits directly to the collection agencies; and (iii) for default prevention services with respect to Non-Securitized Loans to the extent such services are being managed by FMER pursuant to this Appendix C.

DESCRIPTION: Claims Processing and Review

FMER will continue to review the claims packages to ensure that a "Guaranty Event" has occurred, that the applicable lender has complied with all of its obligations with regard to the servicing and origination of the loan.

PROVIDER: FMER

TIME PERIOD: June 1, 2008 – July 31, 2008, unless extended pursuant to Section 1.5 hereof.

COST: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Same charge for Securitized Loans, but payable only by the offsets described in the Debtors Motion for Order Pursuant to Sections 105, 362 and 363 of the Bankruptcy Code Authorizing Debtor Honor Certain of its Guaranty Obligations and Purchase Defaulted Loans Using Cash in certain Pledged Accounts Established for the Benefit of the Trusts ("Motion to Pay Trust Claims")

CONTACT: Anne P. Bowen

4

LIBC/3315992.1

| | |
|---|---|
| DESCRIPTION: | Default Prevention |
| | Refers to collection activities designed to prevent a loan from defaulting. |
| PROVIDER: | FMER |
| TIME PERIOD: | June 1, 2008 – July 31, 2008, unless extended pursuant to Section 1.5 hereof. |
| COST: | █████████████ Same charge for Securitized Loans, but payable only by the Offsets described in the Motion to Pay Trust Claims. |
| CONTACT: | Anne P. Bowen |
| DESCRIPTION: | Post-Default Collections |
| | Costs of oversight and administration of the efforts to collect on defaulted loans. |
| PROVIDER: | FMER |
| TIME PERIOD: | June 1, 2008 – July 31, 2008, unless extended pursuant to Section 1.4 hereof. |
| COST: | ███████████████████████ |
| CONTACT: | Anne P. Bowen |

5

LIBC/3315992.1

## Appendix D

## INFRASTRUCTURE

The Information Technology services provided under this Appendix D shall be provided by FMC and/or FMER in a reasonable manner consistent with past service level agreements. Neither FMC nor FMER makes any further representation or warranty with regard to the services to be provided hereunder and specifically disclaims any implied warranty of fitness for a particular purpose.

"Acceptance" of FMC and/or FMER deliverables hereunder shall occur no later than the fifth business day following the date such deliverables are provided. In the event TERI notifies FMC or FMER of any deficiencies within five (5) business days of the date such deliverables are provided, FMC and/or FMER shall attempt to resolve such deficiencies, subject to the terms and conditions of the Agreement and Appendix D. In no event shall FMC and/or FMER have any obligation to TERI after the later of (i) "acceptance" of any deliverable hereunder and (ii) the expiration or termination of this Agreement.

Applications shall be maintained for TERI in a "Run Only" mode. Operating capacity shall be provided at the same level provided immediately prior to the effective date of this Agreement. Except as requested by TERI and agreed to in writing by FMC, neither FMC nor FMER shall be required to develop source code and system changes will be made only as necessary to fix malfunctioning or nonfunctioning systems or system components. FMC may in its sole discretion accept or reject any request for source code development or system enhancements. All services to be provided hereunder, including any agreed-upon projects requiring source code development or system enhancements, will be performed in accordance with the policies, procedures and processes of FMC and/or FMER.

TERI acknowledges and agrees that it shall be solely responsible for the provision of services from third parties following the term of this Agreement, including without limitation the identification of appropriate vendors, negotiation of agreements with such third parties and all related costs, including costs of purchase and transfer or delivery by FMC or FMER. Except as may otherwise be provided in this Appendix D, neither FMC nor FMER shall have any obligation or liability to TERI with respect to the provision of services from third parties by TERI, including without limitation with respect to software and equipment licensing, web hosting and domain name registration, networks, "Right to Use" agreements, outsourcing, ASP relationships, or timesharing. Neither FMC nor FMER shall be held responsible for any delays in transition service delivery caused by TERI or any third party providers to TERI, FMC or FMER.

