UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In re )<br>)<br>THE EDUCATION RESOURCES INSTITUTE, INC., )<br>)<br>Debtor. )<br>) | Chapter 11<br>Case No. 08-12540(HJB) |

AFFIDAVIT OF EILEEN MORRIS IN SUPPORT OF MOTION FOR ORDER
AUTHORIZING DEBTOR TO ENTER INTO STIPULATION FOR THE
TERMINATION OF CERTAIN OF THE DEBTOR'S STUDENT LOAN PROGRAMS
AND SETTLEMENT OF CERTAIN CLAIMS RELATING THERETO

I, Eileen Morris, hereby depose and state as follows:

1. I am the Controller and Director of Financial Management of The Education Resources Institute, Inc. ("TERI" or the "Debtor"). I have held that position since May, 2006. TERI filed its voluntary petition for relief under chapter 11 of Title 11 of the United States Code on April 7, 2008 (the "Petition Date").

2. I have made due inquiry or have personal knowledge of the facts set forth herein.

3. I offer this affidavit with respect to the Motion for Order Authorizing Debtor to Enter Into Stipulation for the Termination of Certain of the Debtor's Student Loan Programs and Settlement of Certain Claims Relating Thereto (the "Chase Motion")[1]. Since the Chase Motion implicates its Pool Account, as defined below, the affidavit contains a broader explanation of the various accounts that contain Segregated Fees (as defined below) that serve as collateral for TERI's obligations to lenders.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

LIBC/3324589.7

4. The Debtor is a processor and guarantor of private student loans. Through a series of contracts with The First Marblehead Corporation and one or more of its corporate affiliates, including First Marblehead Education Resources, Inc. (collectively, "FMC"), various lenders and other financial institutions, the Debtor processes student loan applications, administers student loans, and provides a guaranty in respect of such loans. When a lender funds a student loan, the lender deposits the funds into one of the Debtor's loan origination accounts and FMC, acting as TERI's agent, issues the check or initiates the appropriate transfer to the borrower or the applicable educational institution at which the borrower is enrolled.

5. At the time that the student loan is funded (and in some instances, thereafter as well), the Debtor is paid a fee in consideration for issuing a guaranty of the loan (the "Guaranty Fee"). Prior to the Petition Date, most (but not all) lenders were parties to Note Purchase Agreements with FMC pursuant to which FMC purchased TERI-guaranteed loans for the purpose of selling them to special purpose entities ("SPEs") that, in turn, would sell certificates evidencing obligations of the SPEs that will be paid with proceeds of the loans. This process is commonly known as "securitization." Those lenders that made loans in anticipation of securitization required that a significant portion of the Guaranty Fees in respect of those loans be placed in a segregated collateral account (the "Segregated Fees"). When loans that have been funded are awaiting securitization, the Segregated Fees related to those loans are placed in a so-called pool account (a "Pool Account"). When the loans were securitized, TERI's guaranty was extended to guaranty the loans as now owned by the SPE and the Segregated Fees were transferred from the Pool Account to an account pledged to the SPE to secure TERI's guaranty obligations (a "Pledged Account").

6. Prior to January 1, 2008, FMC, acting on behalf of TERI, administered the Pool Accounts and Pledged Accounts, including tracking amounts held in such accounts and investments made in respect of such accounts. On January 1, 2008, the administration of the accounts was transferred to TERI.

7. Historically, each of the lenders had its own Pool Account subject to a Deposit and Security Agreement among TERI, FMC, the lender and U.S. Bank, N.A. (including its predecessor State Street Bank and Trust Company, the "Bank") under which TERI granted the lender a security interest in the Pool Account held at the Bank (the "DSA Security Documents"). The DSA Security Documents were intended to provide the lenders with control over the Pool Accounts for purposes of perfection of the security interest in the account. Historically, the Pool Accounts were held at the Bank, which was designated as the Collateral Agent pursuant to the DSA Security Documents. Either U.S. Bank, as Agent, or the particular lenders also filed UCC-1 financing statements with the Massachusetts Secretary of State in respect of the Pool Accounts and additional collateral described in the DSA Security Documents. I understand from counsel that a review of the documents and filings is in process to analyze whether the lenders identified in paragraph 8 below hold perfected security interests in the Pool Accounts and other collateral.

8. As of the Petition Date, each of the following lenders had its own Pool Account at the Bank: (1) Chase/Bank One; (2) Bank of America; (3) Sun Trust Bank; (4) HSBC Bank; (5) First National Bank Northeast; (6) GMAC; (7) National City Bank; (8) M&T (formerly All First)-MedBest Program and (9) Huntington Bank.

9. For reasons unknown to me, some lenders became part of a Joint Pool Account into which their Segregated Fees were deposited and in which they had a *pari passu* interest. As of the Petition Date, the following lenders shared in the Joint Pool Account: (1) Comerica Bank,

N.A.; (2) Insurbanc; (3) Keybank; (4) M&T Bank; (5) PNC Bank; (6) Sovereign Bank; (7) TCF Bank and (8) U.S. Bank. Each of these lenders was party to a Security Agreement with TERI and a Control Agreement with the Bank and FMC (the "Joint Security Documents"). The Joint Security Documents were intended to provide the lenders with control over the Joint Pool Account for purposes of perfection of the security interest in the account. Either U.S. Bank, as Agent, or the particular lenders also filed UCC-1 financing statements with the Massachusetts Secretary of State in respect of the Pool Accounts and additional collateral described in the Security Agreements. I understand from counsel that a review of the documents and filings is in process to analyze whether the lenders identified in this paragraph 9 hold perfected security interests in the Pool Accounts and other collateral.

