UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS EASTERN DIVISION

------------------------------------------------------------ X
                                                             :
In re                                                        :    Chapter 11 Case
                                                             :    No. 08-12540 [HJB]
    THE EDUCATION RESOURCES                                  :
    INSTITUTE, INC.,                                         :
                                                             :
                    Debtor.                                  :
                                                             :
------------------------------------------------------------ X

# STIPULATION FOR THE TERMINATION OF CERTAIN OF THE DEBTOR'S STUDENT LOAN PROGRAMS AND SETTLEMENT OF CERTAIN CLAIMS RELATING THERETO

This Stipulation (this "Stipulation") has been entered into between The Education Resources Institute, Inc., as debtor and debtor in possession (the "Debtor"), and JPMorgan Chase Bank, N.A. ("Chase"), successor by merger to Bank One, N.A. ("Bank One"), itself a successor by merger to The First National Bank of Chicago ("FNBC").

## RECITALS

A.   Founded in 1985, the Debtor is a non-profit organization incorporated under Massachusetts General Laws, chapter 180, located in Boston, Massachusetts. The Debtor promotes access to higher education through various loan programs, including loan guarantee programs by which the Debtor originates private

A/72503614.16

student loans funded by third party banks, such as Chase, and guarantees the obligations of the borrowers under those loans.

B.  On April 7, 2008 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Court"). The Debtor is continuing to operate its student loan programs as debtor in possession.

C.  Chase is among the bank lenders participating in the Debtor's loan programs. Chase funded loans are originated and guaranteed by the Debtor under programs known as the Education One Loan Program, the Corporate Advantage Loan Program and the Campus One Loan Program (collectively, the "Loan Programs"). The documents evidencing the Loan Programs (the "Program Documents") are those described on <u>Exhibit A</u> hereto. Under the Program Documents, the Debtor originates private student loans funded and owned by Chase ("Program Loans"). In exchange for the payment of certain guarantee fees specified in the Program Documents, the Debtor guarantees payment of the Program Loans that default or otherwise experience a "Guaranty Event" (as defined in the Program Documents). The Program Loans originated and guaranteed by the Debtor have historically been sold by Chase to The First Marblehead Corporation ("FMC") or to a special purpose securitization entity formed and administered by FMC or its affiliates.

D.  A specified portion of the guarantee fees are, pursuant to the Program Documents, deposited into an account (the "Pledged Account") maintained at

2

A/72503614.16

U.S. Bank, N.A. ("U.S. Bank"). Pursuant to the Deposit and Security Agreement described on <u>Exhibit A</u> hereto, the Debtor has granted to U.S. Bank, as agent for Chase, a perfected security interest in the Pledged Account to secure payment of the Debtor's guaranty obligations. The security interest has been perfected by control pursuant to sections 8-106(d) and 9-106 of the Uniform Commercial Code. The balance in the Pledged Account as of June 30, 2008 was approximately $40,700,000.

E. FNBC or Bank One also funded certain loans (the "Legacy Loans") guaranteed by the Debtor pursuant to a Guaranty Agreement dated August 22, 1997, between the Debtor and FNBC or a Guaranty Agreement dated June 30, 1999, between the Debtor and Bank One (such Guaranty Agreements being collectively referred to as the "Legacy Loan Guaranty Agreements"). The balance of principal balance of the Legacy Loans as of the date hereof is approximately $12 million. There are no funds in the Pledged Account attributable to the Legacy Loans or other security granted in favor of Chase or its predecessors by the Debtor securing the Legacy Loans.

F. As of the Debtor's close of business on April 23, 2008 (the "Cut-off Time"), the Debtor ceased accepting applications for Program Loans under the Loan Programs, but the Debtor is continuing to process applications received before the Cut-off Time, and Chase intends to continue to fund Program Loans approved based on applications received by the Debtor before the Cut-off Time.

G. The Debtor and Chase have agreed, upon the terms and subject to the conditions set forth in this Stipulation, to terminate the Loan Programs and the

3

A/72503614.16

related Program Documents and to settle certain claims relating thereto and to the Legacy Loans.

H. The Debtor believes that the performance of this Stipulation will result in the reduction in the dollar amount of guaranty claims that could otherwise be asserted by Chase against the Debtors' estate in excess of the amount in the Pledged Account, while still affording to Chase the benefit of its perfected security interest in the Pledged Account.

