# Exhibit A

**EXECUTION VERSION**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

_____
                                              )
In re:                                        )      **Chapter 11**
                                              )
THE EDUCATION RESOURCES INSTITUTE, INC.,      )      **Case No. 08-12540 (HJB)**
                                              )
            Debtor.                           )
                                              )
_____)


## FOURTH AMENDED JOINT PLAN OF REORGANIZATION OF THE EDUCATION RESOURCES INSTITUTE, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Dated:  February 25, 2010


GOODWIN PROCTER LLP                    DUANE MORRIS LLP
Daniel M. Glosband                     Jeffrey D. Sternklar
Gina Lynn Martin                       470 Atlantic Avenue
Exchange Place                         Boston, MA 02210
53 State Street                        (857) 488-4216
Boston, MA 02109
(617) 570-1000

**EXECUTION VERSION**

## TABLE OF CONTENTS

Page

**ARTICLE I** DEFINITIONS AND INTERPRETATION ................................................................ 8

| | | |
|---|---|---|
| 1.1 | **Accepting KeyCorp Trust** | 8 |
| 1.2 | **Accepting Make and Hold Lender** | 8 |
| 1.3 | **Accepting Make and Wait Lender** | 9 |
| 1.4 | **Accepting Securitization Trust** | 9 |
| 1.5 | **Additional Share** | 9 |
| 1.6 | **Administrative Expense Claim** | 9 |
| 1.7 | **Allowed** | 9 |
| 1.8 | **Ambac Trusts** | 9 |
| 1.9 | **Approval Order** | 9 |
| 1.10 | **Approved Make and Wait Settlement** | 9 |
| 1.11 | **Assumed Agreements** | 10 |
| 1.12 | **Available Cash** | 10 |
| 1.13 | **Ballot** | 10 |
| 1.14 | **Bankruptcy Code** | 10 |
| 1.15 | **Bankruptcy Court** | 10 |
| 1.16 | **Bankruptcy Rules** | 10 |
| 1.17 | **Business Day** | 10 |
| 1.18 | **Cash** | 10 |
| 1.19 | **Causes of Action** | 10 |
| 1.20 | **Chapter 11 Case** | 10 |
| 1.21 | **Claim** | 10 |
| 1.22 | **Claims Agent** | 11 |
| 1.23 | **Class** | 11 |
| 1.24 | **Collateral** | 11 |
| 1.25 | **Collateral Account** | 11 |
| 1.26 | **(Intentionally deleted)** | 11 |
| 1.27 | **Collection Contract** | 11 |
| 1.28 | **Commencement Date** | 11 |
| 1.29 | **Confirmation Date** | 11 |
| 1.30 | **Confirmation Hearing** | 11 |
| 1.31 | **Confirmation Order** | 11 |
| 1.32 | **Convenience Class Claim** | 11 |
| 1.33 | **Creditor** | 11 |
| 1.34 | **Creditors' Committee** | 12 |
| 1.35 | **Cure Amount** | 12 |
| 1.36 | **Data** | 12 |
| 1.37 | **Debtor** | 12 |
| 1.38 | **Debtor Releasors** | 12 |
| 1.39 | **Decoder** | 12 |
| 1.40 | **Deficiency Claim** | 12 |

i

| | | |
|---|---|---|
| 1.41 | Disclosure Statement | 12 |
| 1.42 | Disputed | 12 |
| 1.43 | Disputed Claims Reserve | 13 |
| 1.44 | Effective Date | 13 |
| 1.45 | Effective Date Anniversary | 13 |
| 1.46 | (Intentionally deleted). | 13 |
| 1.47 | (Intentionally deleted). | 13 |
| 1.48 | Entity | 13 |
| 1.49 | ERISA | 13 |
| 1.50 | Estate | 13 |
| 1.51 | Final Order | 13 |
| 1.52 | First Year Eligible Collections | 13 |
| 1.53 | General Unsecured Claim | 14 |
| 1.54 | General Unsecured Claim Distribution | 14 |
| 1.55 | Guaranty Fee | 14 |
| 1.56 | Impaired | 14 |
| 1.57 | (Intentionally deleted). | 14 |
| 1.58 | IRC | 14 |
| 1.59 | IRS | 14 |
| 1.60 | Joint Pool Account | 14 |
| 1.61 | Joint Pool Account Lenders | 14 |
| 1.62 | (Intentionally deleted). | 14 |
| 1.63 | Key Access Program Election | 14 |
| 1.64 | Key Access Program Settlement | 14 |
| 1.65 | Key Access Program Deficiency Claim | 14 |
| 1.66 | Key Corp Trust | 15 |
| 1.67 | Litigating Creditor | 15 |
| 1.68 | Litigation Claims Costs | 15 |
| 1.69 | (Intentionally Deleted | 15 |
| 1.70 | Make and Hold Base Case | 15 |
| 1.71 | Make and Hold Claim | 15 |
| 1.72 | (Intentionally deleted). | 15 |
| 1.73 | Make and Hold Lender | 15 |
| 1.74 | Make and Hold Settlement | 15 |
| 1.75 | Make and Wait Claim | 15 |
| 1.76 | (Intentionally deleted). | 15 |
| 1.77 | Make and Wait Lender | 15 |
| 1.78 | (Intentionally deleted). | 15 |
| 1.79 | (Intentionally deleted). | 15 |
| 1.80 | Make and Wait Lender Settlement | 15 |
| 1.81 | Make and Wait Lien Dispute | 15 |
| 1.82 | Master Trust | 16 |
| 1.83 | Nellie Mae Adversary Proceeding | 16 |
| 1.84 | Other General Unsecured Claim | 16 |
| 1.85 | Other Trusts | 16 |
| 1.86 | Pension Plan | 16 |

ii

**EXECUTION VERSION**

| | | |
|---|---|---|
| 1.87 | **Person** | 16 |
| 1.88 | **Pipeline Loans** | 16 |
| 1.89 | **Plan** | 16 |
| 1.90 | **Plan Proponents** | 16 |
| 1.91 | **(Intentionally deleted)** | 16 |
| 1.92 | **Plan Supplement** | 16 |
| 1.93 | **Plan Trust** | 16 |
| 1.94 | **Plan Trust Agreement** | 16 |
| 1.95 | **Plan Trust Assets** | 16 |
| 1.96 | **Plan Trustee** | 17 |
| 1.97 | **Plan Trustee Advisory Committee** | 17 |
| 1.98 | **Pledged Account** | 17 |
| 1.99 | **Pool Account** | 17 |
| 1.100 | **Priority Claim** | 17 |
| 1.101 | **Priority Non-Tax Claim** | 17 |
| 1.102 | **Priority Tax Claim** | 17 |
| 1.103 | **Pro Rata** | 17 |
| 1.104 | **Pro Rata Distribution** | 17 |
| 1.105 | **Record Date** | 17 |
| 1.106 | **Rejection Bar Date** | 17 |
| 1.107 | **Released Party** | 18 |
| 1.108 | **Remaining Plan Trust Assets** | 18 |
| 1.109 | **Reorganized Articles of Incorporation** | 18 |
| 1.110 | **Reorganized By-laws** | 18 |
| 1.111 | **Reorganized TERI** | 18 |
| 1.112 | **Reorganized TERI Assets** | 18 |
| 1.113 | **Residual** | 18 |
| 1.114 | **Restricted Charitable Funds** | 18 |
| 1.115 | **Restricted Charitable Funds Carve-Out** | 18 |
| 1.116 | **Restricted Grant Funds** | 19 |
| 1.117 | **Revised Calculation** | 19 |
| 1.118 | **Retained Cash** | 19 |
| 1.119 | **Retained Contracts** | 19 |
| 1.120 | **Schedules** | 19 |
| 1.121 | **Second Year Eligible Collections** | 19 |
| 1.122 | **Secured Claim** | 19 |
| 1.123 | **Secured Creditor** | 19 |
| 1.124 | **(Intentionally deleted)** | 19 |
| 1.125 | **Securitization Trust** | 19 |
| 1.126 | **Securitization Trust Collateral** | 19 |
| 1.127 | **Securitization Trust Deficiency Claim** | 20 |
| 1.128 | **Securitization Trust Settlement** | 20 |
| 1.129 | **Securitization Trust Settlement Claim** | 20 |
| 1.130 | **Securitization Trust Settlement Claim Reduction** | 20 |
| 1.131 | **Solicitations Procedure Order** | 20 |
| 1.132 | **Tax Claim** | 20 |

iii

**EXECUTION VERSION**

| | | |
|---|---|---|
| **1.133** | **TERI First Year Share** | 20 |
| **1.134** | **(Intentionally Deleted)** | 20 |
| **1.135** | **(Intentionally Deleted)** | 20 |
| **1.136** | **TERI Loan Net Proceeds** | 20 |
| **1.137** | **TERI Loan Proceeds** | 20 |
| **1.138** | **TERI Net Recovery** | 20 |
| **1.139** | **TERI Owned Loan** | 20 |
| **1.140** | **TERI Second Year Share** | 21 |
| **1.141** | **Term** | 21 |
| **1.142** | **Transfer Taxes** | 21 |
| **1.143** | **Treasury Regulations** | 21 |
| **1.144** | **Trust Adversary Proceeding** | 21 |
| **1.145** | **Unimpaired** | 21 |
| **1.146** | **United States Trustee** | 21 |
| **1.147** | **Unrestricted Cash** | 21 |
| **1.148** | **Victory Fund** | 21 |
| **1.149** | **Voting Agent** | 21 |
| **1.150** | **Voting Record Date** | 21 |
| **1.151** | **Other Terms** | 21 |
| **1.152** | **Construction Of Certain Terms** | 21 |

**ARTICLE II** TREATMENT OF UNCLASSIFIED CLAIMS -- <u>ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS</u> ................................22

| | | |
|---|---|---|
| **2.1** | **Administrative Expense Claims** | 22 |
| **2.2** | **Pre-Effective Date Professional Fees and Expenses.** | 22 |
| **2.3** | **United States Trustee Quarterly Fees and Other Statutory Fees** | 22 |
| **2.4** | **Priority Tax Claims** | 23 |

**ARTICLE III** <u>CLASSIFICATION OF CLAIMS</u> ................................23

| | | |
|---|---|---|
| **3.1** | **Class 1 – Priority Non-Tax Claims** | 23 |
| **3.2** | **Classes 2a – 2p – Secured Claims of Make and Wait Lenders** | 24 |
| **3.3** | **Classes 3a – 3l – Secured Claims of Securitization Trusts.** | 25 |
| **3.4** | **Classes 4a – 4k – Secured Claims of the Keycorp Trusts and KeyBank National Association (other than in its capacity as a Make and Wait Lender** | 27 |
| **3.5** | **Class 5 – General Unsecured Claims.** | 28 |
| **3.6** | **Class 6 – Convenience Class Claims** | 28 |

**ARTICLE IV** <u>TREATMENT OF CLASSES 2 - 5</u> ................................28

| | | |
|---|---|---|
| **4.1** | **Treatment of Class 2 Claims (Make and Wait Lender Claims)** | 28 |
| **4.2** | **Treatment of Class 3 Claims (Securitization Trusts)**. | 29 |
| **4.3** | **Classes 4a – 4k** | 30 |
| **4.4** | **Class 5**. | 31 |

iv

**EXECUTION VERSION**

**ARTICLE V** VOTING AND DISTRIBUTION .................................................................. 31

    5.1    **Voting of Claims**. ........................................................................... 31
    5.2    **Acceptance by Impaired Class**. ................................................... 32
    5.3    **Presumed Acceptances of Plan**. ................................................. 32
    5.4    **Nonconsensual Confirmation**. .................................................... 32
    5.5    **Method of Distributions Under this Plan**. ................................. 32

**ARTICLE VI** MEANS FOR IMPLEMENTATION AND EXECUTION OF THE
PLAN ........................................................................................................................... 35

    6.1    **Reorganized TERI**. ...................................................................... 35
    6.2    **Compromise and Settlement**. ..................................................... 35
    6.3    **Plan Trust**. ................................................................................... 41
    6.4    **Calculation of TERI Net Recovery**. .......................................... 46
    6.5    **Distribution to Secured Creditors**. ............................................ 47
    6.6    **Restricted Funds**. ........................................................................ 47
    6.7    **Operations of Reorganized TERI**. ............................................. 47
    6.8    **Closing of the Chapter 11 Case**. ................................................ 48
    6.9    **Section 1123(b)(3)**. ...................................................................... 48
    6.10   **Establishment and Implementation of a Most Favored Nations
            Clause**. ......................................................................................... 48
    6.11   **Nellie Mae Adversary Proceeding**. ............................................ 48

**ARTICLE VII** PROCEDURES FOR RESOLVING AND TREATING DISPUTED
CLAIMS ...................................................................................................................... 48

    7.1    **No Distribution Pending Allowance**. ......................................... 48
    7.2    **Resolution of Disputed Claims**. ................................................. 49
    7.3    **Estimation**. ................................................................................... 49
    7.4    **Allowance of Disputed Claims**. .................................................. 49
    7.5    **Disallowance of Claims Without Further Order of the Bankruptcy
            Court**. ........................................................................................... 49
    7.6    **No Distribution in Respect of Disallowed Claims**. ................... 49

**ARTICLE VIII** TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ....................................................................................................................... 49

    8.1    **Assumption or Rejection of Executory Contracts and Unexpired
            Leases**. ......................................................................................... 49
    8.2    **Approval of Assumption or Rejection of Executory Contracts and
            Unexpired Leases.** ...................................................................... 50
    8.3    **Inclusiveness**. .............................................................................. 50
    8.4    **Return of Guaranty Fees**. ........................................................... 51
    8.5    **Bar Date for Filing Proofs of Claim Relating to Executory Contracts
            and Unexpired Leases Rejected Pursuant to this Plan**. ............ 51
    8.6    **Insurance Policies**. ...................................................................... 51

| | | |
|---|---|---|
| 8.7 | **Compensation and Benefit Programs**. | 51 |
| 8.8 | **Retiree Benefits**. | 51 |

**ARTICLE IX** CONDITIONS PRECEDENT TO ENTRY OF THE CONFIRMATION ORDER .................................................................................52

| | | |
|---|---|---|
| 9.1 | **Conditions Precedent to entry of the Confirmation Order**. | 52 |
| 9.2 | **Waiver of Conditions**. | 52 |
| 9.3 | **Effect of Failure of Condition to Entry of Confirmation Order**. | 52 |

**ARTICLE X** EFFECTIVENESS OF THE PLAN .................................................52

| | | |
|---|---|---|
| 10.1 | **Conditions Precedent to the Effective Date**. | 52 |
| 10.2 | **Waiver of Conditions**. | 53 |
| 10.3 | **Effect of Failure of Condition to Entry of Confirmation Order**. | 53 |

**ARTICLE XI** CONSEQUENCES OF A FAILURE OF A CONDITION IN ARTICLES IX AND X .................................................................................53

**ARTICLE XII** EFFECTS OF CONFIRMATION .................................................54

| | | |
|---|---|---|
| 12.1 | **Vesting of Assets**. | 54 |
| 12.2 | **Binding Effect**. | 54 |
| 12.3 | **Discharge**. | 54 |
| 12.4 | **Releases, Injunctions and Exculpation**. | 55 |
| 12.5 | **Release of Assets**. | 56 |
| 12.6 | **Claims Preserved.** | 56 |
| 12.7 | **Residual**. | 57 |
| 12.8 | **ERISA**. | 57 |

**ARTICLE XIII** RETENTION OF JURISDICTION .................................................57

| | | |
|---|---|---|
| 13.1 | **Jurisdiction of Bankruptcy Court**. | 57 |

**ARTICLE XIV** MISCELLANEOUS PROVISIONS .................................................59

| | | |
|---|---|---|
| 14.1 | **Effectuating Documents and Further Transactions**. | 59 |
| 14.2 | **Exemption from Transfer Taxes**. | 59 |
| 14.3 | **Post-Confirmation Date Fees and Expenses**. | 59 |
| 14.4 | **Modification of Plan**. | 59 |
| 14.5 | **Withdrawal or Revocation**. | 60 |
| 14.6 | **Courts of Competent Jurisdiction**. | 60 |
| 14.7 | **Notices**. | 60 |
| 14.8 | **Severability**. | 61 |
| 14.9 | **Governing Law**. | 61 |
| 14.10 | **Headings**. | 61 |
| 14.11 | **Exhibits**. | 61 |

**EXECUTION VERSION**

| | | |
|---|---|---|
| **14.12** | **Successors and Assigns**. | 61 |
| **14.13** | **Dissolution of the Creditors' Committee**. | 61 |
| **14.14** | **Courts of Competent Jurisdiction**. | 62 |
| **14.15** | **Plan Supplement**. | 62 |
| **14.16** | **Plan Controls Disclosure Statement; Confirmation Order Controls Plan**. | 62 |
| **14.17** | **Filing of Additional Documents**. | 62 |
| **14.18** | **Tax-Exempt Status**. | 62 |
| **14.19** | **Consent to Transfer of Residual**. | 62 |

**EXECUTION VERSION**

<table>
<tr><td></td><td>UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF MASSACHUSETTS<br>EASTERN DIVISION</td><td></td></tr>
</table>

|  |  |  |
|---|---|---|
|  | ) |  |
| **In re:** | ) | **Chapter 11** |
|  | ) |  |
| **THE EDUCATION RESOURCES INSTITUTE, INC.,** | ) | **Case No. 08-12540 (HJB)** |
|  | ) |  |
| **Debtor.** | ) |  |
|  | ) |  |
|  | ) |  |

## FOURTH AMENDED JOINT PLAN OF REORGANIZATION OF
## THE EDUCATION RESOURCES INSTITUTE, INC. AND THE OFFICIAL
## COMMITTEE OF UNSECURED CREDITORS

The Education Resources Institute, Inc., debtor and debtor in possession in the above-captioned Chapter 11 Case, and the Official Committee of Unsecured Creditors, as Plan Proponents, jointly propose the following Fourth Amended chapter 11 Plan pursuant to section 1121(a) of the Bankruptcy Code. The Plan[1] contemplates the reorganization of the Debtor and the resolution of all outstanding claims against the Debtor.

If any Impaired Class of Claims against the Debtor entitled to vote on the Plan does not accept the Plan by the requisite statutory majority required by section 1126(c) of the Bankruptcy Code or as provided for in the Solicitations Procedures Order, then the Plan Proponents may take any of the actions specified herein, including proceeding to confirm the Plan under section 1129(b) of the Bankruptcy Code.

## ARTICLE I

### DEFINITIONS AND INTERPRETATION

**Definitions**. As used in the Plan, the following terms have the respective meanings specified below, unless the context otherwise requires:

**1.1** **Accepting KeyCorp Trust** means a KeyCorp Trust that has accepted the Plan and thus has not elected the Key Access Program Election.

**1.2** **Accepting Make and Hold Lender** means a Make and Hold Lender that has accepted the Plan.

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in Article I of this Plan.

**EXECUTION VERSION**

**1.3** __Accepting Make and Wait Lender__ means a Make and Wait Lender that has accepted the Plan.

**1.4** __Accepting Securitization Trust__ means a Securitization Trust that has accepted the Plan or that has been deemed to accept the Plan, and thereby, the Securitization Trust Settlement.

**1.5** __Additional Share__ means the amount, if any, by which $2,000,000 exceeds the sum of (i) the TERI First Year Share plus (ii) the TERI Second Year Share.

**1.6** __Administrative Expense Claim__ means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the assets of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation and reimbursement of expenses Allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code, and any fees and charges assessed against the Debtor under section 1930 of chapter 123 of title 28 of the United States Code.

**1.7** __Allowed__ means, with reference to any Claim against the Debtor, (a) any Claim against the Debtor that has been listed by the Debtor in its Schedules (as such Schedules may be amended by the Debtor) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed, (b) any timely filed proof of Claim as to which no objection has been or is interposed or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim, (c) any Claim expressly allowed by a Final Order or under the Plan, and (d) any Claim that is compromised, settled or otherwise resolved pursuant to the authority granted to the Plan Trustee pursuant to a Final Order of the Bankruptcy Court or under the Plan; *provided, however,* that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims." Unless otherwise specified in the Plan or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" will not, for any purpose under the Plan, include interest on such Claim from and after the Commencement Date.

