# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| THE EDUCATION RESOURCES INSTITUTE, INC., | Case No. 08-12540 (HJB) |
| Debtor. |  |

## ORDER (A) APPROVING THE DISCLOSURE STATEMENT, (B) TEMPORARILY ALLOWING CLAIMS FOR VOTING PURPOSES, (C) ESTABLISHING PROCEDURES FOR CONFIRMATION OF THE PLAN, (D) ESTABLISHING PLAN SOLICITATION AND VOTING PROCEDURES AND (E) APPROVING FORMS OF NOTICES AND BALLOTS

Upon the Motion of The Education Resources Institute, Inc. ("TERI" or the "Debtor")

and the Official Committee of Unsecured Creditors (the "Creditors' Committee" and, together

with the Debtor, the "Plan Proponents"), pursuant to sections 105, 1125, 1126 and 1129 of Title

11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") 2002, 3017, 3018, 3020 and 9008 for an order (a) approving

the Disclosure Statement, (b) temporarily allowing claims in the amounts stated herein, for the

purpose of accepting or rejecting the Plan, (c) establishing procedures for confirmation of the

Fourth Amended Joint Plan of Reorganization (as the same may be modified, supplemented or

amended, the "Plan") submitted by the Plan Proponents on or about February 25, 2010, (d)

establishing solicitation and voting procedures (the "Plan Solicitation and Voting Procedures") in

connection with the solicitation of votes to confirm the Plan and (e) approving forms of notices

and ballots (the "Solicitation Procedures Motion")[1]; and sufficient notice having been given and

a hearing having been held and due cause appearing therefore, the Court finds that for the

reasons set forth more specifically in the Solicitation Procedures Motion and the hearing on the

Motion, cause has been shown for granting the relief requested, and accordingly:

IT IS HEREBY FOUND THAT:

The Plan Proponents provided good and sufficient notice of the Motion; and

The Disclosure Statement, contains adequate information within the meaning of

section 1125 of the Bankruptcy Code; and

THEREFORE, IT IS:

1.      ORDERED, that the Solicitation Procedures Motion is GRANTED; and it is

further

2.      ORDERED, that the Disclosure Statement is APPROVED and any objections not

previously withdrawn are OVERRULED; and it is further

3.      ORDERED, that the Plan Proponents shall include the additional disclosure in

Section IV.I.4.d of the Disclosure Statement provided by counsel to JPMorgan Chase Bank, N.A.

("Chase") in respect of Chase's objection to the Exculpation provision of the Plan; and it is

further

4.      ORDERED, that February 26, 2010 be set as the Voting Record Date; and it is

further

5.      ORDERED, that the notice and objection procedures for confirmation of the Plan

set forth in the Motion are APPROVED; and it is further

---

[1]      All capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Solicitation
Procedures Motion.

2

LIBC/3696107.11

6.      ORDERED, that April 28, 2010 at 10:00 a.m., be set as the date of the Confirmation Hearing, and it is further

7.      ORDERED, that the Confirmation Hearing Notice, setting forth (a) the Voting Deadline for the submission of the Ballots, (b) the time fixed for filing objections to confirmation of the Plan and (c) the time, date and place for the Confirmation Hearing, substantially in the form attached to the Motion as Exhibit B, be APPROVED; and it is further

8.      ORDERED, that Confirmation Hearing Notice be published not less than 25 days before the deadline to file objections to confirmation of the Plan in The Wall Street Journal (National Edition).

