UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |
|---|---|
| In re<br><br>THE EDUCATION RESOURCES INSTITUTE, INC.,<br><br>Debtor | )<br>)<br>)   Chapter 11<br>)   Case No. 08-12540 (HJB)<br>)<br>)<br>) |

**SECOND JOINT MOTION OF THE EDUCATION RESOURCES INSTITUTE, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MODIFY FOURTH AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. §1127 AND PLAN SECTION 14.4 AND FOR RELIEF FROM JULY 12, 2010 RULINGS**

| THE EDUCATION RESOURCES INSTITUTE, INC. | THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE EDUCATION RESOURCES INSTITUTE, INC. |
|---|---|
| By its attorneys, | By its attorneys, |
| /s/  Daniel M. Glosband | /s/  Jeffrey D. Sternklar |
| Daniel M. Glosband<br>dglosband@goodwinprocter.com<br>Gina Lynn Martin<br>gmartin@goodwinprocter.com<br>Goodwin Procter LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br>(617) 570-1000 | Jeffrey D. Sternklar (BBO # 549561)<br>jdsternklar@duanemorris.com<br>Duane Morris LLP<br>470 Atlantic Avenue<br>Boston, MA 02210<br>(857) 488-4200 (telephone)<br>(857) 401-3034 (facsimile) |

LIBC/3861536.7

I.   Introduction ............................................................................................................2

II.  Summary of Relief Requested ...............................................................................4

III. Discussion ...............................................................................................................6

   A.   The Ambac Settlement, the Securitization Trust Modifications and
        the Resolution of the Unencumbered Loan and Prepetition Recoveries
        Issues ........................................................................................................... 6

   B.   Since Arguably All Creditors Are Adversely Affected by the Modified
        Plan, All Creditors Who Previously Accepted or Rejected the Plan
        Should be Provided With the Opportunity to Change Their Prior
        Acceptance or Rejection Pursuant to 11 U.S.C. §1127(d) and
        Fed.R.Bankr.P. 3019(a) ............................................................................... 9

   C.   Notice of the Modifications Pursuant to 11 U.S.C. §1127(d) and the
        Confirmation Hearing to Consider the August 2010 Plan ......................... 12

   D.   The Proposed Notice Provides Adequate Information Pursuant to 11
        U.S.C. §§1125 and 1127(c) ........................................................................ 13

   E.   The Court Should Grant Relief from the July 12, 2010 Rulings With
        Respect to the Confirmation of the February 2010 Plan ........................... 15

Exhibits

   Exhibit A   Excerpt of transcript of 7/12/10 hearing

   Exhibit B   August 2010 Plan

   Exhibit C   Blackline August 2010 Plan against February 2010 Plan

   Exhibit D   Preliminary Order

   Exhibit E   Form of Notice

   Exhibit F   Supplemental Disclosure

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |
|---|---|
| In re<br><br>THE EDUCATION RESOURCES INSTITUTE, INC.,<br><br>Debtor | )<br>)<br>)   Chapter 11<br>)   Case No. 08-12540 (HJB)<br>)<br>)<br>) |

**SECOND JOINT MOTION OF THE EDUCATION RESOURCES INSTITUTE, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MODIFY FOURTH AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1127 AND PLAN SECTION 14.4 AND FOR RELIEF FROM JULY 12, 2010 RULINGS**

To the Honorable Henry J. Boroff, Chief United States Bankruptcy Judge:

On June 9, 2010, the within debtor, The Education Resources Institute, Inc. ("TERI" or the "Debtor"), and the Official Committee of Unsecured Creditors (the "Committee" and together with the Debtor, the "Plan Proponents") filed the Joint Motion of the Education Resources, Inc. and the Official Committee of Unsecured Creditors to Modify Fourth Amended Plan of Reorganization Pursuant to 11 U.S.C. §1127 and Plan Section 14.4 (Docket Number 1103; the "First Modification Motion"). After a hearing on July 12, 2010, the Court denied the First Modification Motion and ordered the Debtor "to file a fifth amended plan, a further amended disclosure statement, and motion to approve same on or before August 27, 2010." (Transcript of July 12, 2010 hearing, p. 115; hereinafter, "Transcript." Copy of Transcript attached as Exhibit A"). The Court also offered an opportunity for further modifications, as detailed below (Transcript, at p. 115, lines 7-15). TERI and the Committee wish to accept the opportunity for further modifications and hereby submit the Second Joint Motion of The Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors to

