UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| THE EDUCATION RESOURCES INSTITUTE, INC., | ) | Case No. 08-12540 (HJB) |
| | ) | |
| Debtor. | ) | |

## JOINT MOTION FOR ORDER AUTHORIZING AND APPROVING STIPULATION RESOLVING CLAIMS OF FIRST MARBLEHEAD EDUCATION RESOURCES INC., THE FIRST MARBLEHEAD CORPORATION AND FIRST MARLBEHEAD DATA SERVICES, INC.

The Education Resources Institute, Inc., the debtor and debtor in possession in the above-captioned case ("TERI" or the "Debtor") and the Official Committee of Unsecured Creditors (the "Creditors' Committee"), respectfully submit this joint motion (the "Motion") seeking an order authorizing and approving the annexed STIPULATION RESOLVING CLAIMS OF FIRST MARBLEHEAD EDUCATION RESOURCES, INC., THE FIRST MARBLEHEAD CORPORATION AND FIRST MARBLEHEAD DATA SERVICES, INC. ("Stipulation").[1]

### JURISDICTION AND VENUE

1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for this Motion are Rule 9019 of the Federal Rules of Bankruptcy Procedure and Rule 9019-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts.

---

[1] The description of the Stipulation contained in this Motion is only a summary and is qualified in its entirety by the actual terms of the Stipulation. In the event of any inconsistency between this Motion and the Stipulation, the terms of the Stipulation shall govern. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Stipulation.

## BACKGROUND

2.      On April 7, 2008 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

3.      The Official Committee of Unsecured Creditors in this Chapter 11 Case (the "Creditors' Committee") was appointed on April 30, 2008.  No trustee or examiner has been appointed in this Chapter 11 Case.

4.      The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Founded in 1985, TERI is a nonprofit organization incorporated under Massachusetts General Laws, chapter 180, located in Boston, Massachusetts.  TERI provides education opportunities for all through its college access and loan guarantee activities.  TERI is a national leader in promoting strategies for improving college access.  The Debtor manages college access programs that target low-income individuals and those who are the first generation in their families to attend college.  These programs are designed to raise student and adult aspirations to include college and other post-secondary education, and to provide guidance and information directly to students and their families on planning and paying for college.

## THE FMC CONTRACTS

6.      In 2001, TERI entered into several agreements with The First Marblehead Corporation ("FMC") and certain of its affiliates, pursuant to which, among other things, TERI would transfer substantially all of its loan-related assets and administrative operations to FMC and outsource its origination, staff support and other administrative functions to FMC.  The contracts included:

- The Master Loan Guaranty Agreement between TERI and FMC dated as of February 2, 2001 (the "MLGA"), as amended, which established, among other things, the terms pursuant to which TERI would guaranty student loans.

- The Master Servicing Agreement between TERI and Firms Marblehead Education Resources ("FMER"), a subsidiary of FMC, dated as of July 1, 2001 (the "MSA"), as supplemented, which covered, among other things, certain day-to-day operations. Under the MSA, TERI reimbursed FMER's costs pursuant to a negotiated annual budget. Before the beginning of each new fiscal year, FMER presented TERI with estimates of FMER's costs and loan volume. After a short process of negotiation, the parties would agree on the final cost budget.

- The Database Sale and Supplementation Agreement between TERI and FMER, dated as of June 20, 2001 (the "Database Agreement"), which covered, among other things, the rights of the parties to the database of loans generated, recorded or otherwise received by TERI in connection with its business as a loan guarantor.

- The Marketing Services Agreement between TERI and FMER, dated as of July 1, 2001 (the "Marketing Agreement"), which covered marketing-related services for TERI-guaranteed loans, including marketing strategies, plans and materials. The MLGA, MSA, Database Agreement and Marketing Agreement are referred to herein as the FMC Contracts.[2]

7.     On June 23, 2008, pursuant to the Order Granting Motion (A) Pursuant to Section 365 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 6006 and 9014 Authorizing the Debtor to Reject Certain Contracts With First Marblehead Corporation and (B) Pursuant to Section 363 of the Bankruptcy Code Authorizing the Debtor to Enter into A Transition Services

---

[2] The description of the FMC Contracts contained herein is qualified in its entirety by the actual provisions of the FMC Contracts.