Nothing in this Agreement or Appendix D shall require FMC or FMER to maintain permanent internal or external network connectivity on behalf of TERI, and TERI acknowledges that FMC and FMER intend to terminate any such connectivity following the termination of this Agreement (or upon termination of the Services listed in this Appendix D, if earlier). At all times during the term of this Agreement, TERI and each of its employees, consultants and agents shall (i) comply with all state, federal and local acts, statutes, rules, regulations and published

guidelines concerning the security, confidentiality, handling, disclosure, use and protection of consumer or customer information and (ii) adhere to FMC's policies and standards regarding information technology and security, including acceptable email and internet use and the Information Security Policy of FMC.

<u>DESCRIPTION</u>:   IT Support

TERI shall acquire and deploy all hardware and operating infrastructure related to operating its environment and shall not acquire any assets from FMC and/or FMER, including but not limited to desktops/laptops, WAN/LAN, switches, network services, PBX and phones, hand-held devices (including PDA devices and mobile phones), physical network, firewalls and security appliances, operating systems or office support software. Following the term of this Agreement (or upon termination of the Services listed in this Appendix D, if earlier), TERI shall return, or have returned, to FMER all equipment as to which FMC and/or FMER has an ownership or leasehold interest, including without limitation all desktops/laptops, phones, hand-held devices (including PDA devices and mobile phones), network equipment and computer peripherals.

During the term of this Agreement and subject to the terms of this Appendix D, FMC shall provide:

Continued availability of current internal and external network connectivity, including external access to the existing applications hosted for TERI back-office business processes, administrative and college access business processes

Continued availability of the following websites:

www.teri.org - S&M website hosted by FMER

www.tericollegeplanning.org - S&M website hosted by FMER

www.coachprogram.org - S&M website hosted by FMER

www.thinkcollegeearly.com - S&M website hosted by FMER

www.bhep.org - S&M website hosted by FMER

www.pathwaystocollege.net - College Access website hosted by web.com

http://teri.webexone.com/login.asp?loc=&link= - Intranet hosted by Webex

http://www.williamsprinting.com/admin/login.asp  - Fulfillment Website

7

1 wiki website at Brockton hosted by icdsoft.com

Continued availability of current Window's domain, services and server applications supporting user authentication, printing, file storage, intranet, email, backups and electronic fax

Continued availability of existing user workstations (and/or laptops) with their legally licensed software, to the extent previously installed and supported by FMC and/or FMER

Continued availability of existing internal and external (in bound and out bound) phone and fax service including toll free services

Continued availability of existing computer peripherals including network and local printers, directly attached scanners, and connectivity for printing/scanning for leased reprographic business hubs

Continued availability of current wireless service and associated wireless telephone and PDA devices – including replication with email and scheduling to Messaging server

Continued availability of current logical and physical security for the foregoing

| | |
|---|---|
| PROVIDER: | FMC |
| TIME PERIOD: | June 1, 2008 through July 31, 2008, unless earlier terminated pursuant to Section 1.5 of this Agreement or extended pursuant to Section 1.5 hereof. In the event of termination of this Agreement, FMC shall have no further obligation to provide any services under this Appendix D. |
| CONTACT: | Richard Ross |
| DESCRIPTION: | Business Applications |

Continued availability, including maintenance of existing interfaces for, HR and Payroll transactions

Hosting of, and/or continued availability, including maintenance of existing interfaces for, Finance and Accounting software for transactions, reporting and budgeting

8

Continued availability, including maintenance of existing interfaces for, data and provision of files and systems in support of TERI's risk management function

Continued availability, including maintenance of existing interfaces for, college-related contact management data for the TERI sales force.

| | |
|---|---|
| PROVIDER: | FMC |
| TIME PERIOD: | June 1, 2008 through July 31, 2008, unless earlier terminated pursuant to Section 1.5 of this Agreement or extended pursuant to Section 1.5 hereof. In the event of termination of this Agreement, FMC shall have no further obligation to provide any services under this Appendix D. |
| CONTACT: | Richard Ross |
| DESCRIPTION: | Business Processes |

Delivery by FMER and/or FMC to TERI in machine readable format or otherwise in printed form of:

- all file-server based TERI end-user electronic files
- all SharePoint based TERI end-user electronic files
- all MS Exchange Data (emails, contacts, calendars) of TERI employees, to the extent permitted by law.