10. Prior to the first calendar quarter of 2008, RBS Citizens/Charter One and Union Federal Savings Bank ("U.F.S.B.") participated in the Joint Pool Account and were parties to Joint Security Documents. Sometime during the first calendar quarter of 2008, RBS Citizens/Charter One and U.F.S.B each requested that their portion of Guaranty Fees held in the Joint Pool Account be moved to a separate Pool Account at each of the respective banks. Each of RBS Citizens/Charter One and U.F.S.B. had the right to withdraw the funds from the Joint Pool Account pursuant to Section 3(a) of their respective Control Agreements and TERI honored their requests.

11. As of the Petition Date, RBS Citizens Bank/Charter One and U.F.S.B. each maintained a Pool Account at its own bank. Each of RBS Citizens/Charter One and U.F.S.B are parties to Security Agreements with TERI as of March 31, 2008 and Blocked Account Agreements with TERI and FMC (the "Citizens/UFSB Security Documents"). The Citizens/UFSB Security Documents were intended to provide the lenders with control over the

new blocked account for purposes of perfection of the security interest in the account. I understand from counsel that a review of the documents is in process to analyze whether RBS Citizens Bank/Charter One and U.F.S.B hold perfected security interests in the blocked accounts.

12. Historically, JPMorgan Chase Bank, N.A. ("Chase") shared in the Joint Pool Account but Bank One, N.A. had its own Pool Account.

13. On or about July 1, 2004, Chase completed its merger with Bank One. Beginning on January 1, 2007, all Guaranty Fees in respect of student loans funded thereafter by Chase and/or Bank One that were guaranteed by TERI were deposited in the Chase/Bank One Pool Account.

14. No funds from the Joint Pool Account were transferred to Chase/Bank One's Pool Account as a result of the merger. Rather, as securitizations occurred, the Chase loans were sold to the securitization trusts and related Segregated Fees that had been in the Joint Pool Account were transferred to the appropriate securitization trust. All eligible Chase loans for which Segregated Fees resided in the Joint Pool Account have been securitized, with the last securitization occurring in September of 2007, and Chase no longer has an interest in the Joint Pool Account.[2]

15. As of March 31, 2008, when the Segregated Fees for student loans funded by RBS Citizens Bank/Charter One and U.F.S.B. were transferred from the Joint Pool Account to a Pool Account for the benefit of each applicable lender held at its respective institution, FMC calculated each participating lender's allocable share of the Joint Pool Account in accordance with the procedures set forth below.

---

[2] At the time of each securitization, only "eligible" loans were transferred. A loan may be deemed "not eligible" for securitization for various reasons including missing documentation, suspicion of fraud, death of borrower.

16. Because the Joint Pool Account was periodically accessed to fund defaulted loans for which Segregated Fees were held, "emptied" into a Pledge Account upon securitization, and "refilled" as new loans were made pending securitization, FMC maintained the account on a rolling basis and did not historically account for the *pari passu* interests of the individual participants. At any point in time, the Joint Pool Account might contain more than the amount of Segregated Fees to be transferred to the securitization trust (if earnings on the account exceeded defaults paid from the account) or might contain less (if defaults exceed earnings).

17. To accommodate the request of RBS Citizens/Charter One and U.F.S.B., FMC had to allocate the Joint Pool Account balance among the participant lenders. FMC performed the following calculation: FMC assumed that there would be a securitization of the loans that had been disbursed through February 29, 2008 and for which there were Segregated Fees. FMC calculated the amount of such loans and the Segregated Fees attributable to those loans from individual loan data maintained by its capital markets division. If a securitization had occurred based on that assumption, $82,181,141.16 would have been transferred to a Pledged Account in the ordinary course of FMC's maintenance of the Joint Pool Account (the "Transfer Amount"). The Transfer Amount was then compared to the balance of the Joint Pool Account as of February 29, 2008. As of February 29, 2008, the balances in the associated pool accounts, Joint Pool Account ($81,706,151.35) and legacy pool accounts ($282,838.03), totaled $81,988,989.38 (the "2/29/08 Balance"). Based on the amount of student loans that each lender had funded, its ratable share of the 2/29/08 Balance was determined. Attached hereto as Exhibit A is a schedule that reflects the allocation of the 2/29/08 Balance.

18. For RBS Citizens/Charter One and U.F.S.B. the allocable amount for each institution was transferred out of the Joint Pool Account into a Pool Account maintained at their respective institutions.

19. Based upon the allocation of the 2/29/08 Balance, the Debtor has tracked each lender's share of the Joint Pool Account from March 1, 2008 forward. That is, the Debtor has tracked by the individual lenders that make up the Joint Pool Account the cash received that was to become part of the Segregated Fees. Also from and after March 1, 2008, the Debtor tracked claims paid, by lender, from the Joint Pool Account and allocated earnings on the Joint Pool Account. All interest earned on the Joint Pool Account has been allocated based on the lender's percentage of the total balance of the Joint Pool Account at the time of the allocation. Attached hereto as Exhibit B is a schedule that reflects the activity in and allocation of the Joint Pool Account to May 31, 2008.

20. Attached as Exhibit C to this Affidavit is a Summary of Balances as of May 31, 2008 by lender, for each of the Debtor's separate Pool Accounts for those lenders that are not participants in the Joint Pool Account and for the Joint Pool Account.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 10, 2008

                                                                           s/ Eileen Morris
                                                                           Eileen Morris