I. The Court has the power under §§ 105(a), 362(d), 363(b) and 365 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9019 to authorize the entry of this Stipulation as an order of the Court and the performance of this Stipulation.

**NOW, THEREFORE**, in consideration of the foregoing Recitals and the promises herein, the parties stipulate and agree to the following:

1. **Termination and Limited Settlement**

    (a) **Termination of Certain Program Documents.** The Amended and Restated Loan Origination Agreement described on Exhibit A hereto is hereby terminated, subject to the continuing performance thereof by the Debtor and Chase for transition purposes to the extent provided in Section 5. Upon Chase's receipt in full of the funds in the Pledged Account pursuant to Section 1(b)(ii), the Amended and Restated Guaranty Agreement described on Exhibit A hereto shall terminate. Except as provided in this Stipulation and except for provisions of such Program Document that by their terms survive the termination of such Program Document,

4

A/72503614.16

neither the Debtor nor Chase shall look to the other for performance of such Program Document.

**(b)  Other Agreements of the Debtor.**

(i)  The Debtor hereby irrevocably and unconditionally waives and relinquishes any existing or future right or claim that it may have to payment of guarantee fees from Chase under the Program Documents.

(ii)  The Debtor hereby authorizes and instructs U.S. Bank, and U.S. Bank is hereby directed, within two business days following U.S. Bank's receipt of a copy of the order of the Court approving this Stipulation, to remit all of the funds in the Pledged Account to Chase pursuant to written funds transfer instructions provided by Chase to U.S. Bank. The automatic stay of § 362 of the Bankruptcy Code is hereby lifted to permit Chase to receive and retain for its own account all of the funds in the Pledged Account.

**(c)  Other Agreements of Chase.** Upon Chase's receipt in full of the funds in the Pledged Account, Chase agrees not to assert, and hereby waives and relinquishes, any further claims against the Debtor, on (i) Program Loans owned by Chase that are based upon a Guaranty Event (as defined in the Amended and Restated Guaranty Agreement described on Exhibit A hereto) and (ii) Legacy Loans owned by Chase that are based upon a Guaranty Event (as defined in the applicable Legacy Loan Guaranty Agreement).

2.  **Other Claims and Defenses.** Except as provided in Section 1, this Stipulation does not waive, relinquish or otherwise compromise any other claim, obligation, right or any defense that either party may have against or with respect to the

5

A/72503614.16

other, including, without limitation, any claims for performance of obligations concerning warranties, intellectual property, indemnification and confidentiality which by the terms of a Program Document terminated pursuant to Section 1 above survive the termination of such Program Document. Any claim by Chase against the Debtor arising solely on account of the Debtor's rejection of a Program Document as an executory contract in connection with the termination of the Program Document pursuant to Section 1 shall be a general unsecured claim.

3. **Student Loans Sold to FMC.** This Stipulation does not affect (a) any Program Loan that, prior to the date hereof, has been purchased from Chase by FMC or by any special purpose entity formed or administered by FMC or any of its affiliates, (b) any guaranty by the Debtor of such Program Loan or (c) any claim by Chase against the Debtor in connection with any repurchase by Chase of such Program Loan as required pursuant to the Amended and Restated Note Purchase Agreement described on Exhibit A hereto.

4. **Waived Interest Charges.** Upon Chase's receipt in full of the funds in the Pledged Account, Chase waives, up to the maximum aggregate amount of $20,000, any claim relating to accrued interest charges credited to Program Loan borrower account balances under the Program Loans, due to delays in Program Loan disbursements resulting from certain Program Loan disbursement checks drawn by the Debtor not having been honored by the Debtor's drawee bank during the month of April 2008. Within two business days following the date on which this Stipulation

becomes effective, the Debtor shall reimburse Chase for any amount by which such interest charges exceed $20,000.

5. **Transition Issues.** The Debtor shall continue to process, pursuant to the terms of the Program Documents, all Program Loan applications received by the Debtor before the Cut-off Time, and Chase shall continue to fund Program Loans that are approved under the Loan Programs and that, subject to Section 1(b)(i), are consistent with the Program Documents for which applications were received by the Debtor before the Cut-off Time. The Debtor shall continue to provide to Chase the standard lender daily data feed and other reporting that the Debtor has historically provided to Chase for all applicants whose Program Loan applications were received by the Debtor before the Cut-off Time. The Debtor's communications to Program Loan applicants whose applications are received after the Cut-off Time, to the effect that Chase is no longer accepting applications received by the Debtor at or after the Cut-off Time, shall be in form and substance reasonably satisfactory to Chase. The Debtor shall provide Chase with written notice upon completion of its obligations with respect to pending Program Loan applications received by the Debtor before the Cut-off Time.