**1.8** __Ambac Trusts__ means the Master Trust, the National Collegiate Student Loan Trust 2007-3 and the National Collegiate Student Loan Trust 2007-4.

**1.9** __Approval Order__ means the Order (a) approving the Disclosure Statement; (b) (to the extent not addressed in the Solicitations Procedure Order) approving Solicitation Procedures; (c) approving Forms of Ballots and establishing procedures for voting on the Plan; and (d) scheduling a hearing and establishing notice and objection procedures in respect of confirmation of the Plan.

**1.10** __Approved Make and Wait Settlement__ means the compromise and settlement agreements between the Debtor and (1) Bank of America, N.A. (2) JP Morgan Chase, N.A. and (3) Union Federal Savings Bank, previously approved by the Bankruptcy Court pursuant to a Final Order.

9

**EXECUTION VERSION**

**1.11** __Assumed Agreements__ means the executory contracts and unexpired leases identified on Schedule 8.1(A) and Schedule 8.1(B) in the Plan Supplement.

**1.12** __Available Cash__ means, as of the Effective Date, Unrestricted Cash __minus__ the Retained Cash.

**1.13** __Ballot__ means the form ballot approved by the Bankruptcy Court to indicate acceptance or rejection of the Plan and to make any other elections or representations required pursuant to the Plan, the Solicitations Procedure Order or the Approval Order.

**1.14** __Bankruptcy Code__ means Title 11 of the United States Code, 11 U.S.C. § 101, et seq, as amended from time to time, as applicable to the Chapter 11 Case.

**1.15** __Bankruptcy Court__ means the United States Bankruptcy Court for the District of Massachusetts (Eastern Division), or any other court of the United States having jurisdiction over the Chapter 11 Case.

**1.16** __Bankruptcy Rules__ means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including the local rules of the Bankruptcy Court.

**1.17** __Business Day__ means any day other than a Saturday, a Sunday, any other day on which commercial banks in Boston, Massachusetts are required or authorized to close by law or executive order.

**1.18** __Cash__ means legal tender of the United States of America and equivalents thereof.

**1.19** __Causes of Action__ means any and all rights, claims, causes of action, suits and proceedings that could have been brought or raised by or on behalf of the Debtor and/or the Estate arising before, on, or after the Commencement Date, including, without limitation, whether known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, under any theory of law, and all actions that may be commenced before or after the Effective Date by or on behalf of the Debtor and/or the Estate, pursuant to Chapter 5, including, without limitation, (i) claims arising under or related to sections 105, 502(d), 510, 544, 545, 547, 548, 549, 550, 551 and 553(b) of the Bankruptcy Code or under similar provisions of applicable state law, (ii) all claims that have been or may be asserted by the plaintiff in the Trust Adversary Proceeding against any of Classes 3a-3q that is deemed to reject the Plan and/or opt out of the Securitization Trust Settlement, and (iii) any and all claims against First Marblehead Corporation, First Marblehead Educations Resources, Inc., First Marblehead Data Services, Inc. and their respective affiliates.

**1.20** __Chapter 11 Case__ means the voluntary case under chapter 11 of the Bankruptcy Code, commenced by the Debtor in the Bankruptcy Court, styled "__In re The Education Resources Institute, Inc.__," Case Number 08-12540 (HJB).

**1.21** __Claim__ has the meaning assigned to such term in section 101(5) of the Bankruptcy Code.

10

    **1.22**   **Claims Agent** means Epiq Systems, Inc., which is located at 757 Third Avenue, Third Floor, New York, NY 10017, and was retained as the Debtor's claim agent in the Chapter 11 Case.

    **1.23**   **Class** means any Claim or group of substantially similar Claims classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

    **1.24**   **Collateral** means any property or interest in property of the Estate of the Debtor subject to a lien to secure the payment or performance of a Claim, which lien is valid, perfected and enforceable under applicable law, and is not subject to avoidance under the Bankruptcy Code or other applicable law.

    **1.25**   **Collateral Account** means a Pledged Account, Victory Fund, a Pool Account, or the Joint Pool Account, as applicable.

    **1.26**   **(Intentionally deleted)**.

    **1.27**   **Collection Contract** means the contract regarding the collection of TERI Loan Proceeds, substantially in the form set forth in the Plan Supplement, between Reorganized TERI and the Plan Trustee.

    **1.28**   **Commencement Date** means April 7, 2008, the date on which the Debtor commenced the Chapter 11 Case.

    **1.29**   **Confirmation Date** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

    **1.30**   **Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

    **1.31**   **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance satisfactory to the Debtor and Creditors' Committee.

    **1.32**   **Convenience Class Claim** means a Claim that would otherwise be an allowed General Unsecured Claim and that is greater than $0 and less than or equal to $1,500 in Allowed amounts or the Claim of any Creditor that elects to reduce its Allowed General Unsecured Claim to an amount equal to $1,500, *provided*, *however*, that in the event the aggregate amount of Convenience Class Claims exceeds $250,000, the Plan Proponents or after the Effective Date the Plan Trustee, in their sole discretion, can reject an election made by a Creditor to reduce its Allowed General Unsecured Claim to $1,500. In the event that the Plan Proponents or the Plan Trustee (as applicable) reject any such election, then such Creditor's Claim will be treated as a General Unsecured Claim classified in Class 5.

    **1.33**   **Creditor** means any holder of a Claim.

**EXECUTION VERSION**

     **1.34**    <u>Creditors' Committee</u> means the official statutory committee of unsecured creditors appointed by the Office of the United States Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, as such committee has been amended from time to time.

     **1.35**    <u>Cure Amount</u> means any amounts required to be paid to a counterparty to an executory contract or unexpired lease to assume such contract or lease pursuant to section 365 of the Bankruptcy Code.

     **1.36**    <u>Data</u> means all books and records of the Debtor, including, but not limited to, computer generated or computer maintained books and records and computer data, and electronically generated or maintained books and records or data.

     **1.37**    <u>Debtor</u> means The Education Resources Institute, Inc., including, where applicable, in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

     **1.38**    <u>Debtor Releasors</u> means the Debtor, Reorganized TERI and any Person or Entity seeking to exercise the rights of the Estate, including without limitation, any successor to the Debtor or any representative of the Estate appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (including, but not limited to, the Plan Trustee).

     **1.39**    <u>Decoder</u> means the Claims estimation methodology included in the Plan Supplement.

     **1.40**    <u>Deficiency Claim</u> means the amount by which the Claim of a Secured Creditor exceeds the value of the Collateral securing such Claim, which amount shall be treated as a General Unsecured Claim.

     **1.41**    <u>Disclosure Statement</u> means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as such may be amended and ultimately be approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as amended, modified or supplemented in accordance with applicable law.

     **1.42**    <u>Disputed</u> means, with respect to an Administrative Expense Claim or other Claim, any such Administrative Expense Claim or other Claim (a) as to which no proof of Claim was timely and properly filed and that is scheduled by the Debtor as disputed, unliquidated or contingent; or (b) proof of which was timely and properly filed, and (i) which has been or is listed on the Schedules as unliquidated, disputed or contingent, and which has not been resolved by a Final Order or (ii) as to which the Debtor or any other party-in-interest, has interposed a timely objection or request for estimation for purposes of distribution in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn, compromised, resolved, settled or determined by a Final Order.  Prior to (x) the filing of an objection to a Claim or (y) the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim will be considered a Disputed Claim if (i) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated or (ii) the Claim is not listed on the Schedules.

**EXECUTION VERSION**

**1.43** **Disputed Claims Reserve** means the portion of the Plan Trust Assets that would be allocable to, or retained on account of, Disputed General Unsecured Claims, as determined from time to time if such Claims were Allowed Claims, which assets must (to the extent practicable) be held separately from other assets of the Plan Trust, but shall be subject to an allocable share of all expenses and obligations of the Plan Trust.

**1.44** **Effective Date** means a Business Day selected by the Plan Proponents on or after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of this Plan specified in section 9.1 of this Plan will have been satisfied or waived as provided in section 9.2.

**1.45** **Effective Date Anniversary** means the annual anniversary of the Effective Date; *provided*, *however*, that if the anniversary of the Effective Date in any year is not a Business Day, then the Effective Date Anniversary will be the first Business Day after the anniversary of the Effective Date in such year.

**1.46** **(Intentionally deleted**).

**1.47** **(Intentionally deleted).**

**1.48** **Entity** has the meaning assigned to such term in section 101(15) of the Bankruptcy Code

**1.49** **ERISA** means Title IV of the Employee Retirement Income Security Act of 1974, as amended, codified as 29 U.S.C. §§ 1301-1461.

**1.50** **Estate** means the estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**1.51** **Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rules 59 and 60 of the Federal Rules of Civil Procedure, 11 U.S.C. §1144 or any analogous rules under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

**1.52** **First Year Eligible Collections** means all TERI Loan Net Proceeds in excess of $1,000,000 collected pursuant to the Collection Contract during the first year of the Term.

13

**1.53 General Unsecured Claim** means any Claim against the Debtor that is not a Secured Claim, Administrative Expense Claim, Priority Claim or Convenience Class Claim. For avoidance of doubt, any Deficiency Claim is a General Unsecured Claim.

**1.54 General Unsecured Claim Distribution** means a distribution on account of an Allowed General Unsecured Claim of a beneficial interest in the Plan Trust determined on a Pro Rata basis with respect to all General Unsecured Claims.

**1.55 Guaranty Fee** means a fee payable to the Debtor in consideration for the Debtor's guaranty of a student loan.

**1.56 Impaired** means any Claim that is "impaired" under section 1124 of the Bankruptcy Code.

**1.57 (Intentionally deleted)**.

**1.58 IRC** means the Internal Revenue Code of 1986, as amended.

**1.59 IRS** means the United States Internal Revenue Service.

**1.60 Joint Pool Account** means that certain account maintained at U.S. Bank, N.A. containing deposits of, among other things, Guaranty Fees, which deposits serve as Collateral in which each Joint Pool Account Lender has a *pari passu* interest.

**1.61 Joint Pool Account Lenders** means the following lenders: (1) Comerica Bank, N.A., (2) Insurbanc, (3) KeyBank National Association, (4) M&T Bank, (5) PNC Bank, N.A., (6) Sovereign Bank, (7) TCF National Bank and (8) U.S. Bank, N.A.

**1.62 (Intentionally deleted)**.

**1.63 Key Access Program Election** means the election of KeyBank National Association (excluding in its capacity as a Make and Wait Lender) or a KeyCorp Trust, pursuant to a timely Ballot completed and delivered in accordance with the Solicitations Procedure Order, to (i) reject this Plan and thereby forego receipt of the Key Access Program Settlement on account of its Claim, and (ii) request that the Allowed amount of such Claim be determined by the Bankruptcy Court after entry of the Confirmation Order.

**1.64 Key Access Program Settlement** means the settlement described in section 6.2(d) of this Plan whereby each Accepting KeyCorp Trust and KeyBank National Association (excluding in its capacity as a Make and Wait Lender), agrees to accept in full settlement of all of its Claims, (i) its allocable share of the Victory Fund account as of the Commencement Date in accordance with Section 6.2(d) of this Plan, and (ii) an Allowed General Unsecured Claim as listed as the "Key Access Program Settlement Amount" on Schedule C attached hereto.

**1.65 Key Access Program Deficiency Claim** means, with respect to each Accepting KeyCorp Trust and (if it accepts the Plan) KeyBank National Association (excluding in its capacity as a Make and Wait Lender), the amount of KeyBank National Association's and each

**EXECUTION VERSION**

KeyCorp Trust's Allowed Deficiency Claim set forth in the column labeled "Key Access Program Decoder Settlement Claim" on <u>Schedule C</u> attached hereto.

      **1.66**    <u>**Key Corp Trust**</u> means collectively, each of KeyCorp Student Loan Trust ("KSLT") 1999-A, KSLT 1999-B, KSLT 2000-A, KSLT 2000-B, KSLT 2001-A, KSLT 2002-A, KSLT 2003-A, KSLT 2004-A, KSLT 2005-A and KSLT 2006-A.

      **1.67**    <u>**Litigating Creditor**</u> has the meaning ascribed to such term in Section 6.10 of this Plan.

      **1.68**    <u>**Litigation Claims Costs**</u> means any and all costs incurred by the Plan Trustee for prosecuting the Causes of Action, enforcing any judgment on the Causes of Action, and recovering proceeds on account of the Causes of Action, including reasonable professionals' fees, if any, incurred by this Plan Trust.

      **1.69**    **(Intentionally Deleted**

      **1.70**    <u>**Make and Hold Base Case**</u> means, for each Make and Hold Claim classified in Class 4, the amount listed as the "Make and Hold Base Case" on Schedule D attached hereto.

      **1.71**    <u>**Make and Hold Claim**</u> means the General Unsecured Claim of a Make and Hold Lender.

      **1.72**    **(Intentionally deleted).**

      **1.73**    <u>**Make and Hold Lender**</u> means those entities that are listed on Schedule D attached hereto.

      **1.74**    <u>**Make and Hold Settlement**</u> means the settlement described in section 6.2(b) below.

      **1.75**    <u>**Make and Wait Claim**</u> means a Secured Claim held by a Make and Wait Lender in Class 2 and its respective subclasses.

      **1.76**    **(Intentionally deleted**).

      **1.77**    <u>**Make and Wait Lender**</u> means those entities whose Claims are classified in Classes 2a through 2p of this Plan.

      **1.78**    **(Intentionally deleted**).

      **1.79**    **(Intentionally deleted).**

      **1.80**    <u>**Make and Wait Lender Settlement**</u> means the settlement between the Debtor and an Accepting Make and Wait Lender described in section 6.2(a) below.

      **1.81**    <u>**Make and Wait Lien Dispute**</u> means the potential challenge to the validity of liens and security interests of Insurbanc, M&T Bank, PNC Bank and RBS Citizens, N.A.

**1.82** **Master Trust** means The National Collegiate Master Student Loan Trust I.

**1.83** **Nellie Mae Adversary Proceeding** means Adversary Proceeding 10-01034, Nellie Mae Education Foundation, Inc. v. The Education Resources Institute, Inc., in the United States Bankruptcy Court for the District of Massachusetts.

**1.84** **Other General Unsecured Claim** means any General Unsecured Claim that is not otherwise defined in this Plan.

**1.85** **Other Trusts** mean a portfolio of student loans securitized and guaranteed by TERI and owned by a trust, which trust has no Collateral Account and is not a Securitization Trust or a Key Corp Trust.

**1.86** **Pension Plan** means the tax qualified defined benefit pension plan covered by ERISA, sponsored and maintained by the Debtor.

**1.87** **Person** has the meaning assigned to such term in section 101(41) of the Bankruptcy Code.

**1.88** **Pipeline Loans** means student loans funded by a lender pursuant to a loan program with the Debtor on or after the Commencement Date.

**1.89** **Plan** means this chapter 11 plan and the Plan Supplement, including all exhibits and schedules annexed hereto, as all such documents, exhibits and schedules may be altered, amended or modified from time to time.

**1.90** **Plan Proponents** means the Debtor and the Creditors' Committee.

**1.91** **(Intentionally deleted)**.

**1.92** **Plan Supplement** means the compilation of documents and forms of documents specified in this Plan and listed on attached Schedule _____ that will be filed with the Bankruptcy Court by the time established by the Bankruptcy Court prior to the Voting Deadline. The Plan Supplement constitutes part of this Plan.

**1.93** **Plan Trust** means the trust established under Section 6.3 of this Plan and the Plan Trust Agreement.

**1.94** **Plan Trust Agreement** means the agreement, substantially in the form set forth in the Plan Supplement, between the Debtor and the Plan Trustee, governing the Plan Trust, which agreement shall be in form and substance acceptable to the Debtor and Creditors' Committee.

**1.95** **Plan Trust Assets** means all assets of the Debtor, other than the Reorganized TERI Assets, including, without limitation, any proceeds or products of all such assets, including but not limited to (a) the Available Cash (including the Restricted Charitable Funds Carve-Out), (b) TERI Owned Loans, (c) the TERI Loan Proceeds, (subject to Reorganized TERI's right to receive payment of the TERI Net Recovery), (d) all Causes of Action, (e) property (including

16

Cash) received in respect of a Make and Wait Settlement, (f) all other property of the Estate that is not included in Reorganized TERI Assets.

1.96 **Plan Trustee** means the Person appointed by the Creditors' Committee with the consent of the Debtor, which consent may not be unreasonably withheld, to administer the Plan Trust, as identified in the Plan Trust Agreement.

1.97 **Plan Trustee Advisory Committee** means a committee selected by the Creditors' Committee, the membership of which is disclosed in the Plan Supplement, created in furtherance of the Plan Trust Agreement, that will have the responsibility to review and advise the Plan Trustee with respect to the liquidation and distribution of Plan Trust Assets in accordance with the Plan Trust Agreement.

1.98 **Pledged Account** means any bank account in which each Securitization Trust, as applicable, holds a valid, perfected and unavoidable security interest and lien to secure an Allowed Secured Claim.

1.99 **Pool Account** means any bank account in which some or all of the Make and Wait Lenders, as applicable, assert a valid, perfected and unavoidable security interest and lien to secure an Allowed Secured Claim.

1.100 **Priority Claim** means a Priority Tax Claim or Priority Non-Tax Claim.

1.101 **Priority Non-Tax Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.102 **Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.103 **Pro Rata** means the proportion that the amount of any Allowed Claim in a particular class bears to the aggregate amount of all Claims in such Class, including Disputed Claims.

1.104 **Pro Rata Distribution** means a distribution by the Plan Trustee to beneficiaries of the Plan Trust, made proportionately, so that with respect to a particular beneficial interest in the Plan Trust, the ratio of (a)(i) the value of property distributed on account of such beneficial interest to (ii) the amount of the Allowed Claim on account of which such beneficial interest was distributed, is the same as the ratio of (b)(i) the value of property distributed on account of all beneficial interests to (ii) the amount of all Allowed Claims on account of which all beneficial interests in the Plan Trust are distributed.

1.105 **Record Date** means February 26, 2010.

1.106 **Rejection Bar Date** means the deadline for filing proofs of Claim arising from the rejection of an executory contract or unexpired lease, which deadline will be 30 calendar

17

**EXECUTION VERSION**

days after the entry of an order approving the rejection of such executory contract or unexpired lease and which order may be the Confirmation Order.

1.107  **Released Party** means any current or former officer, director, member or employee of the Debtor; any attorney or financial advisor engaged by the Debtor in respect of Chapter 11 Case; and any attorney, accountant, financial advisor or other professional of the Creditors' Committee and the former, current and future members of the Creditors Committee in such capacity.

1.108  **Remaining Plan Trust Assets** means assets remaining in the Plan Trust in the event that the Plan Trustee has distributed Plan Trust Assets to the holders of Allowed General Unsecured Claims equal to 100% of the aggregate amount of Allowed General Unsecured Claims, <u>plus</u> any statutory interest payable to holders of such Allowed General Unsecured Claims necessary to pay such Claims "in full."

1.109  **Reorganized Articles of Incorporation** means the articles of incorporation or similar corporate organizational document of Reorganized TERI, as amended and restated, substantially in the forms to be filed with the Plan Supplement.

1.110  **Reorganized By-laws** means the by-laws or similar corporate organizational document, to the extent applicable, of Reorganized TERI, as amended and restated, substantially in the forms to be filed with the Plan Supplement.

1.111  **Reorganized TERI** means The Education Resources Institute, Inc. on and after the Effective Date.