9.      ORDERED, that allowed Priority Non-Tax Claims (Class 1) and Allowed Convenience Class Claims (Class 6) are not entitled to vote pursuant to Bankruptcy Code Section 1126(f) or otherwise; and it is further

10.      ORDERED, that (i) the form of notice substantially in the forms of Exhibit D hereto apprising holders of (1) Secured Claims of "Make and Wait" Lenders (Class 2a-2p), (2) Secured Claims of Certain Securitization Trusts (Class 3a-3q), (3) Secured Claims of the KeyCorp Trusts and KeyBank National Association (other than in its capacity as a Make and Wait Lender) (Classes 4a-4k) and (4) General Unsecured Claims, including for avoidance of doubt, the claims of Other Trusts (Class 5) of the voting procedures described in the Solicitation Procedures Motion is hereby approved; and it is further

11.      ORDERED, that the following rules, standards and protocols for the tabulation of ballots shall be established:

a)      For the purpose of voting on the Plan, EPIQ, as balloting agent, will be deemed to be in constructive receipt of any ballot timely delivered to any address that EPIQ (or its authorized agent) designates for the receipt of ballots cast in connection with the Plan;

b)      Any ballot received by EPIQ after the deadline for submission of ballots shall not be counted, unless the Plan Proponents, in their discretion, consent to the counting of such ballot or the Court

3

LIBC/3696107.11

orders such ballot to be counted;

c)  Whenever a holder of a claim submits more than one ballot voting the same claim prior to the deadline for submission of ballots, the last ballot timely received will supersede and revoke any earlier received ballot;

d)  Holders having multiple claims within a particular Plan class or subclass must uniformly vote either to accept or reject the Plan. Any ballot that partially rejects and partially accepts the Plan be counted as a vote to accept the Plan;

e)  If a ballot is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, such persons should indicate such capacity when signing and, unless otherwise determined by the Plan Proponents, must submit proper evidence satisfactory to the Plan Proponents to so act on behalf of the beneficial interest holder;

f)  All votes must be cast using the ballots distributed pursuant to the terms hereof. Votes cast in any manner other than by using such ballots will not be counted provided, however, that the Plan Proponents have the authority to waive any defects or irregularities or conditions of delivery as to any particular ballot. The Plan Proponents shall have no duty to provide notification of defects or irregularities with respect to the delivery of ballots nor shall the Plan Proponents incur any liability for failure to provide such notification.

g)  Any holder of a claim in an Impaired class who has delivered a valid ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a); and it is further

12.    ORDERED, that pursuant to Bankruptcy Rule 3018(a), a holder of a claim or

interest is not entitled to vote unless he or she is the holder of record as of February 26, 2010;

and it is further

13.    ORDERED, that only those holders of record of claims and interests and those

who are Securitization Trust Noteholders or KeyCorp Trust Noteholders or Other Trust

Noteholders or a Voting Control Party as of the Voting Record Date shall be entitled to vote as

set forth herein; and it is further

14.    ORDERED, that the Plan Proponents shall mail Solicitation Packages by the date

that is ten (10) business days after entry of this Order; and it is further

15.    ORDERED, that the following deadlines in connection with the Plan confirmation

process be set as follows:

4

(1)    Deadline for Voting on Plan: April 23, 2010, at 4:00 p.m.[1]
(the "Voting Deadline");

(2)    Deadline for filing with the Court and service to counsel for
the Debtor and Creditors' Committee of objections to confirmation
of the Plan:  April 23, 2010, at 4:00 p.m.;

(3)    Deadline for filing the Plan Supplement:  April 9, 2010;
and

(4)    Deadline for filing Report of Plan Voting: Prior to
commencement of Confirmation Hearing;

and it is further FOUND AND ORDERED THAT with respect to the votes cast in respect

of the Securitization Trusts, KeyCorp Trusts and Other Trusts:

a)    Notwithstanding any contrary provision in the applicable indentures, trust
agreements, security agreements or any other related documents (collectively, the
"Trust Documents"), each (1) Securitization Trust Party, (2) KeyCorp Trust Party
and (3) Other Trust Party may proceed as authorized and directed to comply with
the terms of this Order and to take such further actions as may be necessary to
give effect to the procedures established herein and pursuant to 11 U.S.C. §105,
11 U.S.C. §1126, and 11 U.S.C. §1129.