LIBC/3861536.7

1

Modify Fourth Amended Plan of Reorganization Pursuant to 11 U.S.C. §1127 and Plan Section 14.4 (the "Motion" or the "Second Modification Motion"). The Second Modification Motion, as noted in its caption, seeks to modify the Fourth Amended Joint Plan of Reorganization dated February 25, 2010 ("February 2010 Plan" or "Plan" where the context permits) pursuant to §1127 of the Bankruptcy Code and Section 14.4 of the February 2010 Plan and also seeks relief from the July 12, 2010 rulings.

## I.    Introduction

1. In denying the Plan Proponents' First Modification Motion[1] the Court stated the following:

> Now the order I've just entered [inter alia, denying the Motion to Modify and vacating the conclusions the Court reached at the April 28, 2010 confirmation hearing with respect to the Fourth Amended Plan] is itself alterable. If the parties within a relatively short period of time decide to sit down and avoid the mutual - - the mutually assured destruction, which is the path on which they're traveling, then maybe we can get back to the fourth amended plan with some modifications. . . .

> Transcript, at page 115.

2. The Court premised its July 12, 2010 rulings on its view that the February 2010 Plan, as modified by the Plan Proponents, did not embody a compromise with Ambac Assurance Corporation, in its capacity as "Controlling Party" of The National Collegiate Master Student Loan Trust I ("Ambac;" the "Master Trust"). The Court stated that a compromise with Ambac was "a foundation and inextricably intertwined with the material provisions of the fourth amended plan." Transcript, at page 114. To remedy this problem and to avoid "mutually

---

[1] Defined terms not otherwise defined in this Motion shall have the meanings ascribed to them in the First Modification Motion and the Plan.

LIBC/3861536.7

assured destruction," the Plan Proponents and Ambac as Controlling Party of the Master Trust have negotiated a further compromise (the "Ambac Compromise").

3.   In addition, the Plan Proponents have modified the Securitization Trust Settlement (the "Securitization Trust Modifications") to propose a resolution of issues disputed with all Securitization Trusts. The Ambac Compromise and the Securitization Trust Modifications are embodied in the Modified Fourth Amended Joint Plan of Reorganization dated as of August 26, 2010 (the "August 2010 Plan" or the "Plan" where the context permits). As discussed in detail below, the Ambac Compromise and the Securitization Trust Modifications would settle the interpretational disputes that led to the filing of the First Modification Motion and result in support for the August 2010 Plan. The terms of the Ambac Compromise (applied ratably) will be offered to The National Collegiate Student Loan Trust 2003-1 ("NCSLT 2003-1") and The National Collegiate Student Loan Trust 2004-1 ("NCSLT 2004-1"), which are similarly situated to the Master Trust. The terms of the Securitization Trust Modifications will be offered to all of the Securitization Trusts except the Master Trust, NCSLT 2003-1 and NCSLT 2004-1 (the "Three Trusts").

4.   As described more fully below, the Plan Proponents propose to comply with the applicable procedural requirements of 11 U.S.C. §1127(d) and Fed.R.Bankr.P. 3019(a) with procedures that have been developed in conjunction with U.S. Bank National Association as Indenture Trustee for the Securitization Trusts and First Marblehead Data Services, Inc. as administrator for the Securitization Trusts (collectively, the "Trust Parties") and that closely track those contained in the Solicitation Procedure Order for the February 2010 Plan.[2] In

---

[2] The Trust Parties have indicated that they do not object to the procedural aspects of or the relief sought in the Second Modification Motion and they support the prompt presentation of the Second Modification Motion,

LIBC/3861536.7

3

addition, to obviate any issues about the scope of compliance with 11 U.S.C. §1127(d) and Fed.R.Bankr.P. 3019(a), the Plan Proponents propose that those Creditors who were entitled to vote and did in fact timely vote to accept or reject the February 2010 Plan ("Eligible Voters") be provided the opportunity to change their respective acceptances or rejections.