3

Agreement (the "Rejection Order"), the FMC Contracts were rejected effective as of May 31, 2008 and the Debtor was authorized to enter into the TSA.

## THE FMC CLAIMS

9.      On October 16, 2008, FMC and FMER filed separate proofs of claim.

10.     Also on October 16, 2008, First Marblehead Data Services, Inc. ("FMDS"),[3] in its capacity as Administrator of 18 of The National Collegiate Student Loan Trusts, filed a proof of claim for itself, as Administrator.[4]

11.     The FMC Claim, in the amount of $18,851,589.98, primarily seeks: (i) damages under the Sublease; and (ii) damages under the MLGA for: (a) two types of lost profits; (b) lost or reduced values of FMC's interests in securitization trusts; and (c) third-party marketing fees.

12.     The FMER Claim, in the amount of $68,162,717, primarily seeks: (i) reimbursement for past services; and (ii) damages purportedly arising from TERI's rejection of the FMC Contracts.  FMER also filed set-off claims for balances that FMER owes the Debtor under the Asset Purchase and Sale Agreement as well as the Database Agreement, although FMER disputes whether such balances are payable.

13.     The FMDS Claim, unliquidated in amount, primarily seeks indemnification and reimbursement for certain legal and other fees it has incurred as the Administrator of Securitization Trusts that hold TERI-guaranteed loans.

14.     The FMC Claims aggregate approximately $87 million in liquidated amounts and also include an unliquidated (and mostly contingent) claim for indemnity and reimbursement.

---

[3] FMC, FMER and FMDS are collectively referred to herein as the "FMC Entities".  The FMER Claim, the FMC Claim and the FMDS Claim are collectively referred to herein as the "FMC Claims."

[4] References herein to the FMDS Claim do not include any proofs of claim filed by FMDS, as an administrator, on behalf of a Securitization Trust.

15.    After reviewing and analyzing the FMC Claims, the Debtor believes that the FMC

Entities could conceivably demonstrate that they had a claim for approximately (1) $776,000 in

lease rejection claims, and (2) $13,000,000 for reimbursement of past services.  The Debtor does

not believe FMDS has a valid claim for indemnification and/or reimbursement, which of course

FMDS disputes.

## THE STIPULATION

16.    The Debtor, Creditors' Committee and the FMC Entities have been discussing a

possible settlement of the FMC Claims for over one year.  The negotiations were lengthy and

fulsome and, at times, highly contentious.  However, other than one discrete issue that is carved-

out of the Stipulation (the Database Dispute)[5], the Debtor, the FMC Entities and the Creditors'

Committee have resolved all Claims and controversies and seek approval of the Stipulation.

17.    The Stipulation provides, among other things, that:

- FMER shall have an allowed, unsecured, non-priority claim in the amount

of $27,177,645.00;

- FMC shall have an allowed, unsecured, non-priority claim in the amount

of $921,084; and

- FMDS's Claim shall be disallowed and expunged.

---

[5] As described in the Stipulation, FMER and FMC allege (a) that, notwithstanding the rejection of the Database Agreement pursuant to the Rejection Order, they retain certain intellectual property and other rights and TERI has been and remains subject to certain obligations and restrictions relating to the Loan Database (as defined in the Database Agreement) and the Delivered Database (as defined in the Database Agreement) and, without limiting the foregoing, that all restrictions set forth in Section 2.03 of the Database Agreement continue to apply to use of the Loan Database and Delivered Database by TERI and its successors and assigns, (b) that the restrictions set forth in Section 2.1 of the TSA have applied since May 30, 2008 and will apply permanently to the Loan Database transferred from FMER to TERI pursuant to Section 2.1 of the TSA and (c) that, notwithstanding the rejection of the Database Agreement pursuant to the Rejection Order, certain terms and provisions of the Database Agreement are integrated with, and deemed a part of, the TSA.  TERI disputes these allegations (the "Database Dispute") and TERI, the Debtor Releasors (as defined in the Stipulation), FMC or FMER may assert Claims, counterclaims, defenses, rights or obligations under the TSA or the Rejection Order with respect to the Database Dispute.