FMC and FMER agree to the logical deletion by FMC and FMER of the foregoing TERI end-user electronic files and MS Exchange Data, to the extent permitted by law. TERI acknowledges and agrees that it shall have no right to request, and FMC or FMER shall have no further obligation to deliver, any such data following logical deletion by FMC and/or FMER.

FMER and/or FMC shall cooperate in good faith with TERI regarding the independent provision by TERI of:

- Voice and data service provided by Verizon
- Web hosting and domain name registration in situations in which FMC and/or FMER have agreements for websites that were procured for TERI's benefit including delivery in machine readable format of static web pages and client side scripts.
- Agreements for HRMS and Payroll services, including delivery in machine readable format or otherwise in printed form of all related current and historic TERI data

- Agreements for Finance and Accounting software, including delivery in machine readable format or otherwise in printed form of all related current and historic TERI data, accompanied by relevant file format descriptors, data dictionary and relevant end-user documentation necessary to consume the files, in each case to the extent such materials exist as of the date hereof and FMC and/or FMER has the right to transfer such materials.

FMC and FMER agree to the logical deletion by FMC and FMER of the foregoing current and historic TERI data, to the extent permitted by law. TERI acknowledges and agrees that it shall have no right to request, and FMC or FMER shall have no further obligation to deliver, any such data following logical deletion by FMC and/or FMER.

FMER and/or FMC shall cooperate in good faith with TERI regarding the independent provision by TERI of:

- Agreements for salesforce.com software, including delivery in machine readable format or otherwise in printed form of all related current and historic college-related contact management data, accompanied by relevant file format descriptors, data dictionary and relevant end-user documentation necessary to consume the files, in each case to the extent such materials exist as of the date hereof and FMC and/or FMER has the right to transfer such materials.

| | |
|---|---|
| PROVIDER: | FMC |
| TIME PERIOD: | June 1, 2008 through July 31, 2008, unless earlier terminated pursuant to Section 1.5 of this Agreement or extended pursuant to Section 1.5 hereof. In the event of termination of this Agreement, FMC shall have no further obligation to provide any services under this Appendix D. |
| CONTACT: | Richard Ross |
| COST: | The following shall apply to all services provided under this Appendix D: |

[redacted]

---

1 The monthly rate will be adjusted to reflect any termination of services or of the Agreement during a month."



Neither FMC nor FMER shall engage any third parties with respect to services to be provided hereunder without (i) providing TERI with a written statement describing the nature and scope of such engagement, together with a cost estimate, and (ii) TERI's prior written approval. TERI shall provide any approval or disapproval of such engagement as soon as practicable and in no event later than the second business day following delivery by FMC and/or FMER of such written statement. TERI shall reimburse FMC and/or FMER for the costs of any third-party engagement approved by TERI, unless the parties otherwise agree in writing.

FMC and/or FMER shall provide services set forth in Section 2.1 of the Agreement on a time and materials basis.

FMC and/or FMER will provide enhancement services as requested by TERI and agreed to by FMC on a time and materials basis.

11

LIBC/3315992.1

<u>Appendix E</u>

Two years of data derived from AES's MR-50 and MR-53 reports, as well as comparable data from loan servicers other than AES to which TERI is entitled under its guaranty agreements with lenders

A copy of data housed in the ALE

A copy of data housed in the RMS

A copy of data housed in the Orig APP FMER systems

A final update to the Guaranty Access Database

A copy of the data and results of the validation study