6. **Court Approval.** This Stipulation will be promptly submitted by the Debtor for Court approval. This Stipulation shall be immediately effective upon entry of an order of the Court approving this Stipulation. Upon entry, the order shall be effective immediately as a final order for purposes of 28 U.S.C. § 158(a)(1), its effectiveness shall not be stayed pursuant to Bankruptcy Rule 6004(g) and this

7

A/72503614.16

Stipulation shall thereupon be binding upon the parties hereto and their respective successors and assigns.

7. **Retention of Jurisdiction**. The Court shall retain exclusive jurisdiction to enforce the provisions of this Stipulation and to reconcile any disagreement or inconsistency regarding the terms of this Stipulation.

8. **Entire Agreement**. This Stipulation shall constitute the entire agreement between the parties relating to the specific subject matter herein, supersedes any and all prior agreements, negotiations, representations and understandings, whether written or oral, between the parties and may not be released, supplemented or modified in any manner except by further written agreement signed by a duly authorized officer or representative of each of the parties. No breach of any provision hereof shall be waived unless consented to by both parties in writing. Waiver of any one breach of any provision or provisions hereof shall not be deemed to be a waiver of any other breach of the same or another provision hereof.

9. **No Admission of Liability**. This Stipulation is not an admission of any liability but is a compromise and settlement, and this Stipulation shall not be treated as an admission of liability. All communications (whether oral or in writing) between or among the parties, their counsel, or their respective representatives relating to, concerning or in connection with this Stipulation, or the matters covered hereby and thereby, shall be governed and protected in accordance with Rule 408 of the Federal Rules of Evidence and analogous provisions of the Massachusetts Rules of Evidence to

the fullest extent permitted by law. In the event that Court approval of this Stipulation is not obtained, this Stipulation shall be of no force or effect.

10. **Authorized Signatory**. The signatories hereto represent and warrant to each other that (a) the signatories to this Stipulation are authorized to execute this Stipulation; (b) each has full power and authority to enter into this Stipulation; (c) the execution and delivery of this Stipulation has been approved by all necessary corporate action of each party and, except as provided herein, no further approval or authorization is necessary for this Stipulation to become effective; and (d) this Stipulation is duly executed and delivered, and constitutes a valid and binding agreement in accordance with its terms.

11. **Further Information**. Each party hereto agrees to execute and deliver any and all further documents, and to perform such other acts, as may be necessary or expedient to carry out and make effective this Stipulation.

12. **Press Release**. Neither party may make a press release or similar public announcement concerning this Stipulation without the prior written approval of the other.

13. **Counterparts**. This Stipulation may be executed in one or more counterparts and by facsimile, each of which shall be considered effective as an original signature and all of which together shall constitute one and the same agreement.

DATED: Boston, Massachusetts
July 15, 2008

9

A/72503614.16

| THE EDUCATION RESOURCES INSTITUTE, INC., debtor and debtor in possession | JPMORGAN CHASE BANK, N.A. |
|---|---|
| By: | By: *[signature]* |
| _____ | *Danny C. Ray* |
| Name: | Name: |
| Title: | Title: President - Education Finance |

10

A/72503614.16

Jul-15-2008 12:44 PM  JPMORGAN CHASE 9177586209

| THE EDUCATION RESOURCES INSTITUTE, INC., debtor and debtor in possession | JPMORGAN CHASE BANK, N.A. |
|---|---|
| By: *[signature]* <br> Name: Amy W. Bizar <br> Title: SVP & General Counsel | By: _____ <br> Name: <br> Title: |

10

A/72503614.16

## EXHIBIT A

## PROGRAM DOCUMENTS

1. Amended and Restated Loan Origination Agreement, dated as of May 13, 2002, between Chase and the Debtor, as amended.

2. Amended and Restated Guaranty Agreement, dated as of May 13, 2002, between Chase and the Debtor, as amended.

3. Amended and Restated Note Purchase Agreement, dated as of May 1, 2002, between Chase and FMC, as amended.

4. Deposit and Security Agreement, dated as of April 30, 2001, by and among Chase, the Debtor, FMC and U.S Bank, N.A. (as successor in interest to State Street Bank and Trust Company), as amended.

A/72503614.16