1.112  **Reorganized TERI Assets** means all of the Debtor's right, title and interest in and to (a) the Retained Cash; (b) the Restricted Charitable Funds; (c) the Restricted Grant Funds; (d) Reorganized TERI's right to receive payment of the TERI Net Recovery; (e) the Retained Contracts; (f) Reorganized TERI's rights under the Collection Contract; (g) the Remaining Plan Trust Assets, if any; (h) the Residual and (i) all furniture, fixtures, equipment, Data, and all other related assets necessary to support Reorganized TERI's business, all as determined substantially consistently with the Pro Forma Statement of Reorganized TERI Assets included in the Plan Supplement.

1.113  **Residual** means the residual interest of the Debtor as partial owner of the Securitization Trusts identified in Class 3 and its subclasses.

1.114  **Restricted Charitable Funds** means Cash or other assets held by the Debtor pursuant to a charitable deed of gift, the use of which is restricted by applicable state law or other non-bankruptcy law, which funds will be identified in the Plan Supplement <u>minus</u> the Restricted Charitable Funds Carve-Out.

1.115  **Restricted Charitable Funds Carve-Out** means an amount equal to $6,000,000.

EXECUTION VERSION

**1.116** **Restricted Grant Funds** means Cash or other assets held by the Debtor pursuant to private or government grants, the use of which is restricted to specific activities by the terms of the grants, which funds will be identified in the Plan Supplement.

**1.117** **Revised Calculation** has the meaning ascribed to such term in Section 6.10 of this Plan.

**1.118** **Retained Cash** means $3,400,000, less amounts necessary to satisfy in full all priority claims under 11 U.S.C. §§507(a)(3) – (10), 507(b) – (d) to the extent such claims in the aggregate exceed $50,000, subject to further reduction as provided for in the Plan.

**1.119** **Retained Contracts** means (i) any Assumed Agreement, (ii) any contract entered into during the pendency of this Chapter 11 Case and (iii) any Approved Make and Wait Settlement, and (iv) any other contract that is neither assumed nor rejected pursuant to 11 U.S.C. §365, in all cases to which the Debtor is a party, that is listed as a Retained Contract in the Plan Supplement.

**1.120** **Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

**1.121** **Second Year Eligible Collections** means all TERI Loan Net Proceeds in excess of $1,000,000 collected pursuant to the Collection Contract during the second year of the Term.

**1.122** **Secured Claim** means an Allowed Claim held by any entity against the Debtor secured by Collateral, but only to the extent of the value, as set forth in this Plan, as agreed to by the holder of such Claim and the Debtor, or as determined by Final Order pursuant to section 506(a) of the Bankruptcy Code, of such entity's interest in the Estate's interest in such Collateral; *provided, however,* that a Secured Claim does not include a Deficiency Claim.

**1.123** **Secured Creditor** means a Creditor that holds a Secured Claim.

**1.124** **(Intentionally deleted)**.

**1.125** **Securitization Trust** means collectively, each of the "National Collegiate Trusts" that are holders of Claims as more fully described in Classes 3a – 3q hereof.

**1.126** **Securitization Trust Collateral** means with respect to each Securitization Trust, as applicable, (a) at all relevant times, all funds, monies and other assets in the applicable Pledged Account created and maintained for the applicable Securitization Trust, (b) all defaulted loans that were purchased by or on behalf of the Debtor or its agent (acting in such capacity) from the applicable Securitization Trust prior to the Commencement Date, (c) all recoveries collected (and the right to collect such recoveries earned but not paid) and all future recoveries with respect to such prepetition defaulted loans and (d) the proceeds from the sale by the Debtor of such prepetition defaulted loans to a Securitization Trust at any time following rehabilitation.

19

**1.127** **Securitization Trust Deficiency Claim** means a Deficiency Claim, classified in Class 5 and determined in accordance with section 4.2 of this Plan.

**1.128** **Securitization Trust Settlement** means, with respect to a Securitization Trust that accepts this Plan or is deemed to accept the Plan and, thereby, the Securitization Trust Settlement, the allowance of Claims and compromise and settlement of the Trust Adversary Proceeding as set forth in Section 6.2(c) of this Plan.

**1.129** **Securitization Trust Settlement Claim** means the amount of a General Unsecured Claim listed as "Securitization Trust Settlement Claim" on Schedule B attached hereto.

**1.130** **Securitization Trust Settlement Claim Reduction** means, with respect to the applicable Securitization Trust, the amount by which the Allowed Claim of a Securitization Trust is reduced as part of the Securitization Trust Settlement, as set forth in the "Securitization Trust Settlement Claim Reduction" column of Schedule B.

**1.131** **Solicitations Procedure Order** means the Order approving or otherwise determining the Debtor's Motion for an Order (A) Temporarily Allowing Claims for Voting Purposes, (B) Establishing Plan Solicitation and Voting Procedures and (C) Approving Forms of Notices and Ballots.

**1.132** **Tax Claim** means a (a) Priority Tax Claim or (b) an Administrative Expense Claim or Secured Claim to the extent such Administrative Expense Claim or Secured Claim is a Claim based on taxes due to a taxing authority.

**1.133** **TERI First Year Share** means the amount of TERI Loan Net Proceeds collected during the first year of the Term, payable to Reorganized TERI as calculated in Article VI, section 6.4(a) hereof.

**1.134** **(Intentionally Deleted)**.

**1.135** **(Intentionally Deleted)**

**1.136** **TERI Loan Net Proceeds** means any TERI Loan Proceeds less any costs of collection of such TERI Loan Proceeds.

**1.137** **TERI Loan Proceeds** means any Cash or other property collected from an obligor of a TERI Owned Loan in respect of such obligor's obligations under the agreement establishing such TERI Owned Loan.

**1.138** **TERI Net Recovery** means the sum of (i) the TERI First Year Share plus (ii) the TERI Second Year Share plus (iii) the Additional Share.

**1.139** **TERI Owned Loan** means a student loan owned by the Debtor as of the Effective Date, whether purchased by the Debtor or transferred to the Debtor pursuant to an Approved Make and Wait Settlement, a Securitization Trust Settlement or otherwise, other than

20

loans being transferred by the Debtor or its agents to other entities (other than the Plan Trustee) pursuant to this Plan.

**1.140** **TERI Second Year Share** means the amount of TERI Loan Net Proceeds collected during the second year of the Term, payable to Reorganized TERI as calculated in Article VI, section 6.4(b) hereof.

**1.141** **Term** means a period of two years beginning on the Effective Date.

**1.142** **Transfer Taxes** means any sales, use, notorial, or other transfer taxes (including any interest, penalties or other additions thereto) of the Debtor that have been or may be assessed with respect to any transfer under this Plan.

**1.143** **Treasury Regulations** means final, temporary and proposed regulations promulgated by the U.S. Treasury Department in respect of the IRC.

**1.144** **Trust Adversary Proceeding** means that certain adversary proceeding, Case No. 09-1040, pending in the Bankruptcy Court against the Wilmington Trust Company, as owner-trustee of the Securitization Trusts, U.S. Bank National Association as indenture trustee and custodian and First Marblehead Data Services, Inc. as administrator for the Securitization Trusts.

**1.145** **Unimpaired** means not Impaired.

**1.146** **United States Trustee** means the acting or appointed United States Trustee for the District of Massachusetts, as applicable.

**1.147** **Unrestricted Cash** means all Cash (including, without limitation, the Restricted Charitable Funds Carve-Out) that is not Collateral, Restricted Charitable Funds or Restricted Grant Funds.

**1.148** **Victory Fund** means the Collateral Account the Debtor maintains at KeyBank National Association.

**1.149** **Voting Agent** means Epiq Bankruptcy Solutions, LLC.

**1.150** **Voting Record Date** means the date established by the Approval Order by which the Voting Agent must actually receive an otherwise valid vote on this Plan in order for such vote to count as a vote to accept or reject this Plan. Such deadline will be 4:30 p.m. (prevailing Eastern Time) on the date the Court enters an order approving the Disclosure Statement.

**1.151** **Other Terms**. A term used in this Plan that is not defined will have the meaning ascribed to that term, if any, in the Bankruptcy Code.

**1.152** **Construction Of Certain Terms**.

*(a)* The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole, including, as applicable, the documents contained in the Plan

21

**EXECUTION VERSION**

Supplement, and not to any particular section, subsection or clause contained in this Plan or the Plan Supplement.

(b)     Wherever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural and pronouns stated in the masculine, feminine or neuter gender include the masculine, the feminine and the neuter.

**ARTICLE II**

**TREATMENT OF UNCLASSIFIED CLAIMS --**
**ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

2.1     **Administrative Expense Claims**.  Except to the extent the holder of an Allowed Administrative Expense Claim agrees otherwise, each holder of an Allowed Administrative Expense Claim will be paid on account of such Allowed Administrative Expense Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon other agreed terms between the holder of such claim and the Debtor, or (b) such lesser amount as the holder of an Allowed Administrative Expense Claim and the Debtor and Plan Trustee  might otherwise agree; *provided*, *however* that expenses of operation accrued and unpaid as of the Effective Date arising in the ordinary course of the Debtor's business and payable in such ordinary course (including any and all Claims and Expenses directly or indirectly arising from or related to the Pension Plan) will be paid solely by Reorganized TERI from Reorganized TERI Assets in the ordinary course after the Effective Date.  For the avoidance of doubt, ordinary course expenses shall not include direct costs of collections or the recoveries or costs of recoveries (including litigation and other collection costs associated with recoveries on defaulted loans) that are payable from the proceeds of such collections pursuant to the Collection Contract.  Rather, ordinary course expenses to be paid from Reorganized TERI Assets pursuant to this section include rent, payroll, utility, other similar monthly expenses, pension costs, Claims and expenses directly or indirectly arising from or related to the Pension Plan retiree benefits, employee benefits and other expenses attributable to the Debtor's or Reorganized TERI's business.

2.2     **Pre-Effective Date Professional Fees and Expenses**.  All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement for fees and/or expenses incurred prior to and including the Effective Date under section 330 or 503(b) of the Bankruptcy Code will file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is thirty (30) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court.  Objections to any such final application must be filed on or before a date to be set by the Bankruptcy Court in the Confirmation Order or, if no such date is set in the Confirmation Order or in any other Order, then by the date required by the Massachusetts Local Bankruptcy Rules.  Any entity granted such an award by the Bankruptcy Court must be paid in full by the Plan Trustee, in such amounts as are Allowed, within ten (10) days after the order granting such award is a Final Order.

2.3     **United States Trustee Quarterly Fees and Other Statutory Fees**  All fees payable pursuant to 28 U.S.C. § 1930(a)(6) of the United States Code, as determined by the

**EXECUTION VERSION**

Bankruptcy Court on the Confirmation Date, will be paid on the Effective Date by the Debtor. Following the Effective Date the Plan Trustee shall file all post-confirmation reports and pay all fees (solely from and to the extent of available Plan Trust Assets) payable pursuant to 28 U.S.C. §1930(a)(6) until the Chapter 11 Case is closed pursuant to a Final Order.

       **2.4**   **Priority Tax Claims**  Except to the extent the holder of an Allowed Priority Tax Claim agrees otherwise, each holder of an Allowed Priority Tax Claim will be paid in respect of such Allowed Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or (b) such lesser amount as the holder of an Allowed Priority Tax Claim and the Debtor or the Plan Trustee agree. **Any Allowed Priority Tax Claim paid after the Effective Date shall accrue interest at the rate calculated in accordance with 28 U.S.C. §1961 until such Allowed Priority Tax Claim is paid in full.**

<br>

## ARTICLE III

## CLASSIFICATION OF CLAIMS

       The following table designates and summarizes the Classes of Claims, other than Administrative Expense Claims and Priority Tax Claims, and specifies which of those classes are (i) Impaired or Unimpaired by this Plan and (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code:

| **CLASS** | **STATUS** |
|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired/Deemed to Accept |
| Classes 2a – 2p – Secured Claims of Make and Wait Lenders | Impaired/Entitled to Vote |
| Classes 3a – 3q – Secured Claims of Certain Securitization Trusts | Impaired/Entitled to Vote |
| Classes 4a – 4k – Secured Claims of Keycorp Trusts and KeyBank (other than in its capacity as a Make and Wait Lender) | Impaired/Entitled to Vote |
| Class 5 – General Unsecured Claims | Impaired/Entitled to Vote |
| Class 6 – Convenience Claims | Unimpaired/Deemed to Accept |

       **3.1**   **Class 1 – Priority Non-Tax Claims.Impairment and Voting**. Class 1 is Unimpaired by this Plan. For purposes of this Plan, each holder of an Allowed Claim in Class 1

is conclusively deemed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

(b) **Distributions**. In full and complete satisfaction, settlement and release of and in exchange for the Priority Non-Tax Claims, each holder of an Allowed Priority Non-Tax Claim against the Debtor will receive, except to the extent that such holder of an Allowed Priority Non-Tax Claim has been paid by the Debtor prior to the Effective Date and except to the extent such holder agrees to less favorable treatment, an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable. Such Claims will be paid from Available Cash.

**3.2** **Classes 2a – 2p – Secured Claims of Make and Wait Lenders**. Class 2 consists of the Secured Claims of the Make and Wait Lenders. Each Allowed Secured Claim in Class 2 shall be considered to be a separate subclass within Class 2, and each such subclass shall be deemed to be a separate class for purposes of this Plan and of Bankruptcy Code Sections 1122, 1123, 1126, and 1129. Each subclass in class 2 is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(a) **Class 2a**. (Intentionally omitted).

(b) **Class 2b - Comerica Bank**. Class 2b consists of all Comerica Bank's Claims that are Secured Claims. Class 2b is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(c) **Class 2c** - (Intentionally omitted).

(d) **Class 2d - GMAC Bank**. Class 2d consists of all GMAC Bank's Claims that are Secured Claims. Class 2d is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(e) **Class 2e – HSBC Bank USA, N.A.** Class 2e consists of all HSBC Bank USA, N.A.'s Claims that are Secured Claims. Class 2e is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(f) **Class 2f – Huntington National Bank**. Class 2 consists of all Huntington National Bank's Claims that are Secured Claims. Class 2f is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(g) **Class 2g – Insurbanc**. Class 2g consists of Insurbanc's Secured Claims. Class 2g is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(h) **Class 2h – KeyBank National Association** Class 2h consists of all KeyBank National Association's Claims that are Secured Claims. Class 2h is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(i) **Class 2i – Manufacturers and Traders Trust Company (including All First)**. Class 2i consists of Manufacturers and Traders Trust Company's Claims that are Secured

Claims (including All First's Secured Claims). Class 2i is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(j)   **Class 2j – National City Bank**. Class 2j consists of all National City Bank's Claims that are Secured Claims. Class 2j is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(k)   **Class 2k – PNC Bank, N.A.**. Class 2k consists of all PNC Bank, N.A.'s Claims that are Secured Claims. Class 2k is Impaired by this Plan and is entitled to accept or reject this Plan.

(l)   **Class 2l – RBS Citizens, N.A.** Class 2l consists of all RBS Citizens, N.A.'s Claims that are Secured Claims. Class 2l is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(m)   **Class 2m – Sovereign Bank**. Class 2m consists of all Sovereign Bank's Secured Claims. Class 2m is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(n)   **Class 2n – SunTrust Bank**. Class 2n consists of all SunTrust Bank's Secured Claims. Class 2n is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(o)   **Class 2o – TCF National Bank**. Class 2o consists of all TCF National Bank's Secured Claims. Class 2o is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(p)   **Class 2p –U.S. Bank, N.A.** Class 2p consists of all U.S. Bank, N.A.'s Secured Claims (other than claims of U.S. Bank, N.A., if any, in its capacity as indenture trustee, trustee or other representative capacity with respect to the Securitization Trusts and Other Trusts or in its capacity as custodial or agent for a Make and Wait Lender). Class 2p is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

   **3.3   Classes 3a – 3l – Secured Claims of Securitization Trusts.** Class 3 consists of the Secured Claims of the Securitization Trusts. Each Allowed Secured Claim in Class 3 shall be considered to be a separate subclass within Class 3, and each such subclass shall be deemed to be a separate class for purposes of this Plan and of Bankruptcy Code Sections 1122, 1123, 1126, and 1129. Each subclass in Class 3 is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(a)   **Class 3a – The National Collegiate Trust 2003-1**. Class 3a consists of all claims of The National Collegiate Student Loan Trust 2003-1 that are Secured Claims. Class 3a is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(b)   **Class 3b – The National Collegiate Trust 2004-1**. Class 3b consists of all claims of The National Collegiate Student Loan Trust 2004-1 that are Secured Claims. Class 3b is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

25

EXECUTION VERSION

      *(c)*    **Class 3c – The National Collegiate Trust 2004-2**. Class 3c consists of all claims of The National Collegiate Student Loan Trust 2004-2 that are Secured Claims. Class 3c is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(d)*    **Class 3d – The National Collegiate Trust 2005-1**. Class 3d consists of all claims of The National Collegiate Student Loan Trust 2005-1 that are Secured Claims. Class 3d is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(e)*    **Class 3e – The National Collegiate Trust 2005-2**. Class 3e consists of all claims of The National Collegiate Student Loan Trust 2005-2 that are Secured Claims. Class 3e is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(f)*    **Class 3f – The National Collegiate Trust 2005-3**. Class 3f consists of all claims of The National Collegiate Student Loan Trust 2005-3 that are Secured Claims. Class 3f is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(g)*    **Class 3g – The National Collegiate Trust 2006-1**. Class 3g consists of all claims of The National Collegiate Student Loan Trust 2006-1 that are Secured Claims. Class 3g is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(h)*    **Class 3h – The National Collegiate Trust 2006-2**. Class 3h consists of all claims of The National Collegiate Student Loan Trust 2006-2 that are Secured Claims. Class 3h is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(i)*    **Class 3i – The National Collegiate Trust 2006-3**. Class 3i consists of all claims of The National Collegiate Student Loan Trust 2006-3 that are Secured Claims. Class 3i is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(j)*    **Class 3j – The National Collegiate Trust 2006-4**. Class 3j consists of all claims of The National Collegiate Student Loan Trust 2006-4 that are Secured Claims. Class 3j is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(k)*    **Class 3k – The National Collegiate Trust 2007-1**. Class 3k consists of all claims of The National Collegiate Student Loan Trust 2007-1 that are Secured Claims. Class 3k is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(l)*    **Class 3l – The National Collegiate Trust 2007-2**. Class 3l consists of all claims of The National Collegiate Student Loan Trust 2007-2 that are Secured Claims. Class 3l is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(m)*    **Class 3m – The National Collegiate Trust 2001-CP1**. Class 3m consists of all claims of The National Collegiate Trust 2001-CP1 that are Secured Claims. Class 3m is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

      *(n)*    **Class 3n – The National Collegiate Trust 2002-CP1**. Class 3n consists of all claims of The National Collegiate Trust 2002-CP1 that are Secured Claims. Class 3n is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

DM3\1301010.2

**EXECUTION VERSION**

(o) **Class 3o – The National Collegiate Master Student Loan Trust I**. Class 3o consists of all claims of The National Collegiate Master Student Loan Trust I.  Class 3o is Impaired by this Plan and is entitled to vote to accept or reject the Plan.

(p) **Class 3p – The National Collegiate Student Loan Trust 2007-3**.  Class 3p consists of all claims of The National Collegiate Student Loan Trust 2007-3.  Class 3p is Impaired by this Plan and is entitled to vote to accept or reject the Plan.

(q) **Class 3q – The National Collegiate Student Loan Trust 2007-4**.  Class 3q consists of all claims of The National Collegiate Student Loan Trust 2007-4.  Class 3q is Impaired by this Plan and is entitled to vote to accept or reject the Plan.