b)    Absent a Voting Control Party that does not waive its right to vote, for each
Securitization Trust, for each KeyCorp Trust and for each Other Trust, a Majority
Vote shall mean: (i) 1/2 in number of the Securitization Trust Noteholders and/or
KeyCorp Trust Noteholders and/or Other Trust Noteholders, as applicable, that
vote in accordance with these procedures <u>and</u> (ii) 2/3 in amount of the aggregate
principal balance of notes held by the Securitization Trust Noteholders and/or
KeyCorp Trust Noteholders and/or Other Trust Noteholders, as applicable, that
vote in accordance with these procedures.  Upon an affirmative Majority Vote of
the Noteholders for a given Securitization Trust and/or KeyCorp Trust and/or
Other Trust to accept the Plan, such Securitization Trust and/or KeyCorp Trust
and/or Other Trust, as applicable, and its Owner(s) and Owner Trustee or any
other Securitization Trust Party or KeyCorp Trust Party or Other Trust Party,
acting as a subclass of Class 3, Class 4, and/or as a member of Class 5, as
applicable, shall be deemed to have voted to accept the Plan. Except as otherwise
provided herein for a Trust that has a Voting Control Party that does not waive its
right to vote, a Majority Vote of a given Securitization Trust, KeyCorp Trust and/
or Other Trust to accept or reject the Plan shall bind the applicable Securitization
Trust, KeyCorp Trust and/or Other Trust, together with the applicable Indenture
Trustee, Administrator, Owner(s), Owner Trustee and/or other Securitization
Trust Party, KeyCorp Trust Party or Other Trust Party and all Securitization Trust
Noteholders, KeyCorp Trust Noteholders or Other Trust Noteholders, including
any other party that may be deemed to be a holder of a Securitization Trust Claim,

---

[1]    All times listed herein shall be prevailing Eastern Time.

KeyCorp Trust Claim and/or Other Trust Claim.

c)    With respect to The National Collegiate Student Loan Trust 2007-3, The National
Collegiate Student Loan Trust 2007-4, The National Collegiate Master Student
Loan Trust I, The National Collegiate Trust 2001-CP1 and The National
Collegiate Trust 2002-CPI, KeyCorp Student Loan Trust 2000-A, KeyCorp
Student Loan Trust 2000-B, KeyCorp Student Loan Trust 2001-A, KeyCorp
Student Loan Trust 2002-A and KeyCorp Student Loan Trust 2003-A, and
KnowledgeWorks which are governed by Trust Documents that authorize a
Voting Control Party to direct or cause a vote to be cast on behalf of such Trusts,
such Voting Control Party is hereby authorized to cast a ballot to accept or reject
the Plan on behalf of the applicable Trust and, in doing so, shall bind the
applicable Trust and its Securitization Trust Noteholders or KeyCorp Trust
Noteholders, as applicable, and the applicable Indenture Trustee, Administrator,
Owner(s), Owner Trustee, and/or any other Securitization Trust Party or KeyCorp
Trust Party, as applicable, including any other party that may be deemed to be a
holder of a Securitization Trust Claim, KeyCorp Trust Claim and/or Other Trust
Claim.

d)    (i) Ambac Assurance Corporation as the deemed Voting Control Party on behalf
of NCSLT 2007-3, NCSLT 2007-4, the Master Trust and KeyCorp Student Loan
Trust 2002-A, (ii) KnowledgeWorks Foundation as the deemed Voting Control
Party on behalf of KnowledgeWorks and (iii) each other Voting Control Party, on
behalf of the applicable Securitization Trust or KeyCorp Trust are hereby
authorized to vote on behalf of such Trusts and pursuant to the terms of this Order
will be sent a ballot to vote to accept or reject the Plan on behalf of such Trusts.
If a Voting Control Party elects to waive its right under this Order to vote to
accept or reject the Plan on behalf of its corresponding Trust, it shall provide
written notice to the Plan Proponents of such election within three (3) days of the
entry of this Order; provided however, that, Ambac Assurance Corporation has
elected to vote in respect of NCSLT 2007-3, NCSLT 2007-4, the Master Trust
and KeyCorp Student Loan Trust 2002-A and KnowledgeWorks Foundation will
vote in respect of Knowledgeworks and no further action shall be required by
Ambac Assurance Corporation.