5. Several creditors have emphatically expressed to the Plan Proponents their concerns about the potential harm arising from delay in the occurrence of the Effective Date. To accommodate those concerns, the Plan Proponents request that the Court consider the procedural aspects of this Motion on an expedited basis, and schedule a final hearing to consider confirmation of the August 2010 Plan prior to October 31, 2010.

6. Attached as Exhibit B is the August 2010 Plan. Attached as Exhibit C is a redlined draft of the August 2010 Plan reflecting changes from the February 2010 Plan.

## II. Summary of Relief Requested

7. The Ambac Compromise and the Securitization Trust Modifications are embodied in the August 2010 Plan. Accordingly, no separate relief specific to the Ambac Compromise and the Securitization Trust Modifications is required. The Plan Proponents request approval of procedures, more fully described in the Motion for Expedited Determination of the Second Joint Motion of The Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors to Modify Fourth Amended Joint Plan of Reorganization Pursuant to 11 U.S.C. § 1127 and Plan Section 14.4 and for Relief From July 12, 2010 Rulings (the "Expedited Motion") filed simultaneously herewith and in the proposed Order Authorizing Plan Proponents to proceed with

---

including the Securitization Trust Modifications, to the Trust Noteholders as defined in the Second Modification Motion.

Second Joint Motion to Modify Fourth Amended Joint Plan of Reorganization Pursuant to 11 U.S.C. § 1127 and Plan §14.4, Approving Disclosure, Establishing Procedure to Permit Eligible Creditors to Change Their Votes and Scheduling Confirmation Hearing, attached hereto as Exhibit D (the "Order"), to implement and effectuate the rights of creditors under §1127(d) to change their vote. In summary, the proposed procedures includes the following elements:

a. The Plan Proponents request in the Expedited Motion that the Court establish a deadline ("Objection Deadline") for filing objections to (i) the adequacy of the disclosure proposed to comply with 11 U.S.C §§1127(c) and 1125, i.e. the disclosure contained in this Second Modification Motion and in the Supplemental Disclosure, in conjunction with the Disclosure Statement for the February 2010 Plan and (ii) the procedures set forth in the Order; and schedule an expedited hearing on the Expedited Motion and on the Second Modification Motion at the earliest time available on this court's calendar following the expiration of the Objection Deadline.

b. At the hearing on the Expedited Motion, the Plan Proponents request that the Court enter the order attached hereto as Exhibit D, which includes, inter alia, provisions (i) governing the form and method of notice to Eligible Voters, (ii) establishing the procedure with which any such party wishing to submit a changed vote must comply for such any change of vote to be effective, (iii) approving the form of notice attached as Exhibit E, (iv) finding and determining that the Plan Proponents have satisfied 11 U.S.C §§1125 and 1127(c) upon delivery of the Supplemental Disclosure, attached as Exhibit F, to all parties entitled to such notice and (v) establishing a deadline pursuant to Fed. R. Bankr. P. 2002(a)(5) (approximately 30 days after service of the ballot) ("Vote Change Deadline") for parties eligible to change their votes to submit notices of such changes.

c. The Plan Proponents further request that the Court schedule a hearing as soon as practicable after the Vote Change Deadline (i) to review whether any creditors that previously voted to accept the February 2010 Plan have changed their votes, (ii) to determine that the August 2010 Plan will be the "plan" as contemplated by 11 U.S.C. §1127(f)(2), (iii) to hear issues necessary to confirmation of the August 2010 Plan and any objections to confirmation and (iv) that the Court enter the Confirmation Order confirming the August 2010 Plan pursuant to 11 U.S.C. §1129 and Fed. R. Bankr. P. 3020.