18.    The Stipulation also provides that none of FMC, FMER or FMDS (solely in its individual capacity) shall cooperate with or provide any assistance to any entity opposing confirmation of the August 2010 Plan (including, without limitation, by way of providing expert testimony or providing advice or information to any such entity); *provided, however*, that, notwithstanding anything in the Stipulation to the contrary, (i) nothing shall prevent FMDS from fulfilling its obligations to any Securitization Trust (as that term is defined in the August 2010 Plan) and (ii) nothing shall prevent FMC or FMER from cooperating with or providing assistance to FMDS in connection with FMC fulfilling its obligations to any Securitization Trust or any stakeholders or trustees thereof.

## THE STIPULATION IS IN THE BEST INTEREST OF THE ESTATE

19.    The FMC Entities filed Claims for over $87,000,000 (plus unliquidated damages) and are agreeing to settle all of their Claims for $28,098,729, a reduction of nearly $59,000,000. In the Debtor's view, absent a settlement, the FMC Entities could conceivably demonstrate Claims totaling nearly $14,000,000. Thus, in the Debtor's view, there was a gap of approximately $73,000,000.

20.    As part of its Claim, FMER asserted reliance/rejection damages in excess of $52 million for "investments in people, property, leases, information technology and other equipment" in connection with FMER's provision of services under the FMC Contracts. While the Debtor believes such reliance/rejection damages are inflated, it nonetheless recognized that there is a risk that the Bankruptcy Court would find that some or all of such damages were part of a budgeted expense that was approved by TERI prior to the Petition Date and, thus, an allowable Claim against the Debtor's estate. Therefore, in the Debtor's opinion, settling this

LIBC/3903384.2

Claim at approximately $14 million, rather than the $52,000,000 asserted by FMER, is a beneficial compromise.

21.    The settlement of the FMC Claims resolves the largest Claim filed by a "trade" Creditor of the Debtor. There can be no question that the settlement is in the best interest of the estate and well within the range of reasonableness as defined by applicable case law. Moreover, in the event that the August 2010 Plan is confirmed in the near term, the settlement of such a large, disputed Claim removes what may have been an impediment to a timely distribution to the Debtor's general unsecured creditors.

22.    The Debtor believes that approval of the Stipulation is in the best interest of the Debtor and its estate. The Creditors' Committee has been integral in the settlement of the FMC Claims and also believes that the Stipulation is in the best interest of the Debtor's Creditors.

23.    Bankruptcy Rule 9019(a) expressly permits a debtor in possession to compromise and settle claims, subject to approval by the bankruptcy court. See Fed. R. Bankr. P. 9019(a). The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the "best interests of the estate." *In re 110 Beaver St. Partnership*, 244 B.R. 185, 187 (Bankr. D. Mass.) ("The burden is on the trustee to demonstrate that the compromise is in the best interest of the estate and should therefore be approved." (citations omitted)); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *In re Energy Coop. Inc.*, 886 F.2d 921, 927 (7th Cir. 1989). To determine that a settlement is in the best interests of the estate, the Supreme Court held that the settlement must be "fair and equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968); *In re Boston & Providence R.R.*, 673 F.2d 11, 12 (1st Cir. 1982); *In re Purofied Down Prod. Corp.*, 150 B.R. at 523.

LIBC/3903384.2

24.     The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall within the range of reasonableness. *See In re 110 Beaver St. Partnership*, 244 B.R. at 188 ("[T]he Court has an independent obligation to satisfy itself that the proposed compromise falls above 'the lowest possible point in the range of reasonableness.'" (citation omitted); *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir. 1983). *In re Int'l Distribution Centers, Inc.*, 103 B.R. 420, 423 (S.D.N.Y. 1989) ("Indeed, a court may approve a settlement even if it believes that the Trustee ultimately would be successful.").

25.     Ultimately, the determination whether the proposed settlement is in the best interest of creditors and the estate or is fair and equitable lies within the discretion of the court. *See Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995) ("The approval of a compromise is within the sound discretion of the bankruptcy judge..." (citation omitted)); *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *In re Purofied Down Prods. Corp.*, 150 B.R. at 522 ("A Bankruptcy Court's decision to approve a settlement should not be overturned unless its decision is manifestly erroneous and a 'clear abuse of discretion.'") (citation omitted). Moreover, the bankruptcy court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. at 46.