**3.4** **Classes 4a – 4k – Secured Claims of the Keycorp Trusts and KeyBank National Association (other than in its capacity as a Make and Wait Lender**.  Class 4 consists of the Secured Claims of the Keycorp Trusts and KeyBank National Association (other than in its capacity as a Make and Wait Lender).  Each Allowed Secured Claim in Class 4 shall be considered to be a separate subclass within Class 4, and each such subclass shall be deemed to be a separate class for purposes of this Plan and of Bankruptcy Code Sections 1122, 1123, 1126, and 1129.  Each subclass in Class 4 is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(a) **Class 4a – KSLT 1999-A**. Class 4a consists of all claims of KSLT 1999-A that are Secured Claims.  Class 4a is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(b) **Class 4b – KSLT 1999-B**. Class 4b consists of all claims of KSLT 1999-B that are Secured Claims.  Class 4b is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(c) **Class 4c – KSLT 2000-A**. Class 4c consists of all claims of KSLT 2000-A that are Secured Claims.  Class 4c is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(d) **Class 4d – KSLT 2000-B**. Class 4d consists of all claims of KSLT 2000-B that are Secured Claims.  Class 4d is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(e) **Class 4e – KSLT 2001-A**. Class 4e consists of all claims of KSLT 2001-A that are Secured Claims.  Class 4e is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(f) **Class 4f – KSLT 2002-A**. Class 4f consists of all claims of KSLT 2002-A that are Secured Claims.  Class 4f is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

     *(g)*    **Class 4g – KSLT 2003-A**. Class 4g consists of all claims of KSLT 2003-A that are Secured Claims.  Class 4g is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

     *(h)*    **Class 4h – KSLT 2004-A**. Class 4h consists of all claims of KSLT 2004-A that are Secured Claims.  Class 4h is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

     *(i)*    **Class 4i – KSLT 2005-A**. Class 4i consists of all claims of KSLT 2005-A that are Secured Claims.  Class 4i is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

     *(j)*    **Class 4j – KSLT 2006-A**. Class 4j consists of all claims of KSLT 2006-A that are Secured Claims.  Class 4j is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

     *(k)*    **Class 4k – KeyBank National Association.**  Class 4k consists of all Claims of KeyBank, National Association (other than in its capacity as a Make and Wait Lender).  Class 4k is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

    **3.5**    **Class 5 – General Unsecured Claims**.  Class 5 consists of all General Unsecured Claims.  Class 5 is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

    **3.6**    **Class 6 – Convenience Class Claims**.  Class 6 consists of Convenience Class Claims.

     *(a)*    **Impairment and Voting**.  Class 6 is Unimpaired by this Plan.  Each holder of an Allowed Claim in Class 6 is deemed to have accepted this Plan.

     *(b)*    **Distributions**.  In full and complete satisfaction, settlement and release of and in exchange for the Convenience Class Claims, each holder of an Allowed Convenience Class Claim will be paid in full from Available Cash, except to the extent such holder of an Allowed Convenience Class Claim agrees to less favorable treatment, on the later of the Effective Date and the date such Convenience Class Claim becomes an Allowed Convenience Class Claim.

## ARTICLE IV

## TREATMENT OF CLASSES 2 - 5

    **4.1**    **Treatment of Class 2 Claims (Make and Wait Lender Claims)**

     *(a)*    **Classes 2a – 2p that accept the Plan**.  The holder of a Claim in each of classes 2a – 2p that accepts the Plan or that is deemed to accept the Plan shall be deemed to have accepted the Make and Wait Lender Settlement, and shall receive the distribution provided for and otherwise be treated in accordance with in the Make and Wait Lender Settlement, as described in Section 6.2(a) of this Plan.

28

(b)  **Classes 2a – 2p that reject the Plan**.  The holder of a Claim in each of classes 2a – 2p that rejects the Plan or is deemed to reject the Plan shall be deemed to opt out of and reject the Make and Wait Lender Settlement, and as to Claims in such rejecting Classes (A) the Allowed amount of the Secured Claim (if any) in such rejecting Classes will be determined by the Bankruptcy Court pursuant to 11 U.S.C. §502, and the Plan Trustee will seek to have such Secured Claim, if any, determined on any appropriate basis as determined by the Plan Trustee, (B) the Collateral Accounts allegedly securing the Claims in such rejecting Classes will not be released to the applicable Make and Wait Lender in such rejecting Class unless the Court determines pursuant to one or more Final Orders that such holders hold Allowed Secured Claims, in which event such holder's Collateral Account, if any, shall be released to such holder to the extent of available funds and to the extent necessary to satisfy such Allowed Secured Claim, with the excess, if any, released to the Plan Trustee.

(c)  **Disposition of Collateral Accounts Pending Resolution for Classes 2a – 2p that reject the Plan**.  On the Effective Date (or as soon thereafter as reasonably practicable) with respect to a Make and Wait Lender that rejects or is deemed to reject this Plan and is thereby deemed to opt out of the Make and Wait Lender Settlement, the funds in the Pledged Account (whether earned or accrued) as of the Effective Date shall be transferred to the Plan Trustee or its designee(s) in escrow pursuant to the terms of one or more escrow agreements.

**4.2**  **Treatment of Class 3 Claims (Securitization Trusts)**.

(a)  **Classes 3a –3q that accept the Plan**.  The holder of a Claim in each of classes 3a – 3q that accepts the Plan or that is deemed to accept the Plan pursuant to the Solicitations Procedure Order shall be deemed to have accepted the Securitization Trust Settlement, and shall receive the distribution provided for and otherwise be treated in accordance with in the Securitization Trust Settlement, as described in Section 6.2(c) of this Plan.

(b)  **Classes 3a – 3q that reject the Plan**.  The holder of a Claim in each of classes 3a – 3q that rejects the Plan or is deemed to reject the Plan (including, without limitation, pursuant to the Solicitations Procedure Order) shall be deemed to opt out of and reject the Securitization Trust Settlement, and as to Claims in such rejecting Classes (A) the Allowed amount of the Secured Claim (if any) of the Claims in such rejecting Classes will be determined by  the Bankruptcy Court pursuant to 11 U.S.C. §502, and the Plan Trustee will seek to have such Secured Claim, if any, determined on any appropriate basis as determined by the Plan Trustee, (B) the Trust Adversary Proceeding against the holders of Claims in such rejecting Classes will proceed in the Bankruptcy Court, (C) the Collateral Accounts allegedly securing the Claims in such rejecting Classes will not be released to the Indenture Trustee (or its servicer or any other representative) on behalf of the holder of such Claim in such rejecting Class (or such other party as the Indenture Trustee may designate) unless the Court determines pursuant to one or more Final Orders that such holders hold Allowed Secured Claims, in which event such holder's Collateral Account, if any, shall be released to such holder to the extent of available funds and to the extent necessary to satisfy such Allowed Secured Claim, with the excess, if any, released to the Plan Trustee, and (D) such Securitization Trust shall reserve the right in the Trust

29

Adversary Proceeding to contest the Debtor's assertion that it acquired title to defaulted loans sold or transferred to the Debtor or its agent as a result of such sale or transfer.

     *(c)*     **Disposition of Pledged Accounts Pending Resolution of Trust Adversary Proceeding for Classes 3a – 3q that reject the Plan**.  On the Effective Date (or as soon thereafter as reasonably practicable) with respect to a Securitization Trust that rejects or is deemed to reject this Plan and is thereby deemed to opt out of the Securitization Trust Settlement, the funds in the Pledged Account (whether earned or accrued) as of the Effective Date shall be transferred to U.S. Bank National Association ("U.S. Bank") and held by U.S. Bank in escrow pursuant to the terms of one or more escrow agreements among U.S. Bank, the administrator of the Securitization Trust and the Plan Trustee.  The escrow agreement(s) shall be mutually acceptable to U.S. Bank, the administrator of the Securitization Trust and the Plan Trustee and shall provide that (i) the funds shall be held by U.S. Bank in the applicable escrow account to be released upon the earlier of (1) one or more Final Orders of the Bankruptcy Court (as applicable to such Trust), or (2) pursuant to joint written instruction of the Plan Trustee, the applicable Securitization Trust [and indenture trustee for such Trust], (ii) the funds shall be invested by U.S. Bank in accordance with such written instructions, and that investment earnings on such funds shall be added to the fund and released as provided above, and (iii) such other matters as shall be agreed to by the parties to such agreement (including payment of customary fees and other bank charges).  Notwithstanding such transfer of funds to the escrow account or accounts, each of the Plan Trustee, Securitization Trustee and indenture trustee  reserve all rights, and such transfer(s) to the escrow account or accounts are subject to the rights of the Plan Trustee, Securitization Trustee and indenture trustee, with respect to recoveries and other funds transferred by the Debtor to the applicable Pledged Account on or after the Commencement Date, together with any interest or other earnings thereon, including, without limitation, the rights of the parties with respect to the extent, priority, validity or existence of any alleged security interest in such recoveries and funds.

     **4.3**     **Classes 4a – 4k**.

     *(a)*     **Classes 4a – 4k that do not make the Key Access Program Election**. Each Accepting KeyCorp Trust within Classes 4a – 4j and (if it accepts the Plan) KeyBank National Association (other than in its capacity as a Make and Wait Lender), shall receive the distribution provided for in the Key Access Program Settlement, as described in Section 6.2(d) of this Plan, and shall have an Allowed Deficiency Claim in the amount listed in the "Key Access Program Decoder Settlement Claim" column of the attached Schedule C.

     *(b)*     **Classes 4a – 4k that make the Key Access Program Election**. Each of Classes 4a  - 4k in which the holders of Claims in such Class reject the Plan, and thereby make the Key Access Program Election, shall be deemed to opt out of the Key Access Program Settlement.  The Allowance or disallowance amounts of the Claims in such rejecting Classes shall be determined by the Bankruptcy Court after the Effective Date in accordance with 11 U.S.C. §502.

### 4.4    Class 5.

(a)    **Make and Hold Claims**.  Each Accepting Make and Hold Lender shall receive the treatment described in section 6.2(b).  The Allowance or disallowance of a Class 5 Claim of a Make and Hold Lender that rejects the Plan shall be determined by the Bankruptcy Court after the Effective Date in accordance with 11 U.S.C. §502.

(b)    **Make and Wait Deficiency Claims**.  Each Accepting Make and Wait Lender shall receive the treatment described in section 6.2(a).  The Allowance or disallowance of a Class 5 Deficiency Claim of a Make and Wait Lender that rejects the Plan, if any, shall have its Deficiency Claim (if any) determined in accordance with Section 4.1 of this Plan.

(c)    **Securitization Trust Deficiency Claims**.  Each Securitization Trust that accepts this Plan and, thereby, the Securitization Trust Settlement shall receive the treatment described in Section 6.2(c).  The Allowance or disallowance of a Class 5 Deficiency Claim (if any) of a Securitization Trust that rejects the Plan, and thereby, the Securitization Trust Settlement, shall be determined by the Bankruptcy Court after the Effective Date in accordance with 11 U.S.C. §502.

(d)    **Key Access Deficiency Claims**.  Each Accepting KeyCorp Trust within Classes 4a – 4j and (if it accepts the Plan) KeyBank National Association (other than in its capacity as a Make and Wait Lender), shall receive the treatment described in section 6.2(d).  The Allowance or disallowance of a Class 5 Deficiency Claim (if any) of a KeyCorp Trust within Classes 4a – 4j that rejects the Plan and (if it rejects the Plan) KeyBank National Association (other than in its capacity as a Make and Wait Lender), shall be determined by the Bankruptcy Court after the Effective Date in accordance with 11 U.S.C. §502.

(e)    **Other General Unsecured Claims**.  Unless otherwise provided in this Plan, the Allowed amount of Other General Unsecured Claims will be determined by the Bankruptcy Court in accordance with section 502 of the Bankruptcy Code.

### ARTICLE V

### VOTING AND DISTRIBUTION

**5.1    Voting of Claims**.  Each holder of an Allowed Claim as of the Voting Record Date in Classes 2a – 2p, Classes 3a – 3q, Class 4a-4k, Class 5 or the holder of a Claim that has been temporarily allowed for voting purposes only under Bankruptcy Rule 3018(a) pursuant to the Approval Order or the Solicitation Procedures Order will be entitled to vote to accept or reject this Plan, which vote may be amended prior to the deadline for submitting votes.  For voting purposes, and consistent with the provisions of the Solicitations Procedure Order, the amount of Claim that a holder of a Claim in Classes 2a-2p, Classes 3a-3q and Classes 4a-4k that is entitled to vote, may vote in respect of its General Unsecured Claim in Class 5 (if any) will be the amount asserted by such holder in its proof of Claim, or such amount as may be agreed upon pursuant to a stipulated order entered by the Court or as otherwise determined by the Court, less the amount held in the Collateral Account as of July 31, 2009.  For voting purposes, and consistent with the provisions of the Approval Order or the Solicitations Procedure Order, the

31

amount of Make and Hold Claims in Class 5 will be temporarily allowed and permitted to vote in the amount asserted by such Creditor in such Creditor's Proof of Claim, or such amount as may be agreed upon pursuant to a stipulated order entered by the Court or as otherwise determined by the Court,.

**5.2** **Acceptance by Impaired Class**. Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors will have accepted this Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class or holders of Claims permitted to vote pursuant to the provisions of the Solicitations Procedure Order that have timely and properly voted to accept or reject this Plan. The Solicitations Procedure Order, to the extent and as applicable, shall govern the voting by the Securitization Trusts, the Other Trusts and the KeyCorp Trusts.

**5.3** **Presumed Acceptances of Plan**. Classes 1 and 6 are not Impaired under this Plan and, therefore, are conclusively presumed to have accepted this Plan.

**5.4** **Nonconsensual Confirmation**. If any Impaired Class of Claims entitled to vote will not accept this Plan by the requisite statutory majority provided in sections 1126(c) and (d) of the Bankruptcy Code, the Plan Proponents may request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code.

**5.5** **Method of Distributions Under this Plan**.

*(a)* **Distributions Generally**.

(i) Reorganized TERI will make all distributions required by this Plan other than those to be made by the Plan Trustee.

(ii) The Plan Trustee will make all other distributions from the Plan Trust to holders of Claims in accordance with this Plan and the terms and conditions set forth in the Plan Trust Agreement.

*(b)* **Distributions of Cash**. Any payment of Cash made by Reorganized TERI or the Plan Trustee pursuant to this Plan may be made at the option of such party either by check drawn on a domestic bank or by wire transfer from a domestic bank.

*(c)* **Distributions Free and Clear**. Except as otherwise provided herein, any distributions or transfers by or on behalf of the Debtor under this Plan, including, but not limited to, distributions to any holder of an Allowed Claim, will be free and clear of any liens, claims, and encumbrances, and no other entity will have any interest – legal, beneficial, or otherwise – in assets transferred pursuant to this Plan. Notwithstanding the foregoing, all obligors of student loans transferred to the Plan Trustee may assert defenses (but not counterclaims or claims for affirmative relief) thereunder to the same extent, and with the same validity, as such defenses may be asserted against the Debtor as of the Effective Date.

*(d)* **Timing of Performance**. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

*(e)* **Delivery of Distributions**. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim will be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor. The holder must notify Reorganized TERI or the Plan Trustee, as applicable, in writing of a change of address, in the case of holders of transferred Claims only, by the filing of a proof of claim or statement pursuant to Bankruptcy Rule 3001(e) by such holder or transferee that contains an address for such holder different from the address of such holder as set forth in the Schedules. Neither Reorganized TERI nor the Plan Trustee will be liable for any distribution sent to the address of record of a holder in the absence of the written change thereof as provided herein. Notwithstanding the foregoing, with respect to each Securitization Trust, Other Trusts and the KeyCorp Trusts, distributions in respect of an Allowed Claim of such Trust including defaulted loans (if any), shall be made to the Trust, subject to the lien and security interest of the applicable indenture trustee for such Trust, and shall be delivered to the trustee or indenture trustee for such Trust (as appropriate) or to such other person as may be designated by the indenture trustee or trustee in writing delivered to Reorganized TERI or the Plan Trustee, as applicable, provided that loan documents, including the related student loan note in respect of a defaulted loan, shall be delivered by the entity that has possession of such loan documents, to the applicable servicer as custodian and agent for the indenture trustee or trustee , to be held under the applicable custody agreement among such servicer as custodian for the indenture trustee or trustee and the Trust.

*(f)* **Distributions to Holders as of Record Date**. As of the close of business on the Record Date, the claims register for the Debtor will be closed and there will be no further changes made to the identity of the record holder of any Claim. Neither Reorganized TERI nor the Plan Trustee will have any obligation to recognize any transfer of any Claim occurring after the Record Date. Reorganized TERI and the Plan Trustee will instead be authorized and entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the applicable claims register at the close of business on the Record Date.

*(g)* **Undeliverable and Unclaimed Distributions**. If any Claim holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the holder notifies Reorganized TERI or the Plan Trustee, as appropriate, in writing of such holder's then-current address, at which time all missed distributions will, subject to the last sentence of this paragraph, be made as soon as is practicable to such holder, without interest. Checks issued by Reorganized TERI or the Plan Trustee in respect of Allowed Claims will be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Requests for re-issuance of any check will be made in accordance with the notice provisions of this Plan to Reorganized TERI or the Plan Trustee, as appropriate, by the holder of the Allowed Claim to whom such check originally was issued. All claims for undeliverable distributions or voided checks will be made on or before one hundred and twenty (120) days after the date such undeliverable distribution was initially made. After such dates, all

33

such distributions will be deemed unclaimed property under section 347(b) of the Bankruptcy Code and will become unencumbered Cash of Reorganized TERI, or the Plan Trust, as appropriate pursuant to this Plan. The holder of any Claim for which any undeliverable distribution has been deemed unclaimed property under section 347(b) of the Bankruptcy Code will not be entitled to any other or further distribution under this Plan on account of such Claim.

        *(h)*    **Setoffs**. Except with respect to an Allowed Claim that is Allowed as part of a compromise and settlement approved pursuant to a Final Order (including the settlements set forth in Section 6.2 hereof), to the extent permitted under the Bankruptcy Code or other applicable law, Reorganized TERI, or the Plan Trustee, as applicable, may set off against or recoup from any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the claims, rights and Causes of Action of any nature that the Debtor has against the holder of such Allowed Claim.

        *(i)*    **Application of Distributions**. Distributions to any holder of an Allowed Claim will be applied first to the satisfaction of the principal portion (as determined for federal income tax purposes) of any such Allowed Claim and thereafter to the remaining portion of such Allowed Claim, if any, unless the application is governed by an indenture or other governing document in which case the terms of such documents shall govern. No provision of this Plan or Confirmation Order shall modify any charging lien or other right of the indenture trustee, trustee or other entity in another representative capacity to reimburse itself for fees, expenses and disbursements against any distribution.

        *(j)*    **Withholding and Reporting Requirements**. In connection with this Plan and all instruments issued in connection therewith and distributed thereon, the Debtor or the Plan Trustee, as applicable, will comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under this Plan will be subject to any such withholding or reporting requirements. ***The Debtor and the Plan Trustee will have the right to withhold distributions to any holder of a Claim, and any such Claim shall not become an Allowed Claim, notwithstanding any other provision of this Plan, unless and until such holder of a Claim executes and delivers to the Plan Trustee an Internal Revenue Service Form W-9.*** Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such distribution, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under this Plan has the right, but not the obligation, to refrain from making a distribution until the holder of the Allowed Claim has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

        *(k)*    **Distribution**. In full and complete satisfaction, settlement and release of and in exchange for the General Unsecured Claims, each holder of an Allowed General Unsecured Claim will receive the General Unsecured Claim Distribution.

**EXECUTION VERSION**

## ARTICLE VI

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

### 6.1 **Reorganized TERI.**

*(a)* **Reorganized Articles of Incorporation and Reorganized By-laws**.
Reorganized TERI will adopt Reorganized Articles of Incorporation and Reorganized By-laws
prior to, but effective as of, the Effective Date, which will be included in this Plan Supplement.
Prior to the closing of TERI's Chapter 11 Case, any amendments to Reorganized TERI's Articles
of Incorporation and Reorganized By-laws will be filed with the Bankruptcy Court.

*(b)* **Boards of Directors and Officers**. The identities of the members of the
initial Board of Directors and the initial officers of Reorganized TERI will be disclosed in the
Plan Supplement and will be in effect as of the Effective Date.