e)    For each Trust with a Voting Control Party that has not waived the right to vote
on behalf of such Trust, the vote of the applicable Voting Control Party shall be
deemed the vote of such Trust.  If an affirmative vote of a Voting Control Party
for a given Trust is timely received, such Trust shall be deemed to have voted to
accept the Plan.

f)    Acceptance of the Plan by a Majority Vote of the Noteholders of any
Securitization Trust and/or KeyCorp Trust and/or Other Trust shall be deemed a
direction by the applicable Securitization Trust, KeyCorp Trust, Other Trust,
Administrator, Issuer, Indenture Trustee, Owners, Owner Trustee and/or any other
Securitization Trust Party, KeyCorp Trust Party or Other Trust Party, as
applicable, including any other Party that may be deemed to be a holder of a
Securitization Trust Claim, KeyCorp Trust Claim and/or Other Trust Claim, to

6

accept the Plan, solely in connection with such Securitization Trust and/or KeyCorp Trust and/or Other Trust. In the event that the Plan is rejected by the Applicable Trust, a given Securitization Trust and/or KeyCorp Trust and/or Other Trust will be deemed to have: (i) rejected the Plan and the applicable settlement and, (ii) to have granted a lien on any distributions that may be received by such Securitization Trust or KeyCorp Trust or Other Trust, if any, to the Indenture Trustee, Administrator and/or applicable Trust, to the full extent of their fees, costs and expenses (including but not limited to attorneys' fees and expenses) incurred in determining the amount of the Claim of such Trust;

16.    ORDERED, that the following protocol for solicitation and balloting of the

Claims of the Securitization Trusts, KeyCorp Trusts and Other Trusts is hereby approved:

a)    Except as otherwise provided in the Solicitation Procedures Order for Trusts with a Voting Control Party, individual ballots (each a "Trust Physical Holder Ballot"; collectively, the "Trust Physical Holder Ballots"), shall be used for the limited purposes set forth herein by individual persons or entities, who hold, as of the Voting Record Date, notes or certificates issued by the Securitization Trusts or KeyCorp Trusts or Other Trusts (as applicable) in their own name (rather than in street name on behalf of others) (collectively, the "Trust Physical Holders").

b)    Except as otherwise provided herein for Controlled Trusts, individual ballots (each a "Trust Beneficial Holder Ballot"; collectively, the "Trust Beneficial Holder Ballots"), shall be used for the limited purposes set forth herein by beneficial holders (the "Trust Beneficial Holders") of notes issued by the Securitization Trusts or KeyCorp Trusts or Other Trusts and held, as of the Voting Record Date, by a nominee, agent or other voting intermediary of record (each, a "Voting Intermediary"; collectively the "Voting Intermediaries").

c)    A master ballot (the "Master Ballot") shall be used for the limited purposes set forth herein by any Voting Intermediary authorized by this Order to distribute Trust Beneficial Holder Ballots and submit a Master Ballot on behalf of Trust Beneficial Holders.

d)    With respect to Trust with a Voting Control Party, the Plan Proponents shall provide the applicable Voting Control Party with a Solicitation Package containing a sufficient number of Control Party ballots (the "Control Party Ballot"). A separate Control Party Ballot shall be completed and submitted for each Trust with a Voting Control Party, by the applicable Voting Control Party. The Plan Proponents shall have no obligation to notify any holder of notes issued by a Trust with a Voting Control Party of the Plan, Disclosure Statement or Confirmation Hearing unless a Control Party waives its right to vote pursuant to the terms of this Order.