5

LIBC/3861536.7

### III.    Discussion

#### A.    The Ambac Compromise, the Securitization Trust Modifications and the Resolution of the Unencumbered Loan and Prepetition Recoveries Issues

8.    As described more fully in the First Modification Motion, a dispute arose regarding the proper interpretation and intentions of the Plan Proponents with respect to two discrete issues. First, as a consequence of the Plan's omission of the qualifying phrase "purchased from funds in the Pledged Account," in the definition of "Securitization Trust Collateral," a dispute arose regarding the February 2010 Plan's disposition of the Unencumbered Loans (the "Unencumbered Loans Dispute"). Second, a dispute arose over the disposition of approximately $6.2 million of Prepetition Recoveries on defaulted loans purchased from various Securitization Trusts ("Prepetition Recoveries Dispute").

9.    Only the Three Trusts claimed that the February 2010 Plan provided for distributions to them of any portion of the Unencumbered Loans. One of them, the Master Trust, claimed an entitlement to approximately 58% of the Unencumbered Loans (with approximately 31% allocable to NCSLT 2003-1 and approximately 11% allocable to NCSLT 2004-1)[3]. As noted, Ambac is the "Controlling Party" with respect to the Master Trust. On information and belief, Ambac is a significant beneficiary of any amounts recovered by NCSLT 2003-1 (another of the Three Trusts). The August 2010 Plan proposes to compromise and settle the Unencumbered Loans Dispute and the Prepetition Recoveries Dispute with the Three Trusts by (i) distributing, on the Effective Date, additional cash in a negotiated amount to the Master

---

[3]  These percentages are based on preliminary estimates of the face amount of Unencumbered Loans allocated among the Three Trusts and have been applied for purposes of the Ambac Compromise and the August 2010 Plan. The definitive list of Unencumbered Loans, which may be reconciled between TERI and FMDS prior to the Confirmation Hearing, may vary from the preliminary estimates and will govern for purposes of the transfer of Unencumbered Loans to the Plan Trust pursuant to the August 2010 Plan. The Ambac Compromise and the Securitization Trust Modifications will not change in the event that the definitive list of Unencumbered Loans varies from the preliminary estimates.

6

Trust and proportional amounts to NCSLT 2003-1 and NCSLT 2004-1 ($1,150,000 to the Master Trust, $615,325 to NCSLT 2003-1 and $233,764 to NCSLT 2004-1) and (ii) increasing the allowed unsecured claims of the Master Trust, NCSLT 2003-1 and NCSLT 2004-1 (the Master Trust by $2,344,647, NCSLT 2003-1 by $1,253,443 and NCSLT 2004-1 by $1,042,872 ), assuming with respect to both the increased cash and claims that the Master Trust, NCSLT 2003-1 and NCSLT 2004-1 are Accepting Securitization Trusts. The additional claim amounts proposed for the Three Trusts based on the Ambac Compromise include components attributable to the Unencumbered Loans Dispute and to the Prepetition Recoveries Dispute. Schedule B to the August 2010 Plan sets forth details of all cash payments and of all Allowed Claims in respect of the Master Trust, NCSLT 2003-1 and NCSLT 2004-1, inclusive of the the Cash and Allowed claim components of the Ambac Compromise.

10. In contrast to the limited number of Securitization Trusts directly affected by the Unencumbered Loans Dispute, all of the Securitization Trusts are affected by the Prepetition Recoveries Dispute. The Modified Plan proposed to resolve the Prepetition Recoveries Dispute by increasing the unsecured claims of all of the Securitization Trusts, other than the Three Trusts that will receive the treatment described above, by an amount equal to the amount of the disputed prepetition Recoveries each Trust claimed in the Prepetition Recoveries Dispute. The August 2010 Plan provides that the Securitization Trusts, other than the Three Trusts, will receive cash on the Effective Date in an amount equal to fifty (50%) per cent of the amount of the disputed prepetition Recoveries each Trust claimed in the Prepetition Recoveries Dispute. The Securitization Trust Modification will result in the payment to the Securitization Trusts other than the Three Trusts of the additional amounts set forth below, assuming that the Securitization Trusts are Accepting Securitization Trusts:

| | |
|---|---|
| NCSLT 2004-2 | $416,236 |
| NCSLT 2005-1 | $406,409 |
| NCSLT 2005-2 | $150,901 |
| NCSLT 2005-3 | $303,536 |
| NCSLT 2006-1 | $176,185 |
| NCSLT 2006-2 | $84,844 |
| NCSLT 2006-3 | $75,051 |
| NCSLT 2006-4 | $25,889 |
| NCSLT 2007-1 | $13,588 |
| NCSLT 2007-2 | $211 |