## NOTICE

26.     The Debtor has served notice of this Motion on (a) the Office of the Attorney General for the State of Massachusetts, (b) the Office of the United States Trustee for the District of Massachusetts, (c) counsel to the Creditors' Committee, (d) counsel to the FMC Entities and (e) all parties that have requested notice of pleadings in this case. The Debtor believes that, pursuant to FRBP 2002(i), no further notice of this Motion is required.

WHEREFORE, the Debtor respectfully requests that this Court enter an order,

substantially in the form annexed hereto as <u>Exhibit B</u>, granting the Motion and such other relief

as may be just and proper.

Respectfully submitted,

THE EDUCATION RESOURCES INSTITUTE, INC.

By its attorneys,

s/ Gina Lynn Martin
Daniel M. Glosband (BBO No. 195620)
Gina Lynn Martin (BBO No. 643801)
Goodwin Procter LLP
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
E-mail:dglosband@goodwinprocter.com
gmartin@goodwinprocter.com

*Attorneys for the Debtor and
Debtor in Possession*

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

s/ Jeffrey D. Sternklar
Jeffrey D. Sternklar (BBO# 549561)
Duane Morris LLP
470 Atlantic Avenue
Boston, Massachusetts  02110
(857) 488-4216

Date:  October 8, 2010

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| | ) | **Chapter 11** |
| **THE EDUCATION RESOURCES INSTITUTE, INC.,** | ) | **Case No. 08-12540 (HJB)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

## STIPULATION RESOLVING CLAIMS OF FIRST MARBLEHEAD EDUCATION RESOURCES, INC., THE FIRST MARBLEHEAD CORPORATION, AND FIRST MARBLEHEAD DATA SERVICES, INC.

WHEREAS, First Marblehead Education Resources, Inc. ("FMER") timely filed proof of claim numbered 107 (the "FMER Claim"), alleging secured and unsecured claims against the Debtor[1] in the amount of $68,162,717 plus certain unliquidated claims;

WHEREAS, The First Marblehead Corporation ("FMC") timely filed proof of claim numbered 106 (the "FMC Claim"), alleging claims against the Debtor in the amount of $18,851,589.98 plus certain unliquidated claims;

WHEREAS, First Marblehead Data Services, Inc. ("FMDS") timely filed proof of claim numbered 154 (as amended by proof of claim numbered 197, the "FMDS Claim"; together with the FMER Claim and the FMC Claim, the "First Marblehead Claims"), alleging unliquidated claims against the Debtor;

WHEREAS, the Debtor and the Creditors' Committee dispute the validity and/or priority of certain of the First Marblehead Claims;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Modified Fourth Amended Joint Plan of Reorganization of The Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors, dated August 26, 2010 [Docket No. 1139] (the "August 2010 Plan").

{F0031572.2 }

WHEREAS, on June 23, 2008, the U.S. Bankruptcy Court entered the *Order Granting Motion (A) Pursuant to Section 365 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 6006 and 9014 Authorizing Debtor to Reject Certain Contracts with The First Marblehead Corporation and (B) Pursuant to Section 363 of the Bankruptcy Code Authorizing the Debtor to Enter into a Transition Services Agreement* (the "Rejection Order"), pursuant to which (i) the Debtor rejected certain contracts with FMC and FMER, including but not limited to the Database Sale and Supplementation Agreement dated as of June 20, 2001 by and among the Debtor, FMER and FMC (the "Database Agreement") and (ii) the Debtor was authorized to enter into the Transition Services Agreement dated as of May 30, 2008 among the Debtor, FMC, and FMER (as amended and together with any terms of the Database Agreement referenced therein as they relate to the Database Dispute (defined below), the "TSA"); and

WHEREAS, FMER and FMC allege (a) that, notwithstanding the rejection of the Database Agreement pursuant to the Rejection Order, they retain certain intellectual property and other rights and TERI has been and remains subject to certain obligations and restrictions relating to the Loan Database (as defined in the Database Agreement) and the Delivered Database (as defined in the Database Agreement) and, without limiting the foregoing, that all restrictions set forth in Section 2.03 of the Database Agreement continue to apply to the use of the Loan Database and the Delivered Database by TERI and its successors and assigns, (b) that the restrictions set forth in Section 2.1 of the TSA have applied since May 30, 2008 and will apply permanently to the Loan Database transferred from FMER to TERI pursuant to Section 2.1 of the TSA and (c) that, notwithstanding the rejection of the Database Agreement pursuant to the Rejection Order, certain terms and provisions of the Database Agreement are integrated with, and deemed part of, the TSA; and