*(c)* **Reorganized TERI (Not-For-Profit)**. Reorganized TERI will, as of the
Effective Date, remain a not-for-profit corporation.

*(d)* **Retention of Reorganized TERI Assets**. On and after the Effective
Date, Reorganized TERI will retain all rights, title, and interests in the Reorganized TERI Assets.

### 6.2 **Compromise and Settlement**.

*(a)* **Make and Wait Lender Settlement**. Pursuant to section 1123(b)(3)(A)
of the Bankruptcy Code and Bankruptcy Rule 9019, the acceptance of this Plan by an Accepting
Make and Wait Lender will constitute a good faith compromise and settlement of all Claims and
controversies between the Debtor and such Accepting Make and Wait Lender, including the
amounts, allowance, relative priority and treatment of the Secured Claim and the Deficiency
Claim (if any) of such Accepting Make and Wait Lender.

(i) **Claims of An Accepting Make and Wait Lender**. Each Make
and Wait Lender in Classes 2a – 2p that accepts this Plan or is deemed to accept
the Plan, and, thereby, the Make and Wait Lender Settlement (1) will have an
Allowed Secured Claim in the applicable subclass of Class 2 in the amount set
forth in the column labeled "Payment to Accepting Make and Wait Lender from
Collateral Account" on attached Schedule A, and will have an Allowed
Unsecured Claim that will be treated as a Class 5 Claim in the amount, if any, set
forth in the "Make and Wait Lender Decoder Deficiency Claim (If Any)" column
of the attached Schedule A.

(ii) **Release of Make and Wait Lender Equity and Make and Wait
Lien Dispute Amount to Plan Trustee by Accepting Make and Wait Lender**.
Each Make and Wait Lender in Classes 2a – 2p that accepts this Plan or is deemed
to accept the Plan, and, thereby, the Make and Wait Lender Settlement, will
release its interest in the amount, if any and as applicable, in the column labeled
"Make and Wait Lender Payment Amount (If Any)" in the attached Schedule A

35

and shall be deemed to have authorized and instructed the Debtor to transfer such amount to the Plan Trustee on the Effective Date free and clear of any and all claims, interests, liens and encumbrances.

(iii)    **Disbursement of Remainder of Collateral Account to Accepting Make and Wait Lender.**  On the Effective Date, the Debtor shall be deemed to release from the applicable Collateral Account, and such amount shall be remitted, to each Accepting Make and Wait Lender, in full satisfaction of such Accepting Make and Wait Lender's Allowed Secured Class 2 Claim, the applicable amount for such Accepting Make and Wait Lender in the column labeled "Payment to Accepting Make and Wait Lender from Collateral Account" on attached <u>Schedule A</u>, plus all interest and other earnings (if any) paid and deposited into such Pledged Account as of the Effective Date.

(iv)    **Retention by Accepting Make and Wait Lender of Loans Not Purchased by the Debtor**.  Each Accepting Make and Wait Lender will retain all loans that were not purchased by the Debtor as of the Effective Date.

(vi)    **Bankruptcy Court Approval of Make and Wait Lender Settlement**. For each Accepting Make and Wait Lender, entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the Make and Wait Lender Settlement and the Bankruptcy Court's finding that such settlement is fair, equitable and reasonable and in the best interests of the Debtor, this Plan, Reorganized TERI and all Creditors.

(vii)    **Release of Claims against the Debtor and The Estate**. On the Effective Date, the Claims against the Debtor and the Estate of each Accepting Make and Wait Lender receiving the treatment provided by the Make and Wait Lender Settlement, subject to and upon implementation of the Make and Wait Lender Settlement, will be deemed satisfied and no further recovery shall be permitted in respect of such Claims.

(viii)    **Rejection of Executory Contracts**. On the Effective Date, all Guaranty Agreements executed in favor of the Make and Wait Lenders and the related Deposit and Security Agreements and other related documents entered into by the Debtor prior to the Commencement Date will be deemed rejected, and with respect to Claims asserted by Accepting Make and Wait Lenders, all Debtor's claims or rights to set off any Guaranty Fees, basis point fees and other interests in loans held by such Make and Wait Lenders will be deemed waived.

*(b)*    **Make and Hold Settlement**.  Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the acceptance of this Plan by an Accepting Make and Hold Lender will constitute a good faith compromise and settlement of all Claims and controversies between the Debtor and such Accepting Make and Hold Lender, including the amounts, allowance, relative priority and treatment of the Make and Hold Claims of such Accepting Make and Hold Lender.

36

**EXECUTION VERSION**

(i)    **Claims of An Accepting Make and Hold Lender.**  An Accepting Make and Hold Lender shall have an Allowed Claim calculated as the larger of the Claim calculated by the Decoder and the Claim calculated by the Debtor's Base Case, as set forth in the column labeled "Make and Hold Lender Settlement Claim" on attached Schedule D.  All such claims will be treated as Allowed Class 5 Claims.

(ii)    **Distributions to Accepting Make and Hold Lenders and Effectiveness of Make and Hold Settlement**.  All distributions to Accepting Make and Hold Lenders pursuant to this Plan will be made on account of and in consideration of the Make and Hold Lender Settlement, which, upon the Effective Date, will be binding on all Accepting Make and Hold Lenders, the Plan Proponents, and Reorganized TERI.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the Make and Hold Lender Settlement and the Bankruptcy Court's finding that such Make and Hold Lender Settlement is fair, reasonable, equitable and in the best interests of the Accepting Make and Hold Lenders, the Plan Proponents and Reorganized TERI.

(iii)    **Rejection of Make and Hold Guaranty Agreements**. On the Effective Date, all Guaranty Agreements executed in favor of the Make and Hold Lenders and other related documents entered into by the Debtor prior to the Commencement Date will be deemed rejected, and with respect to Claims asserted by Accepting Make and Hold Lenders, all Debtor's claims or rights to set off any Guaranty Fees, basis point fees and other interests in loans held by such Make and Hold Lenders will be deemed waived.

*(c)*    **Securitization Trust Settlement.**  Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 the acceptance of this Plan by a Securitization Trust Settlement will constitute a good faith compromise and settlement of all Claims, Causes of Action and controversies between the Debtor and each Securitization Trust receiving the treatment provided by the Securitization Trust Settlement, including, without limitation, the amounts, allowance, relative priority and treatment of the Secured Claim and Deficiency Claim of each Securitization Trust and any other claim, whether a general unsecured claim, priority claim or administrative expenses claim that each such Securitization Trust, the Indenture Trustee under the Indenture for such Securitization Trust, or the administrator for such Securitization Trust (in such capacity) has asserted or might assert against the Debtor or its estate. Notwithstanding the foregoing, nothing in this Plan shall bar any entity from seeking Allowance of an Administrative Expense Claim arising under 11 U.S.C. §503(b)(3)(D) and (4) ("Substantial Contribution Claim"), and as to any such Substantial Contribution Claim, the parties reserve all their respective rights, claims and defenses.

37

(i)    **Claims of An Accepting Securitization Trust**.  Each Securitization Trust in Classes 3a – 3q that accepts this Plan or is deemed to accept the Plan, and, thereby, the  Securitization Trust Settlement  (A) will have an Allowed Secured Claim in the applicable subclass of Class 3 in the amount set forth in the column labeled "Payment to Accepting Securitization Trust from Collateral Account" on attached Schedule B, and (B) will have an Allowed Unsecured Claim that will be treated as a Class 5 Claim in the amount, if any, set forth in the "Securitization Trust Settlement Claim (If Any)" column of the attached Schedule B.

(ii)    **Release of Securitization Trust Equity by Accepting Securitization Trust**.  Each Securitization Trust in Classes 3a – 3q that accepts this Plan or is deemed to accept the Plan, and, thereby, the Securitization Trust Settlement, will release its interest in the amount, if any and as applicable, in the column labeled "Securitization Trust Decoder Equity (Rounded)" in the attached Schedule B and shall be deemed to have authorized and instructed the Debtor to transfer such amount to the Plan Trustee on the Effective Date free and clear of any and all claims, interests, liens and encumbrances.

(iii)    **Disbursement of Remainder of Pledged Account to Accepting Securitization Trust.**  On the Effective Date, the Debtor shall be deemed to release from the applicable Pledged Account, and such amount shall be remitted, to each Securitization Trust in Classes 3a – 3q that accepts this Plan or is deemed to accept the Plan, and, thereby, the Securitization Trust Settlement, in full satisfaction of the Allowed Secured Claim of such Accepting Securitization Trust, the applicable amount for such Accepting Securitization Trust in the column labeled "Payment to Accepting Securitization Trust from Pledged Account" on attached Schedule B, plus all interest paid and deposited into such Pledged Account as of the Effective Date.

(iv)    **Disbursement of Remainder of Securitization Trust Collateral to Accepting Securitization Trust**.  On the Effective Date, the Debtor shall cause to be transferred to each Accepting Securitization Trust such Securitization Trust's Securitization Trust Collateral remaining after payment by such Securitization Trust of the amounts described in paragraph 6.2(c)(ii) above.

(v)    **Securitization Trusts Release With Respect to Postpetition Defaulted Loans**.  In full and final settlement of the Trust Adversary Proceeding with respect to each Securitization Trust that accepts this Plan or is deemed to accept this Plan, and, thereby, the Securitization Trust Settlement, (A) each such Securitization Trust will have no claim to any loans purchased by or on behalf of the Debtor (or its agent) or otherwise transferred to or for the benefit of the Debtor on or after the Commencement Date or to any recoveries on such loans, including recoveries received prior to the date hereof, (B) all such defaulted postpetition loans and postpetition recoveries shall be transferred free and clear of all liens, claims, interests and encumbrances to the Plan Trust, and (C) neither the

38

**EXECUTION VERSION**

applicable Securitization Trusts nor their indenture trustees shall have any security interest in, or Claim to, such defaulted loans or recoveries obtained in respect thereof (but otherwise reserving rights under this Plan as the holder of a Claim in Class 5). Any defaulted loan on account of which (i) the Debtor made payment, (ii) payment was made from funds in a Pledged Account, or (iii) a Securitization Trust received payment, shall be considered a defaulted loan purchased by the Debtor.

(vi) **Retention by Accepting Securitization Trust of Loans Not Purchased by the Debtor**. Each Securitization Trust will retain all loans that were not purchased by the Debtor as of the Effective Date. Other than with respect to the Securitization Trusts in Classes 3m and 3n, on the Effective Date, the Debtor shall cause to be transferred to each Accepting Securitization Trust all of Debtor's right, title and interest in and to (a) all defaulted loans that were purchased by or on behalf of the Debtor or its agent (acting in such capacity) from the applicable Accepting Securitization Trust prior to the Commencement Date, (b) all recoveries collected (and the right to collect such recoveries earned but not paid) and all future recoveries with respect to such prepetition defaulted loans and (c) the proceeds from the sale by the Debtor of such prepetition defaulted loans to such Accepting Securitization Trust at any time following rehabilitation.

(vii) **Bankruptcy Court Approval of Securitization Trust Settlement**. For each Securitization Trust that accepts the Plan, and thereby the Securitization Trust Settlement, entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the Securitization Trust Settlement and the Bankruptcy Court's finding that such settlement is fair, equitable and reasonable and in the best interests of the Debtor, this Plan, Reorganized TERI and each Securitization Trust (including the Indenture Trustee and other secured parties under the related Indenture pursuant to which such Trust issued its notes), receiving the treatment provided by the Securitization Trust Settlement.

(viii) **Dismissal of Trust Adversary Proceeding**. On the Effective Date, the Trust Adversary Proceeding will be deemed dismissed with prejudice, and judgment of dismissal may enter pursuant to Fed.R.Civ.P. 54, made applicable to the Trust Adversary Proceeding pursuant to Fed.R.Bankr.P. 7054, as to (a) each Securitization Trust that accepts or is deemed to accept the Plan, thereby receiving the treatment provided by the Securitization Trust Settlement, (b) the administrator with respect to each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, (c) the owner trustee of each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, (d) U.S. Bank, National Association, in any capacity in which it was named as a defendant in the Trust Adversary Proceeding with respect to each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, and (e) the indenture trustee under any indenture pursuant to which such Securitization Trust issued notes and accepted this Plan and Securitization Trust

Settlement with respect to each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, each of the foregoing administrators, owner trustees and indenture trustees, in their respective capacities, and not individually.

(ix)   **Release of Claims against the Debtor and The Estate**. On the Effective Date, the Claims against the Debtor and the Estate of the Securitization Trusts, the Indenture Trustees under the Indenture for such Securitization Trusts and the administrators for such Securitization Trust (in such capacity) receiving the treatment provided by the Securitization Trust Settlement, subject to and upon implementation of the Securitization Trusts Settlement, will be deemed satisfied and no further recovery shall be permitted in respect of such Claims.

(x)   **Rejection of Executory Contracts**. On the Effective Date, all Guaranty Agreements executed in favor of the Securitization Trusts and the related Deposit and Security Agreements and other related documents entered into by the Debtor prior to the Commencement Date will be deemed rejected, and with respect to Claims asserted by Securitization Trusts accepting the Plan or that are deemed to accept the Plan, thereby receiving the treatment provided by the Securitization Trust Settlement, all Debtor's claims or rights to set off any Guaranty fees, basis point fees and other interests in loans held by such Securitization Trusts will be deemed waived.

(xi)   **Estate's Retention of Rights With Respect to Residuals**. Nothing herein shall be deemed a waiver or release of the rights, if any, that the Debtor or any other party may have to receive a portion (if any) of the Residual with respect to any and all of the Securitization Trusts.

*(d)*   **KeyBank National Association and KeyCorp Trusts Settlement**

(i)   Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the acceptance of this Plan by KeyBank National Association (excluding in its capacity as a Make and Wait Lender) and acceptance of this Plan by each KeyCorp Trust will constitute a good faith compromise and settlement of all Claims and controversies between the Debtor and KeyBank National Association and each Accepting KeyCorp Trust, including the amounts, allowance, relative priority and treatment of the Claims of KeyBank National Association and each Accepting KeyCorp Trust.

(ii)   Unless KeyBank National Association (excluding KeyBank National Association in its capacity as a Make and Wait Lender) or a KeyCorp Trust rejects this Plan, KeyBank National Association and each KeyCorp Trust, as applicable, shall receive the following treatment on the Effective Date of this Plan or as soon thereafter as is practicable:  (a) it shall be paid its allocable share in the Victory Fund as of the Commencement Date (as appears in column in Schedule C labeled "Allocation of Victory Fund"), (b) it shall have an Allowed Key Access Program Deficiency Claim as set forth in the column labeled "Key Access Program Decoder Settlement Claim" on Schedule C pursuant to

40

Section 4.4 of this Plan; and (c) it shall cause to be paid to the Plan Trustee free and clear of all interests, liens, claims and encumbrances, its allocable share of all recoveries or other funds transferred by the Debtor to the Victory Fund on or after the Commencement Date, together with any interest or other earnings thereon not previously transferred to the Debtor.

(iii)     Notwithstanding the preceding paragraph, if KeyBank National Association (excluding KeyBank National Association in its capacity as a Make and Wait Lender) or a KeyCorp Trust rejects this Plan and is thereby deemed to opt out of the Key Access Program Settlement, the following treatment shall be applied:  (a) each KeyCorp Trust that rejects this Plan, and KeyBank National Association if it rejects this Plan, shall have the Allowed amount of its Claim determined by the Bankruptcy Court by Final Order, following appropriate notice and an opportunity to be heard, in accordance with the Key Access Program Election; (b) the funds in the Victory Fund as of the Commencement Date shall be paid to KeyBank National Association and held in escrow until the Bankruptcy Court has determined by Final Order, following appropriate notice and an opportunity to be heard, the proper method for distributing such funds; and (c) the parties reserve all rights with respect to recoveries and other funds transferred by the Debtor to the Victory Fund on or after the Commencement Date, together with any interest or other earnings thereon, including, without limitation, the rights of the parties with respect to the extent, priority, validity or existence of any alleged security interest in such recoveries and funds.

(iv)     Any distributions to KeyBank National Association (excluding KeyBank National Association in its capacity as a Make and Wait Lender), if it accepts this Plan, or to an Accepting KeyCorp Trust pursuant to this Plan will be made on account and in consideration of the Key Access Program Settlement, which, upon the Effective Date, will be binding on KeyBank National Association, the Accepting KeyCorp Trusts, the Debtor, and Reorganized TERI. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the Key Access Program Settlement and the Bankruptcy Court's finding that such Key Access Program Settlement is in the best interests of KeyBank National Association, the Accepting KeyCorp Trusts, the Debtor, and Reorganized TERI, and is fair, equitable and reasonable.

(v)     On the Effective Date, all Guaranty Agreements and the related Deposit and Security Agreements and other related documents executed in favor of KeyBank National Association (excluding KeyBank National Association in its capacity as a Make and Wait Lender) and the KeyCorp Trusts receiving the treatment provided in the Key Access Program Settlement will be deemed rejected.

**6.3**     **Plan Trust.**

*(a)*     **General**.  On or before the Effective Date, the Plan Trust Agreement, in a form reasonably acceptable to the Plan Proponents, will be executed and all other necessary steps

41

**EXECUTION VERSION**

will be taken to establish the Plan Trust and the beneficial interests therein, which will be for the benefit of the holders of Allowed General Unsecured Claims, whether Allowed on or after the Effective Date. In the event of any conflict or inconsistency between the terms of this Plan and the terms of the Plan Trust Agreement, then the terms of the Plan Trust Agreement will govern. The Plan Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Plan Trust as a liquidating trust for United States federal income tax purposes, or otherwise have material adverse effect on the recovery of holders of Allowed General Unsecured Claims. This Section 6.3 is qualified in its entirety by the terms of and is subject to the terms of the Plan Trust Agreement.

*(b)* **Purpose of Plan Trust**. The Plan Trust will be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to achieve, and consistent with, the liquidating purpose of the Plan Trust.

*(c)* **Costs and Expenses of Plan Trust**. The costs and expenses of the Plan Trust, including the fees and expenses of the Plan Trustee and its retained professionals, will be paid out of the Plan Trust Assets, and Reorganized TERI will not be responsible for any fees, expenses or costs of the Plan Trust. The Litigation Claims Costs incurred by the Plan Trustee and the fees and expenses incurred in connection with the prosecution and settlement of any Claims are costs and expenses of the Plan Trust.

*(d)* **Plan Trust Assets**. As of and as soon as practicable after the Effective Date, Debtor will assign and transfer to the Plan Trust all of its rights, title and interests in and to the Plan Trust Assets for the benefit of the holders of Allowed General Unsecured Claims, whether such Claims are Allowed on or after the Effective Date. Such transfers will be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax and, subject to clause (c) of section 6.2(d)(iii) of the Plan, and except as otherwise may be set forth specifically herein, will be free and clear of any liens, claims and encumbrances and no other entity (other than Creditors receiving rights under this plan), including the Debtor or Reorganized TERI, will have any interest, legal, beneficial, or otherwise, in the Plan Trust or the Plan Trust Assets upon their assignment and transfer to the Plan Trust (other than as provided herein or in the Plan Trust Agreement). Upon delivery of the Plan Trust Assets to the Plan Trust, Reorganized TERI will be released of all liability with respect to the delivery of distributions to holders of Allowed General Unsecured Claims, and, except as provided in the Collection Contract, will have no further monetary obligations to the Plan Trust or the Plan Trustee.

*(e)* **Governance of Plan Trust**. The Plan Trust will be governed by the Plan Trust Agreement and administered by the Plan Trustee.

*(f)* **Appointment of a Plan Trustee**. Prior to the Effective Date, the Creditors' Committee will select the Plan Trustee. The salient terms of the Plan Trustee's employment, including the Plan Trustee's duties and compensation, will be set forth in the Plan Trust Agreement. The Plan Trust Agreement will specify the procedures for replacing the Plan Trustee. The Plan Trustee will not be the Debtor, an affiliate of the Debtor or former agent of

42

the Debtor. The Plan Trustee, in the reasonable discretion of the Creditors' Committee will have the qualifications and experience necessary to satisfy the responsibilities and obligations of the Plan Trustee as outlined in the Plan and the Plan Trust Agreement.