e)    Pursuant to Bankruptcy Rules 1007(i) and 3017(e), to permit the mailing of the proper number of Solicitation Packages (containing, as applicable, either (i) Trust Physical Holder Ballots, (ii) Master Ballots and Trust Beneficial Holder Ballots or

(iii) Control Party Ballots), the Securitization Claim Holders and the KeyCorp Trust Parties and Other Trust Holders shall provide to EPIQ, as soon as practicable after the approval of the Disclosure Statement:

1. A list (the "Trust Physical Holder Register") of the names, addresses, CUSIP numbers and face amount of the applicable holdings of the Trust Physical Holders; and

2. A list (the "Master Ballot Register") of the names and addresses of the Voting Intermediaries and for each Voting Intermediary, the CUSIP numbers and aggregate face amount of the Notes held by each Voting Intermediary on behalf of the Beneficial Owners.

f)     Upon receipt of the Trust Physical Holder Register, EPIQ shall send each Trust Physical Holder identified on the Trust Physical Holder Register, a Solicitation Package containing a Trust Physical Holder Ballot, to be completed and returned to EPIQ in accordance with the instructions thereon. The Plan Proponents shall have no liability or responsibility for ensuring the lists provided by the Securitization Claim Holders and the KeyCorp Trust Parties and/or the Other Trusts are accurate or complete.

g)     Upon receipt of the Master Ballot Register, the Debtor shall cause EPIQ to determine and deliver to each Voting Intermediary the requisite number of Solicitation Packages containing Trust Beneficial Holder Ballots and a single Master Ballot[2] for each Voting Intermediary. Instructions accompanying the Master Ballots shall further direct the Voting Intermediaries to promptly contact EPIQ for any additional Solicitation Packages or Trust Beneficial Holder Ballots that the Voting Intermediary may require to comply with the solicitation and voting procedures herein.

h)     The Voting Intermediary shall distribute a Solicitation Package containing a Trust Beneficial Holder Ballot to each Trust Beneficial Holder within five (5) Business Days of their receipt of the Solicitation Packages and include a pre-paid return envelope provided by and addressed to the Voting Intermediary. The Voting Intermediary shall advise the Trust Beneficial Holders to return their Trust Beneficial Holder Ballots to the Voting Intermediary by a date calculated by the Voting Intermediary to allow it to prepare and return the Master Ballot to EPIQ by the Voting Deadline. The Voting Intermediary shall summarize and report the Trust Beneficial Holder votes as indicated on each Trust Beneficial Holder Ballot, in accordance with the instructions on the Master Ballot. In the event that a Trust Beneficial Holder submits more than one Trust Beneficial Holder Ballot to a Voting Intermediary, the latest dated Trust Beneficial Holder Ballot received before the Voting Intermediary sends the Master Ballot to the Voting Agent shall be deemed to supersede any prior Trust Beneficial Holder Ballet previously submitted and the Voting Intermediary shall complete the Master Ballot accordingly.

---

[2]     In accordance with customary procedure, the Master Ballots will be distributed after the initial distribution of Solicitation Packages.

LIBC/3696107.11

i)    The Trust Physical Holder Ballots, the Trust Beneficial Holder Ballots, the Master Ballots and the Control Party Ballots (collectively, the "Trust Ballots") shall each be marked with the applicable CUSIP number, and each ballot shall only have one CUSIP number, so that EPIQ may identify and attribute the ballot to the appropriate Securitization Trust or a KeyCorp Trust or Other Trust, as applicable.

j)    Ballots for use in connection with the solicitation of the Other Trusts, including (i) holders of notes issued by NCT 2006A and (ii) the holders of notes issued by TFSI and (iii) Other Trusts shall be used to solicit acceptance or rejection of the Plan, and, thereby, the Make and Hold Settlement for such Trust.