Schedule B to the August 2010 Plan sets forth details of all cash payments and of all Allowed Claims in respect of the of the Securitization Trusts, inclusive of the Securitization Trust Modifications.

11.     The Supplemental Disclosure, Exhibit F, contains a comparison of (i) the treatment of the Securitization Trusts under the February 2010 Plan as understood by the Plan Proponents as reflected in the exhibits to that Plan and its Disclosure Statement and the evidence presented at the confirmation hearing, (ii) the treatment of the Securitization Trusts under the February 2010 Plan as advocated by the Securitization Trusts and (iii) the treatment of the Securitization Trusts under the August 2010 Plan.

12.     TERI has updated the Best Interests of Creditors Analysis that appeared as Exhibit C to the Disclosure Statement for the February 2010 Plan. The Update Best Interests of Creditors Analysis is attached to Exhibit F, the Supplemental Disclosure, as Exhibit 1 and reveals that the effect on the non-Securitization Trust creditors of the Ambac Compromise and

LIBC/3861536.7

the Securitization Trust Modifications is an approximately $1.3 million reduction in estimated realization, resulting in an estimated dilution of recovery to Class 5 (General Unsecured) creditors of approximately 6%. The updated estimated recovery on unsecured claims of approximately 49% remains within the range set forth in the Disclosure Statement of between 40% and 60%.

      **B.  Since Arguably All Creditors Are Adversely Affected by the Modified Plan, All Creditors Who Previously Accepted or Rejected the Plan Should be Provided With the Opportunity to Change Their Prior Acceptance or Rejection Pursuant to 11 U.S.C. §1127(d) and Fed.R.Bankr.P. 3019(a)**

13.    Fed.R.Bankr.P. 3019(a) provides as follows:

> **Rule 3019. Modification of Accepted Plan in a Chapter 9 Municipality or a Chapter 11 Reorganization Case**
>
> **(a) Modification of plan before confirmation.**
>
> In a chapter 9 or chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

14.    Rule 3019 was derived in part from sections 223 and 364 of the former Bankruptcy Act and their related bankruptcy rules, Rule 10-306 and 11-39, which allowed deemed acceptances for changes which did not "materially and adversely affect the interest" of a previously assenting claimant. As of the filing of this Second Modification Motion, no creditors other than Ambac as Controlling Party of the Master Trust and Citizens have accepted in writing the August 2010 Plan. Thus, under Rule 3019(a), the court must hold a hearing to determine

9

whether and to what extent the August 2010 Plan adversely changes the treatment of the claim of any creditor.

15.    The leading case interpreting Rule 3019 is In re American Solar King, Corp., 90 B.R. 808 (Bankr. W.D. Tex. 1988). There, a creditor that was the sole member of its class challenged confirmation of a plan that, inter alia, traded stock for debt. The creditor complained that the plan treated its class as unimpaired, notwithstanding that the plan proposed to equitably subordinate the claims of that class and provided that under no circumstances could members of that class receive anything on account of its claim. In response to this objection, the plan proponent modified the plan prior to confirmation under § 1127 to eliminate the "take nothing" language, to provide for the prospect that the creditor would participate in the stock distribution made to creditors under the plan, and to change the characterization of the class from unimpaired to impaired.

16.    In a lengthy opinion, the Court ruled that Rule 3019 "allows a court to attribute prior acceptances to an amended plan where the modification does not adversely change a claimant's treatment." Id. at 825. The court reasoned that the goal of chapter 11 is consensual plans. "Every time a plan has to be re-solicited, the risk that consensus will be lost is increased dramatically." Id. at 826.