WHEREAS, TERI disputes such allegations (the "Database Dispute") and TERI, the

Debtor Releasors, FMC or FMER may assert Claims, counterclaims, defenses, rights or

obligations under the TSA or the Rejection Order with respect to the Database Dispute;

WHEREAS, the TSA is a postpetition contract that will not be rejected or otherwise

altered or affected by the August 2010 Plan; and

WHEREAS, the Debtor and the Creditors' Committee are Plan Proponents of the August

2010 Plan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of

which are hereby acknowledged, and in an effort to resolve certain disputes among the Debtor,

the Creditors' Committee, FMER, FMC, and FMDS regarding the First Marblehead Claims and

certain other matters without the need for further litigation, each of the Debtor, the Creditors'

Committee, FMER, FMC, and FMDS (collectively, the "Parties") hereby agrees, subject to

approval by the U.S. Bankruptcy Court for the District of Massachusetts (the "Bankruptcy

Court"), as follows:

1.      The FMER Claim shall be allowed as an unsecured, non-priority claim in the

amount of $27,177,645.00.

2.      The FMC Claim shall be allowed as an unsecured, non-priority claim in the

amount of $921,084.00.

3.      The FMDS Claim shall be disallowed and expunged.

4.      Excluding the obligations of FMC, FMER, and FMDS under this Stipulation, and

subject to the last sentence of this Section 4 and the terms of Section 7 of this Stipulation, the

Debtor, for itself and on behalf of the Estate and the Debtor Releasors, hereby knowingly, fully,

irrevocably and unconditionally waive, remise, release and forever discharge each of FMC,

FMER, and FMDS and the respective directors, officers, agents, servants, attorneys, employees, affiliates, subsidiaries, parent corporations, shareholders, investors, principals, advisors, successors, assigns and representatives of the foregoing (collectively, "the Debtor Released Parties"), of and from any and all debts, claims, charges, complaints, demands, actions, causes of action, suits, rights, sums of money, costs, expenses, accounts, promises, doings, acts, omissions, covenants, obligations, contracts, agreements, damages, and liabilities whatsoever, known and unknown, asserted or unasserted, actual or potential, of every name and nature, in law and equity (collectively, "Claims"), which may be asserted by or on behalf of any of the Debtor, the Estate or any of the Debtor Releasors, including without limitation, any causes of action under Chapter 5 of the United States Bankruptcy Code and any and all common law or equitable Claims, whether foreseen or unforeseen, existing or hereafter arising, or which the Debtor, the Estate or any of the Debtor Releasors ever had, now has, or shall have against the Debtor Released Parties arising out of or relating to any event occurring or circumstance existing from the beginning of the world through the date of the approval of this Stipulation by the Bankruptcy Court. Notwithstanding anything stated in this Section 4 to the contrary, but subject to the first sentence of Section 7 hereof, the Parties agree that the foregoing waiver, remise, release and discharge of the Debtor Released Parties shall not apply to any Claims, counterclaims, defenses, rights or obligations of TERI, the Estate or the Debtor Releasors under the TSA, or relating to the Database Dispute, including but not limited to (i) all claims and defenses that the restrictions set forth in Section 2.03 of the Database Agreement do not continue to apply to the Loan Database and the Delivered Database, and (ii) all claims and defenses that the restrictions set forth in Section 2.1 of the TSA do not apply permanently to the Loan Database transferred from FMER to TERI pursuant to Section 2.1 of the TSA.

5.      Excluding the obligations of the Debtor, the Estate and the Debtor Releasors

under this Stipulation and the claims of FMC and FMER allowed in numbered paragraphs 1 and

2 of this Stipulation, and subject to the last sentence of this Section 5 and the terms of Section 7

of this Stipulation, each of FMC, FMER and FMDS does hereby knowingly, fully, irrevocably

and unconditionally waive, remise, release and forever discharge the Debtor, the Estate and the