*(g)* **The Plan Trustee Advisory Committee**. The Plan Trustee Advisory Committee will advise the Plan Trustee with respect to the liquidation and distribution of Plan Trust Assets in accordance with the Plan Trust Agreement. The Plan Trust Agreement will specify the procedures for replacing any member of the Plan Trustee Advisory Committee.

*(h)* **Transferability of Plan Trust Interests**. The beneficial interests of the Plan Trust shall not be transferable, unless otherwise provided for in the Plan Trust Agreement. To the extent such beneficial interests are deemed securities under applicable non-bankruptcy law, then such securities shall be exempt from the requirements of applicable non-bankruptcy law to the maximum extent permitted by 11 U.S.C. §1145.

*(i)* **Investment of Cash**. The Plan Trustee may invest Cash (including any earnings thereon or proceeds there from) as permitted by section 345 of the Bankruptcy Code; *provided, however*, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities. The Plan Trustee shall be authorized to manage any transferred Collateral Accounts pending resolution of the disposition of such Collateral Account pursuant to the terms of the Plan or a Final Order.

*(j)* **Receipt or Retention of Cash.** The Plan Trust shall not be permitted to receive or retain Cash or Cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the Plan Trust Assets during liquidation and distribution.

*(k)* **Retention of Professionals by the Plan Trustee**. The Plan Trustee may retain and reasonably compensate counsel and other professionals, as applicable, to assist in its duties as Plan Trustee on such terms as the Plan Trustee deems appropriate, without Bankruptcy Court approval; provided, however, that such counsel and other professionals shall be subject to the prior approval of the Plan Trustee Advisory Committee or, if such approval is not obtained, then such counsel and other professionals may be retained only upon Bankruptcy Court approval. All costs of compensation and expenses of professionals retained by the Plan Trustee are costs and expenses of the Plan Trust and will be paid out of the Plan Trust Assets.

*(l)* **Compensation of the Plan Trustee**. The Plan Trustee will be entitled to reasonable compensation (which will be negotiated by the Plan Trustee with the Creditors' Committee) in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

*(m)* **Cooperation of Reorganized TERI**. Reorganized TERI will provide information, including, Data needed for Claim administration and asset monetization, to the Plan Trustee. Such information will include, but will not be limited to, information regarding the status and amount of General Unsecured Claims to enable the Plan Trustee to perform its duties.

43

**EXECUTION VERSION**

Reorganized TERI will cooperate with the reasonable requests of the Plan Trustee and its professionals in the administration of the Plan Trust, including, in providing Data, documentation, witness testimony, and other evidence in support of the prosecution of the Litigation Claims. The Plan Trust will reasonably reimburse Reorganized TERI, pursuant to the terms of a reimbursement agreement to be negotiated, for any extraordinary costs incurred to comply with requests for cooperation made by the Plan Trustee.

*(n)* **Distribution of Plan Trust Assets**. Plan Trust Assets shall be distributed in accordance with the Plan Trust Agreement without the need for further order of the Bankruptcy Court or notice to any entities. The aggregate of all distributions made on account of each beneficial interest in the Plan Trust shall be Pro Rata Distributions. Each separate distribution made by the Plan Trustee shall, to the extent reasonably practicable, be Pro Rata Distributions, except the Plan Trustee may alter any particular distributions so that the aggregate of all distributions are Pro Rata Distributions.

*(o)* **(Intentionally deleted)**.

*(p)* **Federal Income Tax Treatment of Plan Trust**.

(i) **Plan Trust Assets Treated as Owned by Creditors**. For all federal income tax purposes, all parties (including, without limitation, the Debtor, Reorganized TERI, the Plan Trustee, and the holders of Allowed General Unsecured Claims) will treat the transfer of this Plan Trust Assets to the Plan Trust including any amounts or other assets subsequently transferred to the Plan Trust (but only at such time as actually transferred) for the benefit of the holders of General Unsecured Claims, whether Allowed on or after the Effective Date, as (A) a transfer of the Plan Trust Assets directly to the holders of Allowed General Unsecured Claims, followed by (B) the transfer by such Persons to this Plan Trust of such Plan Trust Assets in exchange for beneficial interests in the Plan Trust. Accordingly, the holders of Allowed General Unsecured Claims will be treated for federal income tax purposes as the grantors and owners of their respective shares of the applicable Plan Trust Assets.

(ii) **Tax Reporting**.

(A) Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Plan Trustee of a private letter ruling if the Plan Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Plan Trustee), all parties will treat the Plan Trust as a "liquidating trust" in accordance with Treasury Regulation section 301.7701-4(d), of which the holders of Allowed General Unsecured Claims, whether Allowed on or after the Effective Date, are the grantors and beneficiaries. In the event an alternative treatment of the Plan Trust is required for federal income tax purposes, the Plan Trustee will promptly notify in writing (or by comparable means) all holders of beneficial interests in the Plan Trust, and

44

anyone who subsequently becomes a holder, of such alternative treatment. The Plan Trustee will file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 6.3(p). The Plan Trustee also may send annually to each record holder of a beneficial interest in the Plan Trust a separate statement setting forth such holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Plan Trustee will also file (or cause to be filed) any other statements, returns, or disclosures relating to the Plan Trust that are required by any governmental unit. Except as may otherwise be provided, the Plan Trust's taxable income, gain, loss, deduction or credit will be allocated by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distribution described in the Plan) if, immediately prior to the deemed distribution, the Plan Trust had distributed all of its other assets (valued at their tax book value) in accordance with the provisions of the Plan and the Plan Trust Agreement, up to the tax book value of the Plan Trust Assets treated as contributed by the holders of Allowed General Unsecured Claims, whether Allowed on or after the Effective Date, adjusted for prior taxable income and loss, and taking into account all prior and concurrent distributions from the Plan Trust. Similarly, taxable loss of the Plan Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets.

(B) As soon as possible after the Effective Date, the Plan Trustee will make a good faith valuation of the value of the Plan Trust Assets. Such valuation will be made available from time to time, to the extent relevant, and used consistently by all parties for all federal income tax purposes.

(C) Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Plan Trustee of a private letter ruling if the Plan Trustee requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Plan Trustee), the Plan Trustee will (1) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of that section; (2) treat as taxable income or loss of the Disputed Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Plan Trust that would have been allocated to the holders of Disputed General Unsecured Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such

45

Claims are unresolved), (3) treat as a distribution from the Disputed Claims Reserve any assets previously allocated to or retained on account of Disputed General Unsecured Claims as and when, and to the extent, such claims are subsequently resolved (following which time such assets will no longer be held in the Disputed Claims Reserve) and (4) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes (including making any appropriate elections). The holders of Allowed General Unsecured Claims, whether Allowed on or after the Effective Date, will report, for tax purposes, consistent with the foregoing.

   (D) The Plan Trustee will be responsible for payments, out of and to the extent of available Plan Trust Assets, of any taxes imposed on the Plan Trust or the Plan Trust Assets, including the Disputed Claims Reserve.

   (E) The Plan Trustee may request an expedited determination of taxes of the Plan Trust, including the Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code, for all returns filed for, or on behalf of, the Plan Trust for all taxable periods through the dissolution of the Plan Trust (including the Disputed Claims Reserve).

   *(q)* **Dissolution of Plan Trust**. The Plan Trustee and the Plan Trust will be discharged or dissolved, as the case may be, as set forth in the Plan Trust Agreement.

   *(r)* **Transition of Servicing and Collections of Defaulted Loans.** For a period of at least 30 days following the Effective Date, the Plan Trustee and First Marblehead Education Resources, Inc. ("FMER") shall attempt in good faith to negotiate the terms of a mutually acceptable transition agreement with respect to the servicing and collection of defaulted loans subject to the Trust Adversary Proceeding or otherwise subject to any Securitization Trust Settlement. For a period of no less than 90 days following the Effective Date, FMER shall continue to perform the services it has been providing during the Chapter 11 Case with respect to servicing and collecting defaulted loans subject to the Trust Adversary Proceeding pursuant to the Order Pursuant to Sections 105, 362 and 363 of the Bankruptcy Code Authorizing and Directing Debtor to Honor Certain of its Guaranty Obligations and Purchase Defaulted Loans Using Cash in Certain Pledged Accounts Established for the Benefit of the Trusts, entered on June 23, 2008, and FMER shall be entitled to payment from the Plan Trustee pursuant to such order; provided, however, FMER shall have no obligation to provide such services after the 90th day following the Effective Date.

   **6.4** **Calculation of TERI Net Recovery.** The TERI Net Recovery will be calculated as follows:

   *(a)* For the first year of the Term, the first $1,000,000 of TERI Loan Net Proceeds collected will be payable to the Plan Trust to fund the Plan Trust's administrative expenses, and after satisfaction of such administrative expenses, for inclusion in the Plan Trust Assets. For the first year of the Term, the TERI First Year Share will comprise 20% of each

dollar of TERI Loan Net Proceeds collected in excess of $1 million, but the TERI First Year Share will not exceed $1,000,000.

(b)     For the second year of the Term, the first $1,000,000 of TERI Loan Net Proceeds collected will be payable to the Plan Trust to fund the Plan Trust's administrative expenses, and after satisfaction of such administrative expenses, for inclusion in the Plan Trust Assets.  For the Second Year of the Term, the TERI Second Year Share will comprise 20% of each dollar of TERI Loan Net Proceeds collected in excess of $1 million but the TERI Second Year Share will not exceed $1,000,000.

(c)     If, and only if, as of the end of the Term: (a) the Collection Contract has not been terminated for cause; (b) the sum of (i) the TERI First Year Share plus (ii) the TERI Second Year Share is less than $2,000,000; (c) the sum of (i) the First Year Eligible Collections plus (ii) the Second Year Eligible Collections is at least $10,000,000 and (d) the Plan Trust has received $2,000,000 of TERI Loan Net Proceeds Trust to fund the Plan Trust's administrative expenses, and after satisfaction of such administrative expenses, for inclusion in the Plan Trust Assets during the Term, Reorganized TERI will be entitled to the Additional Share.

**6.5     Distribution to Secured Creditors**.  Secured Creditors will reasonably cooperate with Reorganized TERI or the Plan Trustee in connection with distribution of the funds in the Collateral Accounts, including executing any necessary documents or forms, including but not limited to a Form W-9.

**6.6     Restricted Funds**.  Notwithstanding anything to the contrary herein, (i) the Restricted Charitable Funds and the Restricted Grant Funds will not be applied to satisfy any Allowed Claim or distribution under the Plan; (ii) the Restricted Charitable Funds shall be administered from and after the Effective Date in accordance with all applicable deeds of gift and related stipulations; (iii) the Restricted Charitable Funds shall be used from and after the Effective Date solely for purposes of furthering higher education; (iv) the Restricted Charitable Funds subject to the Deed of Gift dated September 30, 1986 in favor of the Debtor from Massachusetts Higher Education Assistance Corporation (the "Financial Aid Gift") shall be used from and after the Effective Date solely for paying the costs of, and general overhead expenses reasonably attributable to, Reorganized TERI's "College Access" outreach programs; and (v) the Financial Aid Gift shall not be used from and after the Effective Date for paying any costs of, or general overhead expenses attributable to, Reorganized TERI's portfolio management or collection management operations.  The Debtor's Board of Directors has agreed to, and Reorganized TERI's board of directors will agree to, the restrictions set forth in the foregoing clauses (iv) and (v) of this Section 6.6.

**6.7     Operations of Reorganized TERI**.  On and after the Effective Date, Reorganized TERI may operate its business, may use, acquire and dispose of property other than Plan Trust Assets, may retain, compensate and pay any professionals or advisors, and compromise or settle any causes of action, claims or interests, other than Causes of Action that are Plan Trust Assets, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order or other Orders of the Bankruptcy Court.

47

**6.8** <u>Closing of the Chapter 11 Case</u>.  The Plan Trustee will seek authority from the Bankruptcy Court to close the Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**6.9** <u>Section 1123(b)(3)</u>.  From and after the Effective Date, the Plan Trustee shall have the exclusive right and standing to take all actions identified in section 1123(b)(3) of the Bankruptcy Code, except as to any claims or interests that are retained by Reorganized TERI pursuant to this Plan.  For the avoidance of doubt, the Plan Trustee is authorized to pursue the Causes of Action (including the Trust Adversary Proceeding).

**6.10** <u>Establishment and Implementation of a Most Favored Nations Clause</u>.  In the event that a Make and Wait Lender or make and Hold Lender rejects the Plan, or a representative of a Securitization Trust rejects this Plan and thereby the Securitization Trust Settlement, or KeyBank National Association (other than in its capacity as a Make and Wait Lender) or a Key Corp Trust rejects this Plan and thereby the Key Access Program Settlement (any of which is referred to herein as a "Litigating Creditor") and such Litigating Creditor, pursuant to a Final Order of the Bankruptcy Court, is found to have an Allowed Deficiency Claim or General Unsecured Claim that exceeds such Litigating Creditor's Class 5 Claim, by at least 10%, then the Plan Trustee shall be obligated to re-calculate the amount of the Deficiency Claims of all Creditors using the findings of the Bankruptcy Court regarding the proper calculation of such Claim (the "Revised Calculation").  The Plan Trustee may seek further or other orders of the Bankruptcy Court as the Plan Trustee desires to facilitate the proper determination of the Revised Calculation with respect to any and all Claims.  To the extent that there are multiple evidentiary hearings to determine the amount of Allowed Class 5 Claims, the Revised Calculation shall be completed using the Final Order of the Bankruptcy Court that would yield the greatest Claim amounts.  Notwithstanding anything in this section 6.10, however, (i) no Allowed Claim shall be reduced as a result of any Revised Calculation, and (ii) the Plan Trustee shall not use any Revised Calculation as set forth in this section 6.10 without prior approval of the Bankruptcy Court after notice and a hearing within the meaning of 11 U.S.C. §102(1).

**6.11** <u>Nellie Mae Adversary Proceeding</u>.  All student loans identified by the Debtor (if any) that are the subject of the Nellie Mae Adversary Proceeding, shall be held in escrow by Reorganized TERI after the Effective Date pending determination by the Bankruptcy Court of the Nellie Mae Adversary Proceeding, and shall be distributed in accordance with such Final Orders the Bankruptcy Court may enter in the Nellie Mae Adversary Proceeding.

**ARTICLE VII**

**<u>PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS</u>**

**7.1** <u>No Distribution Pending Allowance</u>.  Notwithstanding any other provision of this Plan the Plan Trustee will not be compelled or required to distribute any Cash or other property on account of any Disputed Claim or any portion thereof, unless and until such Claim becomes an Allowed Claim, and distribution on account of such Allowed Claim is required pursuant to the terms of the Plan.  In the event that a Make and Wait Lender or Make and Hold Lender purchased or sold loans guaranteed by the Debtor on the secondary market and the Debtor's records do not reflect such purchase or sale, the Plan Trustee shall be entitled to

**EXECUTION VERSION**

withhold distributions to such Creditors pending determination of the rightful owner of such loans.

       **7.2**    **Resolution of Disputed Claims**.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtor, and following the Effective Date, only the Plan Trustee will have the right, to the exclusion of all others, to make, file, and prosecute objections to Claims, and will serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable.  Objections to Claims must, subject to the Local Rules for the United States Bankruptcy Court—District of Massachusetts, be filed with the Bankruptcy Court and served upon each affected creditor.  From and after the Confirmation Date, all objections will be litigated to a Final Order except to the extent that the Plan Trustee elects to withdraw any such objection or the Plan Trustee and the holder of the Disputed Claim elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim with approval of the Bankruptcy Court.

       **7.3**    **Estimation**.  In the event that the Plan Proponents seek entry of an Order estimating claims, such estimation order shall not prejudice or otherwise affect the ability of the Plan Proponents or Plan Trustee, as the case may be, to object to the allowance of any such Claim on any basis and the Bankruptcy Court will retain jurisdiction with respect to all Claims, including any Claim estimated pursuant to an estimation order.

       **7.4**    **Allowance of Disputed Claims**.  If, on or after the Effective Date, any Disputed Claim in a Class that is entitled to receive a distribution under the Plan becomes an Allowed Claim, the Debtor, Reorganized TERI, or the Plan Trustee, as applicable, must, as soon as practicable following the date on which the Disputed Claim becomes an Allowed Claim, distribute to the holder of such Allowed Claim an amount sufficient to pay to such holder of a Disputed Claim the amount that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date.

       **7.5**    **Disallowance of Claims Without Further Order of the Bankruptcy Court.**  As of the Confirmation Date, any Disputed Claim for which a proof of Claim has not been filed, will be deemed disallowed and expunged, without further act or deed.

       **7.6**    **No Distribution in Respect of Disallowed Claims.**  To the extent that a Disputed Claim is expunged or reduced, the holder of such Claim will not receive any distribution on account of the portion of such Claim that is disallowed.

**ARTICLE VIII**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

       **8.1**    **Assumption or Rejection of Executory Contracts and Unexpired Leases**.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtor and any Person or Entity prior to the Commencement Date will be deemed rejected by the Debtor as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) as to which a motion for approval of

49

the assumption of such executory contract or unexpired lease has been filed and served prior to
the Confirmation Date or (c) that is specifically designated as a contract or lease to be assumed
on schedules 8.1(A)(executory contracts) or 8.1(B) (unexpired leases), which schedules will be
contained in the Plan Supplement or (d) those contracts not subject to assumption or rejection
pursuant to Section 8.7 hereof and disclosed in the Plan Supplement; *provided*, *however*, that the
Debtor reserves the right, on or prior to the Confirmation Date, to amend such schedules to
delete any executory contract or unexpired lease there from or add any executory contract or
unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) will be
deemed to be, respectively, either rejected or assumed as of the Effective Date.  The Debtor will
provide notice of any such amendments to the parties to the executory contracts and unexpired
leases affected thereby.  The listing of a document on schedules 8.1(A) or (B) will not constitute
an admission by the Debtor that such document is an executory contract or an unexpired lease or
that the Debtor has any liability thereunder.

> *(a)* Reorganized TERI will pay from Reorganized TERI Assets all Cure
Amounts, if any, to the non-Debtor parties to the executory contracts and unexpired leases
assumed pursuant to this Section 8.1 of this Plan by the earlier to occur of (i) the first Effective
Date Anniversary or (ii) ten (10) days after resolution of the Cure Amount by Final Order or
agreement of the parties, except as otherwise agreed to by the parties.

> *(b)* If a non-Debtor party to an executory contract or unexpired lease assumed
pursuant to this Section 8.1 of this Plan timely objects to the assumption or the proposed Cure
Amount for that agreement, the Debtor and the objecting party may settle, compromise, or
otherwise resolve the proper Cure Amount without further order of the Court or, at the Debtor's
sole discretion, may submit the dispute to the Bankruptcy Court for a determination as to the
proper Cure Amount.

> *(c)* Notwithstanding anything to the contrary in this Plan or in any other
document, the amount of the Retained Cash shall be reduced by an amount equal to one-half of
any Allowed General Unsecured Claims, minus $50,000, arising from the rejection by the Debtor
of the aggregate of all executory contracts by this Plan, without reference to the Claims arising
from (a) the Debtor's rejection by this Plan of guaranty agreements and other program
documents between and among the Debtor and any of the Creditors holding Claims in Classes
(including subclasses) 2 – 6, and (b) Claims filed prior to the filing of this Plan in the Bankruptcy
Court by parties to executory contracts rejected by this Plan that are related to such executory
contracts.

**8.2** **Approval of Assumption or Rejection of Executory Contracts and Unexpired
Leases.**  Entry of the Confirmation Order will, subject to and upon the occurrence of the
Effective Date, constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the
Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed
and assigned pursuant to Section 8.1 of this Plan and (ii) the approval, pursuant to sections
365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and
unexpired leases rejected pursuant to Section 8.1 of this Plan.