k)    Nothing in this Solicitation Procedure Order or otherwise shall confer upon any entity the status of a holder of a claim or a creditor with respect to any claims or proofs of claim filed, asserted or held by, or on behalf of any Securitization Trust Party, Key Corp Trust Party or Other Trust Party.

l)    Nothing in this Solicitation Procedures Order shall impose any liability upon the Debtor, the Creditors' Committee or the bankruptcy estate in this case to reimburse any entity (including, without limitation, the Securitization Trust Parties or the KeyCorp Trust Parties or the Other Trust Parties) for any claims or expenses of any kind, or impair the rights of any entity to seek reimbursement from the estate of any claims or expenses of any kind;

m)    Notwithstanding any other provision of this Order, including paragraph 15(l), the Debtor shall be responsible for each Voting Intermediary's reasonable and customary out-of-pocket expenses associated with the distribution of The Trust Beneficial Holder Ballots and Solicitation Packages to the Trust Beneficial Holders, the tabulation of the Trust Beneficial Holder Ballots, and the completion of the Master Ballots;

n)    All Voting, Intermediaries are required to keep the original Trust Beneficial Holder Ballots received from the Beneficial Holders for a period of at least one (1) year after the Voting Deadline;

o)    The following additional rules will apply to the tabulation of Master Ballots and Trust Beneficial Holder Ballots cast by Voting Intermediaries and Trust Beneficial Holders.

    1.    Votes cast by Trust Beneficial Holders through a Voting Intermediary will be calculated by the positions held by such entities in the Notes as of the Voting Record Date, as evidenced by the record and depository listings (although any principal amounts shall be adjusted by the Voting Agent to reflect the amount of the Claim actually voted, including prepetition interest). Votes submitted by a Voting Intermediary will not be counted in excess of the record amount of such Notes held by such Voting Intermediary.

2.  To the extent that conflicting votes or "overvotes" are submitted by a Voting Intermediary, EPIQ will attempt to reconcile discrepancies with the Voting Intermediaries.

3.  To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, EPIQ will apply the votes to direct the Trust to accept or reject the Plan and applicable settlement in the same proportion as the votes to direct the Trust to accept or reject the Plan and applicable settlement submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Intermediary's position in the Notes.

4.  A single Voting Intermediary may complete and deliver to the Voting Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest dated Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supercede and revoke any prior Master Ballot; *provided, however,* that in instances where ambiguity exists with respect to which Master Ballot was the latest dated, the Voting Agent has the right to contact the respective Voting Intermediary to determine their intent and calculate the vote according thereto.

5.  Any Trust Beneficial Holder Ballot cast by a Trust Beneficial Holder holding securities in "street name" that is sent by a Trust Beneficial Holder directly to the Voting Agent, will not be counted.

p)  The following additional rules will apply to the tabulation of Trust Physical Holder Ballots cast by Trust Physical Holders.

1.  Votes cast by Trust Physical Holders will be applied against the positions held by such entities in the Notes as of the Voting Record Date, as evidenced by the record listings. Votes submitted by Trust Physical Holders will not be counted in excess of the record amount of such Notes held by such Trust Physical Holders.

2.  To the extent that conflicting votes or "overvotes" are submitted by a Trust Physical Holder, EPIQ will attempt to reconcile discrepancies with the Trust Physical Holder.

3.  To the extent that overvotes on a Trust Physical Holder Ballot are not reconcilable prior to the preparation of the vote certification, EPIQ will apply the amount listed in the Trust Physical Holder Ballot in the same proportion as the record listings.