17.    Subsequent cases also do not permit or require that creditors not adversely affected by proposed plan modifications be provided an opportunity to change their votes. For example, in Vermont National Bank v. Boroff (In re Boroff), 189 B.R. 53 (D. Vt. 1995), the district court affirmed the bankruptcy court's order denying a creditor the opportunity to change its vote where the bankruptcy court found that the modifications did not adversely affect the creditor. The creditor, a secured lender, objected to a modification that inserted into the plan a

10

LIBC/3861536.7

condition subsequent that the lender's mortgage on certain property of the estate could be reinstated. Since the lender was oversecured, the court found no adverse effect upon the lender resulting from the modification. The district court affirmed, finding the bankruptcy court's ruling was not clearly erroneous. Id. at 57.

18. There is a split of authority regarding whether materiality, in addition to adversity, must be demonstrated before adversely affected creditors may have the opportunity to change their votes to accept or reject the Plan. Compare, e.g., In re American Solar King, supra, 90 B.R. at 826 ("if a modification does not 'materially' impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well") with In re Frontier Airlines, Inc., 93 B.R. 1014, 1022 ("the Court should not disenfranchise creditors from having an opportunity to vote on plan modifications based on the degree of the hurt.").

19. The Plan Proponents believe the modifications, proposed in the First Modification Motion which reduced recoveries on unsecured claims by only an estimated 2%, were not materially adverse to creditors. In the First Modification Motion, the Plan Proponents therefore argued that only the Three Trusts were entitled to the opportunity to change their prior acceptances of the Plan. The Indenture Trustee objected, claiming all of the Securitization Trusts should be provided with the opportunity to change their prior acceptances. First Marblehead went farther and claimed that all creditors were adversely affected by the Modified Plan. Since the July 12, 2010 hearing, other creditors have indicated that while they have no reason to believe any creditor would change its prior acceptance and actually vote to reject the August 2010 Plan, nevertheless, as a technical matter, they believe creditors should be provided with the opportunity to change their prior acceptances.

LIBC/3861536.7

20.     Accordingly, because the modifications proposed in the Second Modification Motion have a greater impact on estimated unsecured creditor recoveries, to accommodate the concerns of various creditors and to avoid a dispute over process, the Plan Proponents propose entry of the order attached Exhibit D that permits all Eligible Voters an opportunity, prior to the Vote Change Deadline, to change their prior acceptances or rejections. The existing acceptances or rejections, as applicable, with respect to the February 2010 Plan will be applicable to the August 2010 Plan under the Plan Proponents' proposed procedures, unless changed properly and timely prior to the Vote Change Deadline in accordance with the procedures set forth in attached Exhibit D.

### C.  Notice of the Modifications Pursuant to 11 U.S.C. §1127(d) and the Confirmation Hearing to Consider the August 2010 Plan

21.     The Plan Proponents desire a process that is as expeditious as possible so that the Effective Date can occur at the earliest possible opportunity. Various creditors have appealed to the Plan Proponents in unusually forceful terms to do whatever is possible to accelerate the implementation of the August 2010 Plan, since the Debtor's pre-confirmation operations continue to consume in part the funds otherwise available for distribution to creditors. The most time consuming element of the critical path in this process is the amount of notice pursuant to Fed.R.Bankr.P. 2002(a)(5) of the deadline for creditors to change their votes that the court determines is necessary and appropriate.

22.     The Plan Proponents request that the Court establish a Vote Change Deadline that is thirty days after service of ballots. This period is at least nine days more than the notice required under Fed.R.Bankr.P. 2002(a)(5). Thereafter, the Plan Proponents request that the Court hold a final hearing on this Motion as soon as possible after the Vote Change Deadline. The Plan Proponents respectfully request that the Court schedule the confirmation hearing on the

LIBC/3861536.7

August 2010 Plan for a date that is prior to October 31, 2010 and that the Court establish an objection deadline for confirmation of the August 2010 Plan for a specific date that is at least one week prior to the hearing date.