Debtor Releasors and the directors, officers, agents, servants, attorneys, employees, affiliates,

subsidiaries, parents, shareholders, investors, principals, advisors, successors, assigns and

representatives of the foregoing (the "FM Released Parties"), of and from any and all Claims that

may be asserted by or on behalf of any of FMC, FMER or FMDS, whether foreseen or

unforeseen, existing or hereafter arising, or which FMC, FMER, or FMDS ever had, now has, or

shall have against the FM Released Parties arising out of or relating to any event occurring or

circumstance existing from the beginning of the world through the date of the approval of this

Stipulation by the Bankruptcy Court.  Notwithstanding anything stated in this Section 5 to the

contrary, the Parties agree that the foregoing waiver, remise, release and discharge of the FM

Released Parties shall not apply to any Claims, counterclaims, defenses, rights or obligations of

FMC or FMER against the Debtor, the Estate or any of the Debtor Releasors, or their successor

or assigns, under the TSA or relating to the Database Dispute, including but not limited to (i) all

claims and defenses that the restrictions set forth in Section 2.03 of the Database Agreement

continue to apply to the Loan Database and the Delivered Database, and (ii) all claims and

defenses that the restrictions set forth in Section 2.1 of the TSA apply permanently to the Loan

Database transferred from FMER to TERI pursuant to Section 2.1 of the TSA.

6.      Each of the claims of FMC and FMER allowed by this Stipulation shall be

deemed to be voted to accept the August 2010 Plan.  None of FMC, FMER or FMDS (solely in

its individual capacity) shall cooperate with or provide any assistance to any entity opposing

confirmation of the August 2010 Plan (including, without limitation, by way of providing expert

testimony or providing advice or information to any such entity); *provided, however*, that

notwithstanding anything herein to the contrary (i) nothing shall prevent FMDS from fulfilling

its obligations to any Securitization Trust and (ii) nothing shall prevent FMC or FMER from

cooperating with or providing assistance to FMDS in connection with FMDS fulfilling its

obligations to any Securitization Trust or any stakeholders or trustees thereof.

7.    The Debtor, for itself and on behalf of the Estate and the Debtor Releasors, on the

one hand, and FMC and FMER, on the other hand, acknowledge and agree that each of the

Debtor, FMC and FMER has performed in full all of its respective duties and discharged in full

all of its respective obligations under the TSA arising prior to the date hereof, except for any

duties and obligations of the Debtor with respect to the Delivered Database and the Loan

Database as may be implicated in the Database Dispute.  Except as set forth in the foregoing

sentence, and notwithstanding anything stated in this Stipulation to the contrary, the Parties agree

that nothing in this Stipulation, including the foregoing waivers, remises, releases and discharges

set forth above, shall waive, remise, release, discharge, alter, affect, impair or enlarge any

Claims, counterclaims, rights, obligations, defenses, arguments or positions of the parties under

the TSA or with respect to the Database Dispute.  Each of FMC and FMER hereby waives the

restrictions set forth in Section 2.03 of the Database Agreement, to the extent applicable (if at

all), solely to the limited extent necessary to permit Reorganized TERI to use the Loan Database

and/or its retained copy of the Delivered Database to perform its collection and claims

management obligations for the Plan Trustee under the Collection Contract in the form filed with

the Plan Supplement [Docket No. 1075] or as such Collection Contract may be amended from

time to time in a manner not inconsistent with the terms of this Stipulation. Except as set forth in

this Section 7, nothing in this Stipulation is intended to or shall be deemed to (and nothing in any

plan of reorganization or liquidation, including the August 2010 Plan, or in an order confirming

any such plan shall) affect any right or obligation of the Debtor, the Estate, the Debtor Releasors,

FMC or FMER under the Rejection Order or the TSA or any right, title or interest of TERI, FMC

or FMER in, to or with respect to any of its respective data or intellectual property. Without

limiting the foregoing, and except as set forth in this Section 7, nothing in this Stipulation or in

any plan of reorganization or liquidation (including the August 2010 Plan) or in an order

confirming any such plan shall alter, modify, amend or otherwise affect the TSA, the Rejection

Order, or the Database Dispute. The order approving this Stipulation shall be deemed to provide

that, in the event of any inconsistency between the provisions of the Rejection Order or the TSA

(as such provisions may be interpreted in connection with any consensual or judicial resolution

of the Database Dispute), on the one hand, and any plan of reorganization or liquidation

(including the August 2010 Plan) or any order approving such plan, on the other hand, the

provisions of the TSA or the Rejection Order, as applicable, shall govern. Debtor agrees to use

its reasonable best efforts to include similar language reflecting that the provisions of the TSA or

the Rejection Order govern in any order approving the August 2010 Plan or any other plan of

reorganization or liquidation for which it is a proponent.