**8.3** **Inclusiveness**.  Unless otherwise specified on Schedules 8.1(A) and 8.1(B), each
executory contract and unexpired lease listed or to be listed on Schedules 8.1(A) and 8.1(B) will

**EXECUTION VERSION**

include modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Schedules 8.1(A) and 8.1(B).

8.4     **Return of Guaranty Fees**.  As soon as practicable following the Effective Date, the Plan Trustee (or the Debtor in cooperation with the Plan Trustee) will return any Guaranty Fees received in respect of Pipeline Loans to holders of Make and Wait and Make and Hold Claims that accept the Make and Wait Lender Settlement or Make and Hold Settlement.

8.5     **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to this Plan**.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.1 of this Plan must be filed with the Claims Agent on or before the Rejection Bar Date.  All such Claims not filed within such time will be forever barred from assertion against the Debtor, its Estate or Reorganized TERI and its property.

8.6     **Insurance Policies**.  All of the Debtor's insurance policies (which policies are maintained by the Debtor in the ordinary course of business and the premiums for which have been prepaid) will remain in full force and effect with regard to Reorganized TERI, and are not required to be assumed by the Debtor. Nothing contained herein shall constitute or be deemed a waiver of any cause of action that the Debtor may hold against any entity to the extent of available insurance, including, without limitation, the insurer under any of the Debtor's policies of insurance.  Under all circumstances, Reorganized TERI, and not the Plan Trustee or the Plan Trust Assets, shall be responsible for and available to pay all premiums and other insurance related expenses and liabilities.

8.7     **Compensation and Benefit Programs**.  From and after the Effective Date, Reorganized TERI shall make any and all payments due (for Cure Costs, contributions, Administrative Expense Claims, Claims or otherwise) solely from Reorganized TERI Assets for any and all savings plans, retirement plans (including without limitation the Pension Plan), health care plans, performance-based incentive plans, retention plans, workers' compensation programs and life, disability, directors and officers liability, other insurance plans and management contracts.  Reorganized TERI's obligations under this section shall apply regardless whether the Debtor assumes, rejects or neither assumes nor rejects such plans and contracts as of the Effective Date.

8.8     **Retiree Benefits**.  On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, Reorganized TERI will continue to pay all retiree benefits of the Debtor (within the meaning of section 1114 of the Bankruptcy Code) and all amounts due or to become due in any way related to the Pension Plan, if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtor had obligated itself to provide such benefits, *provided, however*, nothing herein will alter Reorganized TERI's right to amend or modify retiree benefits in accordance with applicable law.  Reorganized TERI will remain obligated (to the exclusion of the Plan Trustee or any Creditor) to contribute to the Pension Plan the amount necessary to satisfy ERISA's minimum funding standards, ERISA

51

**EXECUTION VERSION**

§302; Internal Revenue Code §412. The Pension Plan may be terminated only if the statutory requirements of either ERISA §4041, 29 U.S.C. §1341, or ERISA §4042, 29 U.S.C. §1342, are met. If the Pension Plan terminates, Reorganized TERI and all members of its controlled group will be jointly and severally liable for unpaid minimum funding contributions, remiums, and unfundged benefit liabilities of the Pension Plan. See 29 U.S.C. §1362(a). Confirmation of the Plan shall operate as a judicial determination, binding on all Entities, that neither the Plan Trustee nor any Creditor that is not an insider of the Debtor (i) is a member of the controlled group of Reorganized TERI or the Debtor for any purpose, including as set forth in the immediately preceding sentence, and (ii) shall incur any liability whatsoever to any Entity (including, without limitation, to the United States of America, any of its administrative agencies or political subdivisions, the United States Internal Revenue Service or the United States Pension Benefit Guaranty Administration) on account of or related to the Pension Plan.

## ARTICLE IX

## CONDITIONS PRECEDENT TO ENTRY OF THE CONFIRMATION ORDER

**9.1** **Conditions Precedent to entry of the Confirmation Order**. The following are conditions precedent to the entry of the Confirmation Order:

*(a)* The Bankruptcy Court has found and determined that all of the applicable requirements of 11 U.S.C. §1129 have been satisfied, have been performed or have occurred;

*(b)* The Creditors Committee does not reasonably determine that the Debtor and the Creditors Committee are unable or will be unable to agree upon the form and substance of any document included in the Plan Supplement;

*(c)* The Confirmation Order shall be entered no later than June 15, 2010;

*(d)* The Debtor has disbursed Cash prior to the Confirmation Hearing substantially in accordance with its Cash projections provided to the Creditors Committee and Final Orders of the Bankruptcy Court, and for no other purposes.

**9.2** **Waiver of Conditions**. Each of the conditions precedent in sections 9.1 (b) – (d) hereof may be waived, in whole or in part, by the Plan Proponents. Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court or any formal action.

**9.3** **Effect of Failure of Condition to Entry of Confirmation Order**. The failure of a condition set forth in section 9.1 above shall be as described in Article XI below.

## ARTICLE X

## EFFECTIVENESS OF THE PLAN

**10.1** **Conditions Precedent to the Effective Date**. The following are conditions precedent to the occurrence of the Effective Date of this Plan, which shall occur on or before

**EXECUTION VERSION**

June 30, 2010, unless the Creditors Committee consents to an extension of time beyond the such date:

      *(a)*      The Bankruptcy Court shall have entered the Confirmation Order, which shall approve this Plan on substantially the same terms and conditions set forth herein, which shall be in form and substance satisfactory to the Plan Proponents;

      *(b)*      No stay of the Confirmation Order shall then be in effect at the time the other conditions set forth in Section 9.1 or this Section 10.1 are satisfied or waived;

      *(c)*      The Available Cash transferred to the Plan Trustee on the Effective Date shall not be less than $36,000,000 (inclusive of the aggregate Cash the Debtor deposited into the KeyBank Victory Fund after the Commencement Date), exclusive of any Cash or other property transferred or released (or to be transferred or to be released) to the Debtor or Plan Trustee from any Collateral Account;

      *(d)*      The Creditors Committee shall have filed with the Court a Notice establishing the date for the Effective Date, and

      *(e)*      All documents, instruments and agreements, in form and substance satisfactory to the Plan Proponents, provided for under or necessary to implement this Plan, including but not limited to the Plan Trust Agreement, shall have been executed and delivered by the parties thereto.

      **10.2**    **Waiver of Conditions**.  Each of the conditions precedent in section 10.1 hereof may be waived, in whole or in part, by the Plan Proponents.  Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court or any formal action.

      **10.3**    **Effect of Failure of Condition to Entry of Confirmation Order**.  The consequences or effect of the failure of a condition set forth in section 9.1 above shall be as described in Article XI below.  However, if there is a failure of the condition described in section 10.1(c) above, then, at the election of the Creditors Committee in its sole discretion, the Effective Date may occur, and the Retained Cash shall be reduced by an amount equal to the difference between $36,000,000 and the Available Cash.

**ARTICLE XI**

**CONSEQUENCES OF A FAILURE OF A CONDITION IN ARTICLES IX AND X**

Upon a failure of one or more conditions described in Articles IX and/or X above that the Plan Proponents jointly do not waive as set forth in Sections 9.2 and 10.2 above,

      *(a)*      Except for this Article XI, the Plan shall be null, void and of no effect;

      *(b)*      The Debtor shall not proceed with any hearing to confirm this Plan or any other plan not supported by the Committee unless and until a plan of reorganization or plan of liquidation, as applicable, supported by the Creditors Committee is considered by the Court for

**EXECUTION VERSION**

confirmation under 11 U.S.C. §1129, provided, however, that nothing shall prevent the simultaneous consideration of a plan presented by the Debtor; and

        *(c)*     Nothing in this Plan or in the Disclosure Statement shall be binding upon the Plan Proponents or impair their rights, claims and defenses with respect to any issue.

## ARTICLE XII

## **EFFECTS OF CONFIRMATION**

    **12.1**    **Vesting of Assets**.

        *(a)*     As of the Effective Date, the property of the Estate, including all claims and Causes of Action against third parties that arose prior to or after the Commencement Date, will vest in Reorganized TERI or the Plan Trust as provided in this Plan.

        *(b)*     From and after the Effective Date, Reorganized TERI and the Plan Trust may dispose of its respective assets free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of this Plan.

        *(c)*     Pursuant to 11 U.S.C. §1141(c), as of the Effective Date, all assets of Reorganized TERI and the Plan Trust (including, without limitation, all funds in all Collateral Accounts established for the benefit of Entities who have not filed timely a proof of claim) will be free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided in this Plan or the Confirmation Order.

        *(d)*     Notwithstanding anything in the Plan or the Confirmation Order to the contrary, nothing in this Plan or in the Confirmation Order shall affect the terms of the Transition Services Agreement dated May 30, 2008, as approved by the order of the Bankruptcy Court dated June 23, 2008, or the parties' respective rights thereunder or with respect thereto.

    **12.2**    **Binding Effect**.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against the Debtor and its respective successors and assigns, whether or not the Claim of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan.  The rights, benefits and obligations of any entity named or referred to in this Plan whose actions may be required to effectuate the term of this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under chapters 7 or 11 of the Bankruptcy Code).

    **12.3**    **Discharge**.  Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtor and Reorganized TERI, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all

**EXECUTION VERSION**

Claims, rights, and liabilities that arose prior to the Confirmation Date.  Upon the Effective Date,
all such Persons or Entities shall be forever precluded and enjoined, pursuant to section 524 of
the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the
Debtor or Reorganized TERI.

   **12.4**   **Releases, Injunctions and Exculpation**.

      *(a)*   **Satisfaction of Claims Against the Debtor**.  Except as otherwise
provided for in section 12.4(b) and (c) below, the treatment to be provided for respective
Allowed Claims against the Debtor pursuant to this Plan shall be in full satisfaction, settlement
and release of such respective Claims against the Debtor.

      *(b)*   ***Releases by Debtor Releasors***.  *Except as otherwise specifically provided
in this section 12.4(b) of this Plan, for good and valuable consideration, including the service of
the Released Parties to facilitate the implementation of this Plan, the Released Parties, on and
after the Effective Date, are released by the Debtor Releasors from any and all Claims,
obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever,
whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity
or otherwise, that the Debtor, or any Person or Entity claiming derivatively through or on behalf
of the Debtor would have been legally entitled to assert in their own right (whether individually
or collectively) or on behalf of the holder of any Claim or other Person or Entity, based in whole
or in part upon any act or omission, transaction, agreement, event or other occurrence taking
place on or before the Effective Date other than for claims based upon gross negligence or
willful misconduct; provided, however, that for the avoidance of doubt, the foregoing release
does not include a release of any objection or defense that the Debtor Releasors may have with
respect to Allowance of any Claim; provided, further, that that nothing in this paragraph shall
be deemed to be a release by any of the Debtor Releasors of  any Person or Entity of any Causes
of Action or of any obligations imposed on any of them pursuant to this Plan.*

      *(c)*   ***Injunction***.  *As of the Confirmation Date, except as provided in the Plan
or the Confirmation Order, all Persons or Entities who, directly or indirectly, have held, hold or
may hold Claims against the Debtor or, as to Claims which are derivative of the Debtor and
released pursuant to Section 12.4(b), the Released Parties, are permanently enjoined from taking
any of the following actions on account of any such Claims, debts, interests or liabilities, other
than actions brought to enforce any rights or obligations under this Plan:  (i) commencing or
continuing in any manner any action or other proceeding against the Debtor, the Plan Trustee,
the Released Parties or their respective properties; (ii) enforcing, attaching, collecting or
recovering in any manner any judgment, award, decree or order against the Debtor, the Plan
Trustee, the Released Parties or their respective properties; (iii) creating, perfecting or
enforcing any lien or encumbrance against the Debtor, the Plan Trustee, the Released Parties or
their respective properties; (iv) asserting a setoff, right of subrogation or recoupment of any kind
against any debt, liability or obligation due to the Debtor, the Plan Trustee, the Released Parties
or their respective properties, (v) commencing or continuing, in any manner or any place, any
action that does not comply with or is inconsistent with the provisions of the Plan or the
Confirmation Order.  For the avoidance of doubt, nothing in this Plan or the Confirmation
Order shall be deemed to (a) be a release by any of the Debtor Releasors, or  any Person or
Entity other than Released Parties, of any Causes of Action; (b) enjoin the prosecution by the*

**EXECUTION VERSION**

*Plan Trustee of the Causes of Action (other than to the limited extent provided for in the Plan against the Released Parties), and (c) subject to section 5.5(h) above, enjoin any Person or Entity from asserting any defense or claims as a defense in any civil action, including, without limitation, in the Trust Adversary Proceeding. Notwithstanding any language to the contrary herein or in any other document, as to any Entity (including the Released Parties), nothing herein shall impair or enjoin the Plan Trustee from seeking to enforce, or to assert rights and recover damages with respect to any breach of the terms of this Plan.*

*(d)* **Exculpation***. The Debtor, the Released Parties, KeyBank National Association, as Administrator and Master Servicer of the KeyCorp Trusts, The Bank of New York Mellon Trust Co., N.A., as Eligible Lender Trustee and as Indenture Trustee for certain KeyCorp Trusts, The Bank of New York (Delaware), as Owner Trustee for certain KeyCorp Trusts, Deutsche Bank Trust Company Americas, as Indenture Trustee and Owner Trustee for certain KeyCorp Trusts, FMDS, solely in its capacity as Administrator to the Securitization Trusts, U.S. Bank National Association, solely in its capacity as Indenture Trustee, trustee and eligible lender trustee to the Securitization Trusts and Other Trusts, and in any capacity in which it was named as a defendant in the Trust Adversary Proceeding, and as bank or agent with respect to the Collateral Accounts, MBIA Insurance Corporation and AMBAC Assurance Corporation, and their respective members and professionals (acting in such capacity), shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan, or any act taken or omitted to be taken in connection with, in contemplation of, during or in any way related to the Chapter 11 Case (all of the foregoing being collectively referred to as the "*Exculpated Acts*"), except for transactions, acts or omissions (i) as a result of willful misconduct or gross negligence, (ii) with respect to transactions occurring pursuant to the "Order Pursuant to Sections 105, 362 and 363 of the Bankruptcy Code Authorizing and Directing Debtor to Honor Certain of its Guaranty Obligations and Purchase Defaulted Loans Using Cash in Certain Pledged Accounts Established for the benefit of the Trusts" entered by the Bankruptcy Court on June 23, 2008, (iii) occurring pursuant to the Transition Services Agreement between FMER and the Debtor approved by the Bankruptcy Court on June 23, 2008, or (iv) pursuant to any contracts between or among the Debtor and any entity entered into prior to the commencement of this Bankruptcy Case. This provision does not exculpate the foregoing Persons, including the Debtor, from performing their duties under the Plan and effectuating the Plan. Nothing in this section 12.4 (i) exculpates the Debtor or Reorganized TERI from performing its obligations under any contract or agreement not rejected under this Plan pursuant to 11 U.S.C. §365, or (ii) exculpates any Person from obligations unrelated to the Exculpated Acts it may owe to any other Person under any contract.*

**12.5** **Release of Assets**. Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtor, its assets and properties and the Estate. Thereafter, jurisdiction of the Bankruptcy Court shall be limited as set forth in Article XI of this Plan.

**12.6** **Claims Preserved.** As of the Effective Date, subject to the releases and waivers granted pursuant to section 12.4 of this Plan, the Plan Trust shall succeed to the Debtor's interest in the Causes of Action, and the Plan Trustee shall have all requisite authorization, approval and

**EXECUTION VERSION**

standing to prosecute any Causes of Action in the name of, on behalf of, in the stead of, or as assignee of the Debtor and the Estate.

**12.7    Residual**.

(a)    **Reorganized TERI Deemed Owner of Residual**. Confirmation of the Plan constitutes a determination, binding on all Entities (including, without limitation, the United States Internal Revenue Service and all state taxing authorities) that as a result of the implementation of the transactions contemplated by this Plan, (i) the Plan Trustee is not and shall not become the owner of the Residual (or any portion thereof) for purposes of taxation under the laws of the United States or of any State, and (ii) none of the beneficiaries of the Plan Trust shall in any way be liable for any taxes attributable to or arising as a result of ownership of the Residual, or payable on account of income or accretion of value, if any, earned by, allocated to or attributable to the owner(s) of the Residual, to the United States or any State, including to any political subdivision or agency of any of them.

(b)    **Post-confirmation Treatment of Residual**.  The Plan Trustee and TERI shall in good faith attempt to reach agreement regarding the proper treatment of the Residual, in a manner that will not impose obligations upon the Plan Trustee or the beneficiaries of the Plan Trust to recognize and/or pay taxes relating to Reorganized TERI's ownership of the Residual.

(c)    **No Tax Liability For Plan Trust or Creditors Arising From Residual**. Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall obligate the Plan Trustee, the Plan Trust, or the beneficiaries of the Plan Trust to assume any obligation or liability relating to the Residual, including any liability with respect to federal or state taxes in any way attributable to or arising as a result of ownership of the Residual, or payable on account of income or accretion of value earned by, allocated to or attributable to the owner(s) of the Residual.  In the absence of any agreement to the contrary between the Plan Trustee and TERI pursuant to Section 12.7(b) of the Plan, Reorganized TERI shall retain all right, title, interest, obligations and liabilities related to or arising from the Residual.

**12.8    ERISA**.  Nothing in this Plan will release or discharge any fiduciary of the Pension Plan, within the meaning of 29 U.S.C. §1002(21), from any liability arising as a result of such fiduciary's breach of fiduciary duty under ERISA with respect to the Pension Plan. Confirmation of the Plan shall operate as a judicial determination, binding on all Entities, that neither the Plan Trustee nor any Creditor that is not an insider of the Debtor is or shall become due to implementation of this Plan a fiduciary of the Pension Plan within the meaning of 29 U.S.C. §1002(21).

## ARTICLE XIII

## RETENTION OF JURISDICTION

**13.1    Jurisdiction of Bankruptcy Court**.  The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)      To hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of any Claims resulting there from;

(b)      To determine any and all pending adversary proceedings, applications and contested matters relating to the Chapter 11 Case;

(c)      To hear and determine any objection to any Claims;

(d)      To hear and determine the Causes of Action;

(e)      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(f)      To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(g)      To consider any modifications of this Plan, to cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)      To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(i)      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, including, without limitation, any claim or issue arising under or in any way related to section 12.7 of this Plan;

(j)      To hear and determine any actions brought against the Plan Trustee or Reorganized TERI;

(k)      To recover all assets of the Debtor, property of the Estate and the assets of the Plan Trustee, wherever located;

(l)      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Commencement Date through the closing of the Chapter 11 Case);

(m)      To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Case;

(n)      To hear any other matter consistent with the provisions of the Bankruptcy Code; and

(o)     To enter a final decree closing the Chapter 11 Case.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

**14.1    Effectuating Documents and Further Transactions**.  Each of the officers of the Debtor and Reorganized TERI, and the Plan Trustee is authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**14.2    Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**14.3    Post-Confirmation Date Fees and Expenses**.  After the Effective Date, Reorganized TERI will, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses, incurred after the Effective Date, of the professional persons employed by Reorganized TERI in connection with the implementation and consummation of this Plan and any other matters as to which such professionals may be engaged.  The fees and expenses of such professionals will be paid within ten (10) Business Days after submission of a detailed invoice therefor.  If Reorganized TERI disputes the reasonableness of any such invoice, Reorganized TERI will timely pay the undisputed portion of such invoice, and Reorganized TERI or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such portion of the disputed invoice.