17.  ORDERED, that the Forms of Ballot attached to the Motion as <u>Exhibit C</u> are

hereby approved; and it is further

18.    ORDERED, that the Plan Proponents can make non-material changes to the

Disclosure Statement and the form and text of the Ballots (including revising the form of ballots

of certain Trusts to reflect that "Certificateholders" and not "Noteholders" may vote on behalf of

such Trust) as well as additional conforming changes that may be requested by parties-in-interest

(including the Plan Proponents' Voting Agent) without further order of the Court; and it is further

19.    ORDERED, that the Solicitation Package containing: (a) a Notice of (i) Order

Approving the Disclosure Statement, (ii) Confirmation Hearing on the Plan, and (iii) Deadline

for Filing Objections to the Plan (the "Confirmation Hearing Notice") substantially in the form

attached hereto as <u>Exhibit B</u>; (b) the Disclosure Statement (with exhibits, including the Plan);

(c) applicable ballot(s); (d) any notice that the Indenture Trustee for any Securitization Trust or

certain Other Trust may request to have included for ballots to be sent in respect of such Trust so

long as such notice(s) are acceptable to the Plan Proponents, it being understood and agreed that

such notice may include "Frequently Asked Questions" and such other information as the parties

deem appropriate; (e) any notice that the Administrator for any KeyCorp Trust may request to

have included for ballots to be sent to the KeyCorp Trust Noteholders so long as such notice(s)

are acceptable to the Plan Proponents; and (f) a pre-addressed postage-paid return envelope, will

be mailed to all entities entitled to vote to accept or reject the Plan within ten (10) business days

of the entry of the order; and it is further

20.    ORDERED, that the Plan Proponents will send the Solicitation Package together

with a notice of non-impairment under the Plan, without ballots or return envelopes, to the

following: (a) holders of priority claims, administrative claims, and priority tax claims; (b)

holders of Allowed Convenience Class Claims; (c) the District Director of Internal Revenue for

the District of Massachusetts, as required by Bankruptcy Rule 2002(j); (d) the Office of the

LIBC/3696107.11

Attorney General for the Commonwealth of Massachusetts and (e) all parties who requested

special notice in this case pursuant to Bankruptcy Rule 2002; and it is further

21.    ORDERED, that the notice of non-impairment attached hereto as <u>Exhibit E</u> is

approved in all respects; and it is further

22.    ORDERED, that the form of notice to be sent to the Owner Trustee of each

Securitization Trust and KeyCorp Trust substantially in the form of <u>Exhibit F</u> be approved in all

respects; and it is further

23.    ORDERED, that the Plan Proponents can make non-material changes and

necessary conforming changes to the (1) Confirmation Hearing Notice; (2) Notice of Non-

Impairment and (3) Notice to Owner Trustees, without further Order of this Court; and it is

further

24.    ORDERED, that the Plan Proponents, the KeyCorp Trust Parties, FMDS, as

Administrator, U.S. Bank National Association as Indenture Trustee and Eligible Lender Trustee

to the Securitization Trusts and Other Trusts, any Voting Control Party (including, without

limitation, Ambac Assurance Corporation and MBIA Insurance Corporation) and their respective

members and professionals (acting in such capacity), shall neither have nor incur any liability to

any person or entity for any act taken or omitted to be taken in connection with or related to the

preparation, dissemination, solicitation, administration or implementation of the Solicitation

Procedures Motion or this Order, except for acts or omissions as a result of willful misconduct or

gross negligence; and it is further

25.    ORDERED, that nothing in the Solicitation Procedures Motion or this Order

requires the Indenture Trustee to inform any noteholders of any developments brought to the

Indenture Trustee's attention regarding the Plan or accompanying Disclosure Statement; and it is

further

12
LIBC/3696107.11

26.    ORDERED, that service by EPIQ of the parties on the Trust Physical Holder

Register and to Voting Intermediaries on the Master Ballot Register shall be deemed good and

sufficient service with no further service necessary; and it is further

27.    ORDERED, that the Plan Proponents are authorized to take all actions necessary

to effectuate the relief granted pursuant to this Order; and it is further

28.    ORDERED, that this Court retains jurisdiction with respect to all matters arising

from or related to implementation of this Order.

Dated:    ~~Boston~~ Springfield, Massachusetts
3/8    , 2010

The Honorable Henry J. Boroff
United States Bankruptcy Judge

LIBC/3696107.11