23.    The Plan Proponents request that the Court approve the mailing of notice of the proposed modifications to be addressed in accordance with the proposed procedures, or if that is not possible, then in accordance with Fed.R.Bankr.P. 2002(g)(1). The Plan Proponents also request that the Court determine that notice provided in accordance with the proposed procedures is good and sufficient notice of the proposed modifications, and that no further or different notice is required or necessary.

D.    **The Proposed Notice Provides Adequate Information Pursuant to 11 U.S.C. §§1125 and 1127(c)**

24.    Section 1127(c) requires that the Plan Proponents must comply with § 1125. However, section 1127 does not require an entirely new disclosure statement. In re American Solar King, 90 B.R. at 823 (citations omitted). All that is required is information that explains the nature and impact of the modifications. Universal Cooperatives, Inc. v. FCX, Inc. (In re FCX, Inc.), 853 F.2d 1149, 1156 (4th Cir. 1988), cert. denied, 489 U.S. 1118 (1989). The proposed notice attached as Exhibit E and the Supplemental Disclosures in Exhibit F explain the nature and impact of the modifications and serve to supplement the Disclosure Statement previously approved by the Court under §1125. Through the proposed notice procedures all entities entitled to change their votes will be sent the approved notice, and thus will receive thorough and complete disclosure of the nature and impact of the modifications. Accordingly, the Plan Proponents request that the Court determine that the Second Modification Motion, the Supplemental Disclosure (in conjunction with the Disclosure Statement for the February 2010

13

LIBC/3861536.7

Plan)[4] complies with 11 U.S.C. §§1127(c) and 1125 and the notice provided in accordance with the proposed notice procedures provides creditors with "adequate information" as required by §1125, and that no further disclosure or notice is required for the Plan Proponents to comply with §1125.[5]

25.    As noted above, the modifications do not cause a material adverse impact on any entities. Neither the creditors nor this estate need be burdened with the cost, expense and delay that would result if the Plan Proponents were required to prepare and circulate a full disclosure statement on 28 days notice. Nonetheless, the Plan Proponents propose below that there be disclosure of the matters described in this Motion, and an opportunity for all parties that are entitled to change their original vote to do so.

---

[4]    Available at the website maintained by Epiq Systems for the TERI case.
http://chapter11.epiqsystems.com/TER/project/default.aspx?DMWin=751ca3e4-d1ed-4a27-9e4a-a971a07d3af5

[5]    For example, in In re Temple Zion, 125 B.R. 910, 914 (Bankr. E.D. Pa. 1991), the Court held that further disclosure under § 1125 of a proposed modification of a confirmed plan under § 1127 was not necessary as the modification affected only the interests of a secured creditor who was actively involved in the case and already was aware of the proposed modification. See, In re American Solar King Corp., 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988) quoting H.R.Rep. No. 595, 95th Cong. 1st Sess. 411 (1977) (indicating that an amended disclosure statement is not required if the amendment is "sufficiently minor;" a 1% stock dilution was found not to be material). See also In re Frontier Airlines, Inc., 93 B.R. 1014, 1023 (Bankr D. Colo. 1988) (applying a test that reviewed whether the amendment "adversely affects the interests of a creditor who has previously accepted the plan, in more than a purely ministerial de minimis manner"). In Frontier Airlines, the court found that under the plan as solicited, creditors were to receive cash in the amount of their allowed claim. Under the plan as modified, the creditors were to receive cash and notes unless they affirmatively elected to take cash only. The Court noted that creditors who elect to take only cash would suffer a shrinkage in their proportionate interest in the pool of assets available to pay their claims. Thus the Court found the modifications were adverse to the interests of the creditors and mandated that the creditors should be given the opportunity to vote again). See also, In re Beal Bank, S.S.B., 201 B.R. 376 (E.D. Pa. 1996) (finding a post-confirmation modification to extend a payment deadline was immaterial and did not require additional disclosure); In re Young Broadcasting Inc., 2010 Bankr. LEXIS 1073 (Bankr. S.D.N.Y. Apr. 19, 2010) (finding resolicitation would be required due to a modification effecting corporate governance and thereby the interests of noteholders, but denying confirmation on other grounds); Vermont Nat'l Bank v. Boroff, 189 B.R. 53 (D. Vt. 1995) (citing Frontier Airlines and approving bankruptcy court's decision not to allow creditor an opportunity to reconsider its acceptance of a plan after a post-confirmation modification lengthening the time in which the debt would be paid off).