       8.     Notwithstanding anything herein to the contrary, nothing herein shall be deemed

to release, waive or otherwise settle any claims or rights asserted by or that could be asserted by,

or any objection that could be raised by, FMDS solely in its capacity as administrator for or on

behalf of any indenture trustee, securitization trust, owner trustee or other entity for which

FMDS serves as administrator under the Administration Agreements (as defined in the FMDS

Claim), but, subject to the terms of this Stipulation, FMC, FMER and FMDS, and their

respective affiliates, shall otherwise support confirmation of the August 2010 Plan pursuant to

section 1129 of the Bankruptcy Code.

9.    This Stipulation shall be binding upon and inure to the benefit of each of the

Parties and their respective executors, administrators, other legal representatives, successors, and

assigns, including but not limited to the Creditors' Committee, the Debtor Releasors, the Plan

Trustee and any other trustee or plan administrator appointed in Debtor's bankruptcy proceeding,

whether under Chapter 11 or Chapter 7 of the United States Bankruptcy Code.

10.    Except as expressly stated in this Stipulation, this Stipulation shall constitute the

entire agreement among the Parties relating to the specific subject matter herein, shall supersede

any and all prior agreements, negotiations, representations and understandings, whether written

or oral, between the Parties and may not be released, supplemented or modified in any manner

except by further written agreement signed by a duly authorized officer or representative of each

of the Parties and to the extent such Party is the Debtor, such release, supplementation or

modification has been approved by the Bankruptcy Court.  No breach of any provision hereof

shall be waived unless consented to by all Parties in writing.

11.    This Stipulation may be executed in multiple counterparts, any of which may be

transmitted by facsimile, and each of which shall be deemed an original, but all of which

together shall constitute one and the same instrument.

12.    The signatories hereto represent and warrant to each other that (a) the signatories

to this Stipulation are authorized to execute this Stipulation; (b) each has full power and

authority to enter into this Stipulation; (c) the execution and delivery of this Stipulation has been

approved by all necessary corporate action of each party and, other than the approval of the

Bankruptcy Court, no further approval or authorization is necessary for this Stipulation to become effective; and (d) this Stipulation is duly executed and delivered, and constitutes a valid and binding agreement in accordance with its terms.

13.    The Bankruptcy Court shall retain jurisdiction to hear and determine any controversies regarding this Stipulation, but nothing herein shall operate (a) as consent by any party to such jurisdiction, or (b) operate to enlarge, restrict or limit the Bankruptcy Court's jurisdiction to hear and determine any matter relating to the Database Dispute.

14. This Stipulation is governed by and shall be construed in accordance with the laws of the Commonwealth of Massachusetts (without regard to its conflicts of laws provisions).

15.    This Stipulation is subject to approval by the Bankruptcy Court in which the above-captioned bankruptcy case is pending.  The Debtor shall seek expedited consideration of this Stipulation.  In the event the hearing to consider the motion to consider approval of this Stipulation (the "Stipulation Hearing Date") does not occur on or before October 13, 2010, the deadline for FMC, FMER and/or FMDS to object to confirmation of the August 2010 shall be extended and shall expire at 4:30 p.m. on the earlier to occur of (1) October 15, 2010 and (2) the Stipulation Hearing Date; provided that in no event shall the objection deadline occur before October 13, 2010 or such other date to which the objection deadline is extended generally for creditors of the Debtor.

16.    Nothing in this Stipulation is intended to or shall operate to impair or limit the rights or defenses, if any, of any party under, or to alter the terms of, the September 16, 2008 Order Authorizing Modification Of Delinquency And Default Requirements Without Prejudice To Lenders' Claims, and all parties reserve all such rights and defenses, if any.

IN WITNESS WHEREOF, the Parties hereto, hereby execute this Stipulation under seal as of October 7, 2010.

THE EDUCATION RESOURCES
INSTITUTE, INC.