**14.4    Modification of Plan**.

(a)     The Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order, subject to the consent of the Creditors' Committee.  After the entry of the Confirmation Order but prior to the Effective Date, the Plan Proponents may, upon order of the Bankruptcy Court, jointly amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A holder of an Allowed Claim that is deemed to have accepted this Plan will be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

(b)     Prior to the Effective Date, the Creditors Committee, in its sole and absolute discretion, shall have the right not to accept any portion of the Plan Trust Assets.  Any

59

such Plan Trust Assets that the Creditors Committee declines to accept as Plan Trust Assets shall instead be deemed to be Reorganized TERI Assets under this Plan.

**14.5** **Withdrawal or Revocation**.  The Plan Proponents may withdraw or revoke this Plan at any time prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw this Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then this Plan will be deemed null and void.  In such event, nothing contained herein will be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or Entity or to prejudice in any manner the rights of the Debtor or any other Person or Entity in any further proceedings involving the Debtor.

**14.6** **Courts of Competent Jurisdiction**.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction will have no effect upon and will not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**14.7** **Notices**.  Any notices to or requests of the Debtor by parties-in-interest under or in connection with the Plan must be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, all charges prepaid, and will be deemed to have been given when received by the following parties:

> To the Company/Debtor:
>
>> THE EDUCATION RESOURCES INSTITUTE, INC.
>> 31 St. James Ave., 9th Floor
>> Boston, MA 02116
>> Attn: Willis J. Hulings III
>
> *With copies to:*
>
>> GOODWIN PROCTER LLP
>> Attorneys for the Debtor
>> Exchange Place
>> 53 State Street
>> Boston, MA 02109-2881
>> (617) 570-1930
>> Attn: Daniel Glosband, Esq.
>>     Gina Lynn Martin, Esq.
>
> To the Creditors' Committee:
>
>> DUANE MORRIS, LLP
>> 470 Atlantic Avenue, Suite 500
>> Boston, Ma 02210

**EXECUTION VERSION**

(857) 488-4216
Attn: Jeffrey D. Sternklar

To the Plan Trustee:

[     ]

**14.8** **Severability**.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.9** **Governing Law**.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, the laws of the State of Massachusetts without giving effect to the principles of conflicts of law thereof.

**14.10** **Headings**.  Headings are used in this Plan for convenience and reference only, and will not constitute a part of this Plan for any other purpose.

**14.11** **Exhibits**.  All Exhibits and schedules to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

**14.12** **Successors and Assigns**.  All the rights, benefits and obligations of any Person or Entity named or referred to in this Plan will be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person or Entity.

**14.13** **Dissolution of the Creditors' Committee**.  On the Effective Date, the Creditors' Committee will be dissolved and the members thereof will be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case, and the retention or employment of the Creditors' Committee's attorneys, accountants and other agents will terminate; *provided, however*, that immediately prior to the dissolution of the Creditors' Committee, any and all analyses or work product prepared by and/or information obtained by the Creditors' Committee or its attorneys, accountants and other agents related to the Causes of Action must be transferred to the Plan Trust and will be deemed an asset of the Plan Trust for purposes of the Plan; *provided further, however*, the Creditors' Committee will continue to exist after such date solely with respect to all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code seeking payment of

61

fees and expenses incurred by any professional retained by the Creditors' Committee. On and after the Effective Date, the Plan Trustee Advisory Committee will have the same standing to participate in proceedings before the Bankruptcy Court as the Creditors' Committee had prior to the Effective Date.

**14.14  Courts of Competent Jurisdiction**.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction will have no effect upon and will not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**14.15  Plan Supplement**.  The documents comprising the Plan Supplement will be filed with the clerk of the Bankruptcy Court at least ten (10) days prior to the deadline to vote to accept or reject this Plan. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court during normal court hours. Holders of Claims may obtain a copy of the Plan Supplement upon written request to the Debtor's bankruptcy counsel or on the website of the Voting Agent (*www.epiqsystems.com*).  All exhibits and schedules contained in the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein.

**14.16  Plan Controls Disclosure Statement; Confirmation Order Controls Plan**. To the extent this Plan is inconsistent with the Disclosure Statement, the provisions of this Plan will be controlling. To the extent the Confirmation Order is inconsistent with this Plan, the provisions of the Confirmation Order will be controlling.

**14.17  Filing of Additional Documents**.  On or before substantial consummation of this Plan, the Debtor will file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, including those contained in the Plan Supplement.

**14.18  Tax-Exempt Status**.  Nothing in this Plan will adversely affect, or be interpreted to be inconsistent with, the tax-exempt status of the Debtor, Reorganized TERI or any entity established pursuant to this Plan that is expressly intended to be tax-exempt.

**14.19  Consent to Transfer of Residual**.  The Debtor shall be deemed to have consented to the transfer of any residual interests in any Securitization Trust by any holder of a residual interest in any Securitization Trust that has provided the Debtor with written consent to transfer such interest. Notwithstanding the foregoing, however, without the need for any further action by any entity, the Debtor shall be deemed to have all necessary consents from all entities and to have provided all necessary consents to permit the transfer of the Residual to the Plan Trustee notwithstanding that the Residual will not be transferred as of the Effective Date under this Plan.

62

**EXECUTION VERSION**

Dated:    Boston, Massachusetts
          February 25, 2010

**THE EDUCATION RESOURCES INSTITUTE, INC.**


By:_____
     Name:
     Title:


**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE EDUCATION RESOURCES INSTITUTE, INC.**


By:_____
     Name:
     Title:

63

**Joint Plan of Reorganization**
**Schedule A**

| Class | Make and Wait Collateral Account Funds (as of 12/31/08) | Make and Wait Lien Dispute Amount (5% of Collateral Account Funds) | Make and Wait Lender Base Case Equity (If Any) | Make and Wait Lender Decoder Equity (If Any) | Make and Wait Lender Payment Amount (If Any) [1] | Payment to Accepting Make and Wait Lender from Collateral Account [2] | Make and Wait Lender Decoder Deficiency Claim (If Any) [3] |
|---|---|---|---|---|---|---|---|
| | A | A *5%=B | C | D | B+D=E | A-E=F | G |
| Class 2a Intentionally Omitted | $0 | $0 | $0 | NA | NA | NA | NA |
| Class 2b Comerica Bank | $379,951 | $0 | $164,345 | $41,582 | $41,582 | $338,368 | $0 |
| Class 2c Intentionally Omitted | $790 | $0 | $0 | NA | NA | NA | NA |
| Class 2d GMAC Bank | $5,906,949 | $0 | $782,057 | $0 | $0 | $5,906,949 | $941,904 |
| Class 2e HSBC Bank USA, N.A. | $861,764 | $0 | $627,147 | $320,702 | $320,702 | $541,061 | $0 |
| Class 2f Huntington National Bank | $831,333 | $0 | $325,854 | $0 | $0 | $831,333 | $2,126 |
| Class 2g Insurbanc | $16,233 | $812 | $8,650 | $2,098 | $2,910 | $13,323 | $0 |
| Class 2h KeyBank National Association | $856,777 | $0 | $92,883 | $0 | $0 | $856,777 | $159,860 |
| Class 2i Manufacturers and Traders Trust Company | $678,383 | $33,919 | $524,891 | $215,499 | $249,418 | $428,965 | $0 |
| Class 2j National City Bank | $3,973,170 | $0 | $1,140,016 | $0 | $0 | $3,973,170 | $206,358 |
| Class 2k PNC Bank, N.A. | $8,025,823 | $401,291 | $3,026,789 | $0 | $401,291 | $7,624,532 | $448,989 |
| Class 2l RBS Citizens, N.A. | $48,488,139 | $2,424,407 | $8,857,767 | $0 | $2,424,407 | $46,063,732 | $7,803,433 |
| Class 2m Sovereign Bank | $537,888 | $0 | $265,002 | $64,848 | $64,848 | $473,040 | $0 |
| Class 2n SunTrust Bank | $437,566 | $0 | $250,542 | $110,277 | $110,277 | $327,289 | $0 |
| Class 2o TCF National Bank | $129,172 | $0 | $76,941 | $23,996 | $23,996 | $105,177 | $0 |
| Class 2p U.S. Bank, N.A. | $2,795,334 | $0 | $1,143,599 | $88,198 | $88,198 | $2,707,136 | $0 |

[1] This is the sum of the "Make and Wait Lien Dispute Amount (5% of Collateral Account Funds)" and "Make and Wait Lender Decoder Equity (if any)". The balance of the funds in the Collateral Account, including accrued interest, shall be payable to the applicable Accepting Make and Wait Lender.

[2] For purposes of the Plan, payment to accepting Make and Wait Lender from Collateral Account is net of any equity calculated with the Decoder methodology described in the Plan Supplement. Amounts in the Collateral Account will be adjusted on the date of transfer.

[3] Under the Base Case, no Make and Wait Lender holds a Deficiency Claim.

Joint Plan of Reorganization
Schedule B

| Class | Securitization Trust Collateral Collateral Acct (As of 12/31/08)[1] | Securitization Trust Collateral Collateral Acct (As of 9/30/09)[2] | Securitization Trust Base Case[3] Equity | Securitization Trust Base Case[3] Claim | Decoder Case[4] | | | | Securitization Trust Settlement Claim If Any[8] |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Securitization Trust Decoder Equity (rounded)[5] | PMT to Accepting Securitization Trust from Collateral Acct.[6] | Securitization Trust Decoder Claim (rounded)[5] | Securitization Trust Settlement Claim Reduction[7] | |
| | A | B | | | C | B-C | D | E | D-E = F |
| Class 3a — The National Collegiate Trust 2003-1 | $540,778 | $232 | - | $12,214,990 | - | $232 | $13,500,000 | $6,900,000 | $6,600,000 |
| Class 3b — The National Collegiate Trust 2004-1 | $505,430 | $659 | - | $10,696,186 | - | $659 | $12,300,000 | $6,700,000 | $5,600,000 |
| Class 3c — The National Collegiate Trust 2004-2 | $788,078 | $497 | - | $12,884,635 | - | $497 | $21,200,000 | $7,000,000 | $14,200,000 |
| Class 3d — The National Collegiate Trust 2005-1 | $632,914 | $1,026 | - | $5,219,602 | - | $1,026 | $13,900,000 | $5,200,000 | $8,700,000 |
| Class 3e — The National Collegiate Trust 2005-2 | $395,825 | $1,355 | - | $5,575,091 | - | $1,355 | $12,700,000 | $3,400,000 | $9,300,000 |
| Class 3f — The National Collegiate Trust 2005-3 | $1,809,447 | $2,242 | - | $6,015,971 | - | $2,242 | $32,800,000 | $5,200,000 | $27,600,000 |
| Class 3g — The National Collegiate Trust 2006-1 | $472,236 | $2,656 | - | $6,761,746 | - | $2,656 | $24,500,000 | $2,700,000 | $21,800,000 |
| Class 3h — The National Collegiate Trust 2006-2 | $225,021 | $125 | - | $11,186,298 | - | $125 | $24,600,000 | $1,700,000 | $22,900,000 |
| Class 3i — The National Collegiate Trust 2006-3 | $51,161,652 | $48,247,618 | $14,690,347 | - | - | $48,247,618 | $15,700,000 | $1,700,000 | $14,000,000 |
| Class 3j — The National Collegiate Trust 2006-4 | $20,967,919 | $19,560,861 | - | $2,175,723 | - | $19,560,861 | $22,000,000 | $900,000 | $21,100,000 |
| Class 3k — The National Collegiate Trust 2007-1 | $31,632,569 | $30,646,587 | $2,680,796 | - | - | $30,646,587 | $14,200,000 | $300,000 | $13,900,000 |
| Class 3l — The National Collegiate Trust 2007-2 | $38,018,657 | $36,920,407 | $4,331,492 | - | - | $36,920,407 | $10,400,000 | $200,000 | $10,200,000 |
| Class 3m — The National Collegiate Trust 2001-CP1 | $404 | $405 | N/A | NA | $405 | - | - | - | Subject to Stipulation |
| Class 3n — The National Collegiate Trust 2002-CP1 | $740,974 | $752,347 | N/A | NA | $752,347 | - | - | - | Subject to Stipulation |
| Class 3o — The National Collegiate Master Trust | $906,902 | $262 | - | $14,954,201 | - | $262 | $16,200,000 | $10,300,000 | $5,900,000 |
| Class 3p — The National Collegiate Trust 2007-3 | $65,493,625 | $65,379,145 | $20,234,263 | - | $1,600,000 | $63,779,145 | - | - | - |
| Class 3q — The National Collegiate Trust 2007-4 | $64,615,864 | $64,548,316 | $19,264,504 | - | $700,000 | $63,848,316 | - | - | - |

[1] The 2001-CP1 and 2002-CP1 Trusts have been repurchasing defaulted loans after 12/31/08, and as such, the current estimation uses lower collateral account balances as of 10/31/09 and higher post-petition repurchased loan amounts for these two trusts.

[2] Represents Allowed Secured Claim for Accepting Trusts. Amounts subject to reduction by Securitization Trust Decoder Equity, as referenced in footnote 5 of this schedule. Amounts reflect market value before accrued interest and will be updated as of the date of transfer.

[3] Base Case is provided for illustrative purposes. The Base Case Claim/Equity amounts were determined in accordance with the Debtor Base Case methodology described in the Disclosure Statement. If any Securitization Trust rejects the Plan, the Plan Trustee reserves the right to seek to have the amount of the claims of such Securitization Trust determined at any amount the Plan Trustee determines is reasonable, including the Debtor's Base Case.

[4] The Decoder Case Claim/Equity amounts were determined in accordance with the Decoder methodology described in the Plan Supplement.

[5] Assumes Trust Collateral includes defaulted loans purchased by TERI pre-petition using funds in respective pledged accounts but not the defaulted loans purchased by TERI post-petition, pursuant to the Securitization Trust Settlement.

[6] Payment to accepting Securitization Trust from collateral account is net of any equity calculated with the Decoder methodology described in the Plan Supplement. Amounts in the collateral account will be adjusted on the date of transfer.

[7] Reflects reduction to Securitization Trust Decoder Claim pursuant to the Securitization Trust Settlement and as defined in the Plan.

[8] Decoder Case Claim reduced by the Securitization Trust Settlement Claim Reduction, as referenced in footnote 7. Reflects Allowed General Unsecured Claim for Trusts accepting the Plan, and, thereby, the Securitization Trust Settlement.

**Joint Plan of Reorganization**
**Schedule C**

| Keycorp Trust | Allocation of Victory Fund [(1)] | Key Access Program Base Case Claim [(2)] | Key Access Program Decoder Settlement Claim [(3,4)] |
|---|---|---|---|
| Key Bank National Association | $ 17,572 | $ 2,990,666 | $ 4,183,461 |
| KSLT 1999-A | $ 5,304 | $ 845,309 | $ 1,182,942 |
| KSLT 1999-B | $ 4,426 | $ 1,025,614 | $ 1,227,168 |
| KSLT 2000-A | $ 2,777 | $ 365,040 | $ 482,156 |
| KSLT 2000-B | $ 4,989 | $ 1,266,274 | $ 1,477,086 |
| KSLT 2001-A | $ 3,055 | $ 951,496 | $ 1,168,802 |
| KSLT 2002-A | $ 3,278 | $ 1,158,829 | $ 1,352,056 |
| KSLT 2003-A | $ 1,122 | $ 492,155 | $ 623,586 |
| KSLT 2004-A | $ 2,053 | $ 586,767 | $ 803,372 |
| KSLT 2005-A | $ 1,358 | $ 263,483 | $ 377,533 |
| KSLT 2006-A | $ 65 | $ 301,180 | $ 362,215 |

[(1)] Reflects allocation of the Victory Fund as of the Commencement Date based on the original principal balance. These amounts are to be returned to the respective trust as part of KeyCorp Trust Settlement.

[(2)] Base Case is provided for illustrative purposes. The Base Case Claim/Equity amounts were determined in accordance with the Debtor Base Case methodology described in the Disclosure Statement. If any Keycorp Trust rejects the Plan, the Plan Trustee reserves the right to seek to have the amount of the claim for such Keycorp Trust determined at any amount the Plan Trustee determines is reasonable, including the Debtor's Base Case.

[(3)] The Decoder Settlement Claim amounts were determined in accordance with the Decoder methodology described in the Plan Supplement.

[(4)] Decoder Settlement Claim reflects Allowed General Unsecured Claim for Accepting Keycorp Trusts.

Joint Plan of Reorganization
Schedule D

| Make and Hold Lender | Make and Hold [1] Lender Base Case Claim | Make and Hold [2] Lender Decoder Claim | Make and Hold [3] Lender Settlement Claim |
|---|---|---|---|
| Brazos Student Finance Corporation | See Star Bank Claim | See Star Bank Claim | See Star Bank Claim |
| California Bank & Trust | $ 864 | $ 866 | $ 866 |
| CHELA Financial USA/Inc. (n/k/a Nelnet) | $ 63,612 | $ 54,890 | $ 63,612 |
| Citibank | $ 48,946 | $ 42,538 | $ 48,946 |
| Comerica Bank | $ 407,313 | $ 430,720 | $ 430,720 |
| Corus Bank, N.A. | $ 9,207 | $ 9,509 | $ 9,509 |
| Deutsche Bank | $ 420,994 | $ 355,277 | $ 420,994 |
| HealthMarkets, Inc. (f/k/a UICI) | $ 2,526,339 | $ 2,404,978 | $ 2,526,339 |
| HSBC Bank USA | $ 1,079 | $ 1,824 | $ 1,824 |
| Keystone (Pheaa) | $ 1,148,081 | $ 1,052,911 | $ 1,148,081 |
| Maine Education Services (f/k/a MELA) | $ 6,466 | $ - | $ 6,466 |
| Manufacturers and Traders Trust Company | $ 98,304 | $ 117,110 | $ 117,110 |
| Members 1st Federal Credit Union | $ 134,120 | $ 166,089 | $ 166,089 |
| National City Bank | $ 101,766 | $ 256,320 | $ 256,320 |
| Nellie Mae Education Foundation | $ 191,419 | $ 193,249 | $ 193,249 |
| NelNet, Inc. | See CHELA Claim | See CHELA Claim | See CHELA Claim |
| Penn Security Bank and Trust | $ 171,099 | $ 212,035 | $ 212,035 |
| PNC Bank, N.A. | $ 235,207 | $ 289,677 | $ 289,677 |
| RBS Citizens, N.A. | $ 12,480,953 | $ 14,664,444 | $ 14,664,444 |
| Rhode Island Student Loan Authority | $ 167 | $ - | $ 167 |
| Richland State Bank | $ 3,463 | $ 2,471 | $ 3,463 |
| Sallie Mae - Academic Management Services | $ 348,074 | $ 338,416 | $ 348,074 |
| Sallie Mae - ECFC | $ 490,918 | $ 477,360 | $ 490,918 |
| Southwest Student Services Corp. | $ - | $ - | $ - |
| Star Bank | $ 1,375,226 | $ 1,851,476 | $ 1,851,476 |
| Student Loan Funding Corp (KnowledgeWorks) | $ 17,630 | $ 43,352 | $ 43,352 |
| TFSI | $ 80,067 | $ 116,805 | $ 116,805 |
| Wachovia Bank of Delaware, N.A. | $ 37,391,156 | $ 48,849,269 | $ 48,849,269 |
| Zions First National Bank | $ 714 | $ 750 | $ 750 |
| The National Collegiate Trust 2006-A | n/a | $ 468,871 | $ 468,871 |

[1] Base Case is provided for illustrative purposes. The Make and Hold Lender Base Case Claim amounts were determined in accordance with the Debtor Base Case methodology described in the Disclosure Statement. If any Make and Hold Lender rejects the Plan, then the Plan Trustee reserves the right to seek to have the amount of the claim for such Make and Hold Lender determined at any amount the Plan Trustee determines is reasonable, including the

[2] The Make and Hold Lender Decoder Claim amounts were determined in accordance with the Decoder methodology described in the Plan Supplement. Make and Hold Lender Settlement Claim reflects Allowed General Unsecured Claim for Accepting Make and Hold Lenders.

[3] Greater of Make and Hold Lender Base Case Claim and Make and Hold Lender Decoder Decoder Claim.