14

### E. The Court Should Grant Relief from the July 12, 2010 Rulings With Respect to the Confirmation of the February 2010 Plan

26. The Court stated at the July 12, 2010 hearing that it would entertain further modifications to the February 2010 Plan if the parties had further discussions: "…then maybe we can get back to the fourth plan with some modifications." Transcript at page 115. The Ambac Compromise, the Securitization Trust Modifications and the Court's comments at the July 12, 2010 hearing justify relief from the July 12, 2010 rulings, which were embodied only in the record of the hearing and not in a separate order.

27. Under 11 U.S.C. §§ 1127(a) the court must enter an order of confirmation. At the Hearing, this Court found that the February 2010 Plan complied with all of the requirements of § 1129(a), and in light of what was then two dissenting impaired classes (one voting to reject and the other failing to cast a vote), also satisfied the cramdown requirements of § 1129(b). The Court left open the prospect that upon obtaining settlement of the issues surrounding Ambac's objection to the Motion to Modify, it would consider altering its rulings at the July 12 hearing that vacated the confirmation findings and rulings. The Plan Proponents have settled with Ambac, have made the Securitization Trust Modifications and have reached agreement with the Indenture Trustee with respect to solicitation, notice and disclosure. The Plan Proponents desire confirmation of the August 2010 Plan, not "mutually assured destruction" and have made extensive, serious and good faith efforts to reach settlements necessary to avoid that cataclysm. The Plan Proponents request, therefore, that the Court vacate the findings and rulings made at the July 12 hearing, find that the August 2010 Plan satisfies the requirements of §1129 and thereafter confirm the August 2010 Plan as soon as reasonably practicable.

15

LIBC/3861536.7

WHEREFORE, the Plan Proponents request that the court

1. allow this Motion and alter its July 12, 2010 order;

2. enter the order attached as <u>Exhibit D</u>, which includes, <u>inter alia</u>, provisions (i) governing the form and method of notice to entities entitled to change their votes, (ii) establishing the procedure with which any such party wishing to submit a changed vote must comply for such change of vote, if any, to be effective, (iii) approving the form of notice attached as <u>Exhibit E</u>, (iv) finding and determining that the Plan Proponents have satisfied 11 U.S.C §§1125 and 1127(c) upon delivery of Exhibit F to all parties entitled to such notice and (v) establishing a deadline pursuant to Fed. R. Bankr. P. 2002(a)(5) no sooner than thirty days after service of ballots ("<u>Vote Change Deadline</u>") for parties eligible to change their votes to submit notices of such changes;

3. schedule a hearing as soon as practicable after the Vote Change Deadline to review whether any creditors that previously voted to accept the Plan have changed their votes;

4. enter an appropriate order confirming the August 2010 Plan pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020; and

LIBC/3861536.7

5. award the Plan Proponents such other and further relief to which the Court may determine they are entitled.

Dated: August 26, 2010

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| THE EDUCATION RESOURCE INSTITUTE, INC. | THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE EDUCATION RESOURCES INSTITUTE, INC. |
| By its attorneys, | By its attorneys, |
| /s/ Daniel M. Glosband | /s/ Jeffrey D. Sternklar |
| Daniel M. Glosband<br>dglosband@goodwinprocter.com<br>Gina Lynn Martin<br>gmartin@goodwinprocter.com<br>Goodwin Procter LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br>(617) 570-1000 | Jeffrey D. Sternklar (BBO # 549561)<br>jdsternklar@duanemorris.com<br>Duane Morris LLP<br>470 Atlantic Avenue<br>Boston, MA 02210<br>(857) 488-4200 (telephone)<br>(857) 401-3034 (facsimile) |