By: _Amy W Bizar_
Name: Amy W. Bizar
Title: SVP & General Counsel

THE FIRST MARBLEHEAD
CORPORATION

By: _____
Name:
Title:

FIRST MARBLEHEAD EDUCATION
RESOURCES, INC.

By: _____
Name:
Title:

FIRST MARBLEHEAD DATA SERVICES,
INC.

By: _____
Name:
Title:

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE EDUCATION
RESOURCES, INC.

By: _____
Name:
Title:

{F0031572.2 }

10

IN WITNESS WHEREOF, the Parties hereto, hereby execute this Stipulation under seal

as of October 7, 2010.


THE EDUCATION RESOURCES
INSTITUTE, INC.


By:_____
Name:
Title:


FIRST MARBLEHEAD EDUCATION
RESOURCES, INC.


By: _____
     Kenneth Klipper
     Treasurer

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE EDUCATION
RESOURCES, INC.


By:_____
Name:
Title:


THE FIRST MARBLEHEAD
CORPORATION


By: _____
     Kenneth Klipper
     Chief Financial Officer


FIRST MARBLEHEAD DATA SERVICES,
INC.


By: _____
     Kenneth Klipper
     Secretary

IN WITNESS WHEREOF, the Parties hereto, hereby execute this Stipulation under seal as of October 7, 2010.

THE EDUCATION RESOURCES
INSTITUTE, INC.

THE FIRST MARBLEHEAD
CORPORATION

By:_____
Name:
Title:

By:_____
Name:
Title:

FIRST MARBLEHEAD EDUCATION
RESOURCES, INC.

FIRST MARBLEHEAD DATA SERVICES,
INC.

By:_____
Name:
Title:

By:_____
Name:
Title:

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE EDUCATION
RESOURCES, INC.

By: _Jeffrey D. Sternklar (Jhs)_
Name: Jeffrey D. Sternklar
Title: Partner, Duane Morris LLP,
Counsel to the Official
Committee of Unsecured
Creditors of The Education
Resources Institute, Inc.

**EXHIBIT B**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| | ) | **Chapter 11** |
| THE EDUCATION RESOURCES INSTITUTE, INC., | ) | **Case No. 08-12540 (HJB)** |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER AUTHORIZING DEBTOR, CREDITORS' COMMITTEE, FIRST
MARBLEHEAD EDUCATION RESOURCES, INC., THE FIRST MARBLEHEAD
CORPORATION AND FIRST MARBLEHEAD DATA SERVICES, INC., TO ENTER
INTO STIPULATION RESOLVING CLAIMS OF FIRST MARBLEHEAD
EDUCATION RESOURCES, INC., THE FIRST MARBLEHEAD CORPORATION,
AND FIRST MARBLEHEAD DATA SERVICES, INC.**

Upon the joint motion (the "Motion")[1] of The Education Resources Institute, Inc., the

debtor and debtor in possession in the above-captioned case (the "Debtor") and the Official

Committee of Unsecured Creditors (the "Creditors' Committee") for an order authorizing the

Debtor and Creditors' Committee to enter into and perform the Stipulation Resolving Claims of

First Marblehead Education Resources, Inc. ("FMER"), The First Marblehead Corporation

("First Marblehead"), and First Marblehead Data Services, Inc. ("FMDS") (the "Stipulation")

with FMER, First Marblehead, and FMDS and a hearing having been held and due cause

appearing therefor, the Court finds that for the reasons set forth more specifically in the Motion

and at the hearing on the Motion, cause has been shown for granting the requested relief; and it is

accordingly

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion or the
Stipulation.

FOUND, that notice of the Motion, the Stipulation, and the hearing with respect thereto, and that the opportunity of any party in interest to review and object to, or otherwise be heard with respect to, the Motion, were adequate and appropriate as to all parties affected by the transactions contemplated thereby; and it is further

ORDERED, that the Motion is granted and the Stipulation is approved; and it is further

ORDERED, that in accordance with Federal Rule of Bankruptcy Procedure 9019, the settlement embodied in the Stipulation is fair and equitable and in the best interests of the Debtor, its estate and its creditors; and it is further

ORDERED, that the parties are directed to comply with the terms of the Stipulation; and it is further

ORDERED, that this Court retain jurisdiction to construe and enforce the terms of this Order.


Dated: _____ __, 2010              _____

                                            United States Bankruptcy Court Judge

2