UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | **Chapter 11** |
| THE EDUCATION RESOURCES INSTITUTE, INC., ) | **Case No. 08-12540(HJB)** |
| ) | |
| Debtor. ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (A) ALLOWING
SECOND JOINT MOTION OF THE EDUCATION RESOURCES INSTITUTE INC.
AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MODIFY
FOURTH AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C.
§1127 AND PLAN SECTION 14.4 AND FOR RELIEF FROM THE JULY 12, 2010
RULINGS, AND (B) CONFIRMING THE MODIFIED FOURTH AMENDED JOINT
PLAN OF REORGANIZATION OF THE EDUCATION RESOURCES INSTITUTE,
INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

WHEREAS, The Education Resources Institute, Inc. ("TERI" or the "Debtor"), and the

Official Committee of Unsecured Creditors of the Debtor appointed in this chapter 11 case (the

"Committee"), as "proponents of the plan" within the meaning of section 1129 of Title 11 of the

United States Code (the "Bankruptcy Code") filed the Joint Plan of Reorganization of The

Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors on

September 22, 2009 [Docket No. 891], and thereafter filed the First Amended Joint Plan of

Reorganization of The Education Resources Institute, Inc. and the Official Committee of

Unsecured Creditors on October 22, 2009 [Docket No. 924], the Second Amended Joint Plan of

Reorganization of The Education Resources Institute, Inc. and the Official Committee of

Unsecured Creditors on February 7, 2010 [Docket No. 979], the Third Amended Joint Plan of

Reorganization of The Education Resources Institute, Inc. on February 12, 2010 [Docket No.

998], the Fourth Amended Joint Plan of Reorganization of The Education Resources Institute,

Inc. and the Official Committee of Unsecured Creditors on February 25, 2010 [Docket No. 1013]

(the "February 2010 Plan"), the Modification of the Fourth Amended Joint Plan of

Reorganization with Respect to Classes 3M and 3N (the "MBIA Modification") [Docket No.

1063] and the Modified Fourth Amended Joint Plan of Reorganization as of August 26, 2010

[Docket No. 1139] (the "August 2010 Plan")[1];

WHEREAS, on March 5, 2010, this Court held a hearing on the adequacy of the

Disclosure Statement for the February 2010 Plan; and

WHEREAS, on March 8, 2010, this Court entered an order that, among other things, (a)

approved the Disclosure Statement, (b) temporarily allowed claims for the purpose of accepting

or rejecting the February 2010 Plan, (c) established procedures for confirmation of the February

2010 Plan (d) established solicitation and voting procedures in connection with the solicitation of

votes to confirm the February 2010 Plan and (e) approved forms of notices and ballots (the

"Solicitation Order"); and

WHEREAS, a Solicitation Package containing: (a) a Notice of (i) the Order Approving

the Disclosure Statement, (ii) the Confirmation Hearing on the February 2010 Plan, and (iii) the

Deadline for Filing Objections to the February 2010 Plan (the "Confirmation Hearing Notice");

(b) the Disclosure Statement (with exhibits, including the February 2010 Plan); (c) applicable

ballot(s); (d) a notice that the Indenture Trustee prepared for each Securitization Trust or certain

Other Trusts, together with a brief summary of the bankruptcy proceedings and the February

2010 Plan prepared by First Marblehead Data Services, Inc., as administrator for such Trusts (the

---

[1] All capitalized terms used by not otherwise defined herein shall have the meanings ascribed to them in the August 2010 Plan.

2

"Frequently Asked Questions"); and (e) a pre-addressed postage-paid return envelope, was

mailed to all entities entitled to vote to accept or reject the February 2010 Plan on March 22,

2010, within ten (10) business days of the entry of Solicitation Order; all as set forth in the

Affidavit of Epiq Bankruptcy Solutions, LLC, sworn to by Christina F. Pullo on April 1, 2010

(the "Solicitation Affidavit"), and which service was adequate and proper as provided by Federal

Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3017(d); and

  WHEREAS, the Debtor filed the affidavits of publication of Epiq Bankruptcy Solutions,

LLC sworn to on April 1, 2010, attesting to the fact that the Confirmation Hearing Notice was

published in accordance with the Solicitation Order; and

  WHEREAS, on April 9, 2010, the Debtor filed the first Plan Supplement with respect to

the February 2010 Plan and filed the remaining documents of the Plan Supplement on April 23,

2010; and

  WHEREAS, on April 27, 2010, the Debtor filed the Affidavit of Jane Sullivan sworn to

on April 27, 2010, attesting and certifying the method and results of the ballot tabulation for the

February 2010 Plan (the "Voting Certification"); and

  WHEREAS, two objections to confirmation of the February 2010 Plan were timely filed

and served (collectively the "Objections"); and

  WHEREAS, on April 27, 2010, the Debtor filed (i) the Memorandum in Support of

Confirmation of the Fourth Amended Joint Plan of Reorganization of The Education Resources

Institute, Inc. and the Official Committee of Unsecured Creditors (the "Confirmation

Memorandum"), (ii) the Affidavit of Amy W. Bizar in Support of Confirmation of Fourth

Amended Joint Plan of Reorganization of The Education Resources Institute, Inc. and the

Official Committee of Unsecured Creditors (the "Bizar Affidavit"), (iii) the Affidavit of James

3

A. Peko in Support of Confirmation of Fourth Amended Joint Plan of Reorganization of The Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors (the "Peko Affidavit"), (iv) the Affidavit of Alan D. Blair in Support of Confirmation of Fourth Amended Joint Plan of Reorganization of The Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors (the "Blair Affidavit"), (v) the Supplemental Memorandum in Response to the Objection of Nellie Mae Education Foundation, Inc. to Confirmation of the Fourth Amended Joint Plan of Reorganization (the "Supplemental Memorandum"), which included as exhibits (x) the Supplemental Affidavit of James A. Peko in Response to the Objection of Nellie Mae Education Foundation, Inc. to Confirmation of the Fourth Amended Plan of Reorganization (the "Supplemental Peko Affidavit") and (y) the Supplemental Affidavit of Amy W. Bizar in Response to the Objection of Nellie Mae Education Foundation, Inc. to Confirmation of the Fourth Amended Plan of Reorganization (the "Supplemental Bizar Affidavit"), (vi) the Voting Certification and (vii) the Affidavit of Mark A. Renzi Relative to Confirmation of the Fourth Amended Joint Plan of Reorganization (the "Renzi Affidavit"); and

WHEREAS, a Confirmation Hearing on the February 2010 Plan was held on April 28, 2010 (the "April 2010 Confirmation Hearing"); and

WHEREAS, on June 9, 2010, the Plan Proponents filed the Joint Motion to Modify the Fourth Amended Joint Plan of Reorganization Post-Confirmation Pursuant to Section 1127 of the Bankruptcy Code (the "Motion to Modify Fourth Amended Plan"); and

WHEREAS, four objections to approval of the Motion to Modify Fourth Amended Plan were timely filed and served; and

4

WHEREAS, a hearing to consider the Motion to Modify Fourth Amended Plan was held on July 12, 2010; and

WHEREAS, the Motion to Modify the Fourth Amended Plan was denied by this Court on July 12, 2010; and

WHEREAS, On August 26, 2010, the Plan Proponents filed the Second Joint Motion of The Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors to Modify Fourth Amended Joint Plan of Reorganization Pursuant to 11 U.S.C. §1127 and Plan Section 14.4 and for Relief from the July 12, 2010 Rulings (the "Second Motion to Modify Fourth Amended Plan"); and

WHEREAS, the August 2010 Plan was filed on August 30, 2010 [Docket No. 1139]; and

WHEREAS, the August 2010 Plan amends and restates the February 2010 Plan as more fully described in the Second Motion to Modify Fourth Amended Plan; and

WHEREAS, a hearing to consider the Motion to Modify Fourth Amended Plan was held on August 31, 2010; and

WHEREAS, the proposed solicitation procedures set forth in the Second Motion to Modify Fourth Amended Plan were granted in the Order Authorizing Plan Proponents to Proceed With Second Joint Motion of Plan Proponents to Modify the February 2010 Plan, Approving Disclosure, Establishing Procedure to Permit Eligible Creditors to Change Their Votes and Scheduling Confirmation Hearing on September 2, 2010 (the "Second Solicitation Procedures Order"); and

WHEREAS, a supplemental Solicitation Package (the "Supplemental Solicitation Package") containing: (a) the Second Motion to Modify Fourth Amended Plan, (b) the August 2010 Plan, (c) a blackline comparison of the February 2010 Plan to the August 2010 Plan, (d) the

5

Second Solicitation Procedures Order, (e) the Supplemental Disclosure, (f) the Notice of Order

Authorizing Plan Proponents To Proceed with Second Joint Motion of Plan Proponents to

Modify Fourth Amended Joint Plan of Reorganization Pursuant to 11 U.S.C. §1127 and Plan §

14.4. Approving Disclosure Permitting Eligible Creditors to Change Their Votes and Scheduling

a Confirmation Hearing, (g) applicable ballot(s); (h) a notice prepared by the Indenture Trustee

for the Securitization Trusts and certain Other Trusts; and (i) a pre-addressed postage-paid return

envelope, was mailed to all entities entitled to change their vote to accept or reject the August

2010 Plan on September 13, 2010; which service was adequate and proper as provided by

Bankruptcy Rule 3017(d); and

WHEREAS, on October 13, 2010, the Nellie Mae Education Foundation, Inc. ("Nellie

Mae") filed an objection to the August 2010 Plan; and

WHEREAS, on October 15, 2010, the Debtor filed the (a) Supplemental

Memorandum in Support of Confirmation of the Modified Fourth Amended Joint Plan of

Reorganization of The Education Resources Institute, Inc. and The Official Committee of

Unsecured Creditors as of August 26, 2010 ("Supplemental Memorandum"), (b) Supplemental

Affidavit of James A. Peko, principal at Grant Thornton LLP, (c) Supplemental Affidavit of

Amy W. Bizar, Senior Vice President and General Counsel of The Education Resources

Institute, Inc., (d) an Amended and Restated Exhibit G (Initial Board of Directors of Reorganized

TERI) and an Amended and Restated Exhibit H (Initial Officers of Reorganized TERI); (e) the

Affidavit of Plan Modification Solicitation Mailing of Christine Azzaro (the "Second Solicitation

Certification") and (f) the Declaration of Jane Sullivan on behalf of Epiq Bankruptcy Solutions,

LLC Regarding Voting On, and Tabulation of Ballots Accepting and Rejecting the Fourth

Amended Joint Plan of Reorganization of The Education Resources Institute, Inc. and the

Official Committee of Unsecured Creditors (the "Second Voting Affidavit"); and

WHEREAS, a Confirmation Hearing on the August 2010 Plan was held on October 18,

2010 (the "October Confirmation Hearing").

NOW, THEREFORE, upon (a) all the evidence proffered or adduced at, memoranda and

Objections filed in connection with, and arguments of counsel made at, the April 2010

Confirmation Hearing and the October Confirmation Hearing, and (b) the entire record of this

Chapter 11 Case; and after due deliberation thereon and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      This Court has jurisdiction over the Chapter 11 Case pursuant to sections 157 and

1334 of title 28 of the United States Code.  Venue is proper pursuant to sections 1408 and 1409

of title 28 of the United States Code.  Confirmation of the August 2010 Plan is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to

determine whether the August 2010 Plan complies with the applicable provisions of the

Bankruptcy Code and should be confirmed.

B.      This Court takes judicial notice of the docket of the Chapter 11 Case maintained

by the Clerk of this Court and/or its duly-appointed agent, including, without limitation, all

pleadings and other documents filed, all orders entered, and evidence and argument made,

proffered, or adduced at the hearings held before this Court during the pendency of the Chapter

11 Case.

---

[2]   Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions
of law shall be construed as findings of fact, when appropriate.

DM3\1524622.4

C.    The Debtor has provided good and sufficient notice to the Office of the Attorney

General of the Commonwealth of Massachusetts ("AG") required by the Second Solicitation

Procedures Order, and no further notice to the AG is required pursuant to the Second Solicitation

Procedures Order.

D.    The Plan Proponents have complied in all material respects with the requirements

of the Solicitation Order and the Second Solicitation Procedures Order.

E.    The Disclosure Statement, the February 2010 Plan, the Ballots, and the

Confirmation Hearing Notice, which were transmitted and served as set forth in the Solicitation

Affidavit, were transmitted and served in compliance with all applicable requirements of due

process, the Bankruptcy Code, the Solicitation Order, the Bankruptcy Rules, and any other

requirements of the Local Rules of this Court, and such transmittal and service were adequate

and sufficient, and no other or further notice is or shall be required.

F.    Votes to accept and reject the February 2010 Plan were solicited and tabulated

fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy

Rules, the Solicitation Order, and industry practice.

G.    The Supplemental Solicitation Package was transmitted and served as set forth in

the Second Solicitation Certification, and complied with all applicable requirements of due

process, the Bankruptcy Code, the Second Solicitation Procedures Order, the Bankruptcy Rules,

and any other requirements of the Local Rules or of this Court, and such transmittal and service

were adequate and sufficient, and no other or further notice is or shall be required.

H.    Each Creditor (including, without limitation, the applicable Voting Control Party

of certain Securitization Trusts, KeyCorp Trusts and Other Trusts) who voted on the February

2010 Plan was given the opportunity to change its vote to accept or reject the August 2010 Plan.

and the votes in respect of the August 2010 Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Second Solicitation Procedures Order.

I.      Pursuant to the Second Solicitation Procedures Order, Creditors had until October 13, 2010 (the "Deadline to Change Vote") to submit ballots in respect of the August 2010 Plan.

J.      The August 2010 Plan pursuant to this Order is deemed to incorporate the Modification of the Fourth Amended Joint Plan of Reorganization with Respect to Classes 3M and 3N and such modification satisfied the requirements of section 1127 of the Bankruptcy Code.

K.      The August 2010 Plan is the "plan" within the meaning of 11 U.S.C. §1127(a), and complies with the requirements of 11 U.S.C. §1127(a).

L.      The August 2010 Plan satisfies and complies with 11 U.S.C. §1127(a) and meets the requirements of 11 U.S.C. §§1122 and 1123.

M.      The Plan Proponents have satisfied and complied with the applicable provisions of 11 U.S.C. §1127, including, as set forth in 11 U.S.C. §1127(c) and (f)(2), with 11 U.S.C. §1125 with respect to the August 2010 Plan.

N.      All objections to confirmation of the August 2010 Plan have been overruled or resolved consensually.

O.      In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the August 2010 Plan designates six (6) Classes of Claims and various sub-classes, that are each treated as a separate class. The Claims placed in each Class are substantially similar to other Claims, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the August

DM3\1524622.4

2010 Plan, and such Classes do not unfairly discriminate between holders of Claims. The August 2010 Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

P.    The August 2010 Plan specifies that Classes 1 and 6 are unimpaired under the August 2010 Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

Q.    The August 2010 Plan designates Classes 2b, 2d - 2p, 3a - 3q, 4a - 4k, and 5 as impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

R.    The August 2010 Plan provides for the same treatment by the Debtor for each Claim in each respective Class unless the holder of a particular Claim has agreed to a less favorable treatment of such Claim, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

S.    The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the August 2010 Plan's implementation by providing for the transfer of assets to the Plan Trust and by the retention of the Reorganized TERI Assets to fund the Reorganized Debtor's non-profit mission and ancillary loan related business, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

T.    Reorganized TERI will adopt the Reorganized Articles of Incorporation and Reorganized By-laws. Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

U.    The August 2010 Plan contains only provisions that are consistent with the interests of creditors with respect to the manner of selection of any officer, director, or trustee under the Plan in accordance with section 1123(a)(7).

DM3\1524622.4

V.      The August 2010 Plan's provisions regarding the treatment of Executory

Contracts and Unexpired Leases are permissible discretionary provisions under section

1123(a)(6).

W.      The settlements proposed in the August 2010 Plan, including the Make and Wait

Lender Settlement, the Make and Wait Lien Dispute Settlement, the Make and Hold Settlement,

the Securitization Trust Settlement (including the resolution of the Unencumbered Loans Dispute

and the resolution of the Pre-Petition Recoveries Dispute), the Key Access Program Settlement,

and the Restricted Charitable Funds Carve-out, are consistent with the Bankruptcy Code and

with applicable law, thereby satisfying the applicable provisions of 1123(b).

X.      The Make and Wait Lender Settlement (including the resolution of the Make and

Wait Lien Dispute for certain Lenders) is fair, reasonable and in the best interest of the Debtor's

estate and is appropriate in light of the relevant factors, thereby satisfying the requirements of

section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

Y.      The Securitization Trust Settlement is fair, reasonable and in the best interest of

the Debtor's estate and is appropriate in light of the relevant factors, thereby satisfying the

requirements of section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

Z.      The settlement set forth in the MBIA Stipulation Regarding the Modification of

the Fourth Amended Plan of Reorganization with Respect to Claims of Class 3M and 3N is fair,

reasonable and in the best interest of the Debtor's estate and is appropriate in light of the relevant

factors, thereby satisfying the requirements of Section 1123(b) of the Bankruptcy Code and

Bankruptcy Rule 9019.

11

AA.   The Key Access Program Settlement is fair, reasonable and in the best interest of the Debtor's estate and is appropriate in light of the relevant factors, thereby satisfying the requirements of section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

BB.   The Restricted Charitable Trust Carve-out settlement and permitted use of the Restricted Charitable Funds pursuant to the August 2010 Plan are fair, reasonable and in the best interest of the Debtor's estate and appropriate in light of the relevant factors, thereby satisfying the requirements of section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

CC.   The release, injunction and exculpation provisions of Article XII, Sections 12.4(b)-(d) of the August 2010 Plan are consistent with the Bankruptcy Code and with applicable law, thereby satisfying the applicable provisions of 1123(b).  The August 2010 Plan satisfies the requirements for confirmation set forth in section 1123 of the Bankruptcy Code.

DD.   Based upon the record of these proceedings, findings of fact and conclusions of law, the August 2010 Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(l) of the Bankruptcy Code.

EE.   The August 2010 Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

FF.   The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

1.   The Debtor is a proper debtor under section 109 of the Bankruptcy Code.

2.   The Plan Proponents have complied with applicable provisions of the Bankruptcy Code.

3.   The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and the Second Solicitation Procedures Order in transmitting the February 2010 Plan, the August 2010 Plan, the Disclosure Statement, the Supplemental Disclosure, the Ballots, and related documents and notices and in

soliciting and tabulating votes on the February 2010 Plan and the August 2010 Plan.

GG.    The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Plan Proponents' good faith is evident from the facts and records of this Chapter 11 Case, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The August 2010 Plan contemplates the transfer of the Plan Trust Assets to the Plan Trust for the purpose of liquidating and distributing its assets and rehabilitating the Debtor's business through the restructuring of its debt and liabilities by terminating its existing guaranty business and emerging from bankruptcy focused on its not-for-profit, college access mission and ancillary student loan-related services.

HH.    Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the August 2010 Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

II.    The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as initial directors or officers of Reorganized TERI after confirmation of the August 2010 Plan have been fully disclosed in the Plan Supplement and/or disclosed pursuant to testimony during the Confirmation Hearing, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against the Debtor and with public policy. The identity of any insiders that will be employed by Reorganized TERI and the nature of their compensation were disclosed in the Plan Supplement and at the Confirmation Hearing.

13

JJ.    The August 2010 Plan does not provide for the change of any rate that is within

the jurisdiction of any governmental regulatory commission after the occurrence of the Effective

Date. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in this Chapter 11 Case.

KK.    The August 2010 Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Each

holder of a Claim in an impaired class either has accepted or is deemed to have accepted the

August 2010 Plan or will receive or retain under the August 2010 Plan, on account of such Claim

or Interest, property of a value, as of the Effective Date, that is not less than the amount that such

holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy

Code on such date.

LL.    Classes 1 and 6 are conclusively presumed and deemed to have accepted the

August 2010 Plan under section 1126(f) of the Bankruptcy Code. All impaired classes have

voted to accept the August 2010 Plan in accordance with sections 1126(c)(d) and section 1127(d)

of the Bankruptcy Code. No Class has voted to reject the August 2010 Plan.

MM.    The treatment of Administrative Claims and Priority Tax Claims under the

August 2010 Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).

NN.    At least one Class of Claims against the Debtor that is impaired under the August

2010 Plan has accepted the August 2010 Plan, determined without including any acceptance of

the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the

Bankruptcy Code.

OO.    The August 2010 Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The

Debtor has the ability to transfer the Plan Trust Assets to the Plan Trust. Reorganized TERI

appears to be viable and Confirmation of the August 2010 Plan is not likely to be followed by

liquidation, or the need for further financial reorganization of, Reorganized TERI.

14

PP.   All fees payable under section 1930 of Title 28, United States Code, as determined by the Bankruptcy Court, have been paid or will be paid on the Effective Date pursuant to Article II, Section 2.3 of the August 2010 Plan, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

QQ.   The August 2010 Plan provides that on or after the Effective Date, Reorganized TERI will continue to pay all retiree benefits of the Debtor (if any) thus satisfying the requirements of section 1129(a)(13) of the Bankruptcy Code.

RR.   The Debtor has complied with all applicable state and federal restrictions on transfers by not for profit entities, thus satisfying the requirements of section 1129(a)(16) of the Bankruptcy Code.

SS.   The principal purpose of the August 2010 Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

TT.   Article VIII of the August 2010 Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of section 365(b) of the Bankruptcy Code.

UU.   Based on the record before this Court, the Plan Proponents and their respective directors, officers, employees, members, agents, advisors, accountants, attorneys, agents, and other representatives have acted in "good faith" within the meaning of Bankruptcy Code section 1125(e) in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the February 2010 Plan and the August 2010 Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XII, Section 12.4 of the Plan.

DM3\1524622.4

VV.    The release, exculpations, limitation of liability, and injunction provisions
contained in the August 2010 Plan are fair and equitable, are given for valuable consideration,
were properly noticed to holders of Claims and other interested parties in accordance with the
requirements of due process and the applicable provisions of the Bankruptcy Code and
Bankruptcy Rules and are in the best interests of the Debtor and its Estate, and such provisions
shall be effective and binding upon all persons and entities to the full extent provided in the
August 2010 Plan.

## DECREE

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED
THAT:**

1.    The Second Motion to Modify Fourth Amended Plan shall be and hereby is
**ALLOWED**.

2.    The August 2010 Plan is approved and confirmed under Bankruptcy Code section
1129. The terms of the August 2010 Plan and the Plan Supplement are incorporated by reference
into and are an integral part of the August 2010 Plan and this Confirmation Order.

3.    Notwithstanding anything in this Order or the August 2010 Plan to the contrary,
this Order, the August 2010 Plan, and the transfer of the Plan Trust Assets to the Plan Trust or
into escrow shall not prejudice, discharge, have a res judicata or other preclusive effect on or
otherwise alter, amend or modify any causes of action or claims to assets asserted by Nellie Mae
in its Adversary Proceeding (Adv. Case No. 10-01034) (the "Nellie Mae Adversary Proceeding")
currently pending before this Court.

4.    Section 6.11 of the Plan is hereby amended and restated in its entirety to provide
as follows: On the Effective Date (or as soon thereafter as reasonably practicable) all property of
the Estate that Nellie Mae Education Foundation, Inc. ("Nellie Mae") claims in the Nellie Mae

16

Adversary Proceeding, comprised of certain defaulted loans that were allegedly transferred to the

Debtor prior to the Commencement Date (but as to which Nellie Mae claims ownership, which

claims are disputed by the Debtor) and certain recoveries on those loans received by the Debtor

both before and after the Commencement Date, shall, (i) in the case of Cash, be transferred to

U.S. Bank National Association ("U.S. Bank") (or such other third party escrow agent mutually

agreed upon by Nellie Mae and the Plan Trustee) in its capacity as escrow agent (the "Escrow

Agent") and held by the Escrow Agent in escrow pursuant to the terms of an escrow agreement

(the "Escrow Agreement") among the Escrow Agent, Nellie Mae and the Plan Trustee and (ii) in

the case of defaulted loans, be held by the Reorganized Debtor or the Plan Trustee subject to the

Claims and rights asserted by Nellie Mae, with any recoveries (net of costs of collection) on such

defaulted loans received after the Effective Date to be transferred to the Escrow Agent to be held

in escrow by the Escrow Agent pursuant to the Escrow Agreement on the same terms as Cash

transferred on the Effective Date to the Escrow Agreement.  The Escrow Agreement shall be

mutually acceptable to the Escrow Agent, Nellie Mae and the Plan Trustee.  Such escrowed

funds and defaulted loans (i) shall be held in the applicable escrow account created under the

Escrow Agreement, in the case of Cash, or by the Reorganized Debtor or the Plan Trustee, in the

case of defaulted loans, to be released upon the earlier of (1) one or more Final Orders of the

Bankruptcy Court or (2) pursuant to joint written instruction of the Plan Trustee and Nellie Mae;

(ii) shall be invested by the Escrow Agent in accordance with joint written instructions of the

Plan Trustee and Nellie Mae, and investment earnings on such funds shall be added to the

escrow account and released as provided above, and (iii) shall be subject to such other matters as

shall be agreed to by the parties to such escrow agreement (including payment of customary fees

and expenses of the Escrow Agent and other bank charges).  Notwithstanding such transfer of

17

funds to the escrow account or accounts, or the retention of such defaulted loans subject to the

rights and claims of Nellie Mae, each of the Plan Trustee and Nellie Mae reserve all rights, and

such transfer(s) to the escrow account or accounts are subject to the rights of the Plan Trustee

and Nellie Mae including, without limitation, the rights of the parties with respect to the extent,

priority, validity or existence of any alleged security interest in or ownership of such defaulted

loans, recoveries and funds.

5.    Notwithstanding anything in this Order or the August 2010 Plan to the contrary,

the transfer of any cash or other property to the Plan Trust or into escrow on the Effective Date

pursuant to the terms of the August 2010 Plan shall not cut off any tracing required of Nellie

Mae and no tracing from and after the Effective Date shall be required in the Nellie Mae

Adversary Proceeding.

6.    The August 2010 Plan is deemed modified by the Modification dated April 21.

2010 providing for the treatment of Claims classified as Class 3M and 3N pursuant to the terms

of the Stipulation (the "MBIA Stipulation") with MBIA Insurance Corporation, as Control Party,

under certain indentures of The National Collegiate Trust 2001-CP1 ("2001-CP1") and The

National Collegiate Trust 2002-CP1 ("2002-CP1" and together with 2001-CP1, the "MBIA

Trusts"). As set forth on the record at the April 2010 Confirmation Hearing, the MBIA

Stipulation is approved with the following further modifications: (1) the release and exculpation

provisions set forth in the MBIA Stipulation shall be deemed to include U.S. Bank National

Association, in its capacity as Trustee under the Indentures for the MBIA Trusts and applicable

governing documents governing the MBIA Trusts and (2) in the event a Pledged Account of one

of the MBIA Trusts is "Depleted" (as that term is defined in the Stipulation), MBIA shall

designate U.S. Bank National Association, in its capacity as Trustee (or such other person who

may be then acting as Trustee under the Indentures for the MBIA Trusts), as the party to receive any nominal amounts remaining in such Pledged Account. In accordance with the MBIA Stipulation and notwithstanding Schedule B to the August 2010 Plan, Class 3n (NCSLT 2002-CP1) and not Class 3m (NCSLT 2001-CP1) shall have an Allowed Claim of $300,000.

7.    The August 2010 Plan shall bind each and every holder of a Claim against the Debtor and its successors and assigns, including, without limitation, with respect to a Securitization Trust, KeyCorp Trust and Other Trust, the Indenture Trustee, the KeyCorp Trust Parties, owner trustee, Administrator and holders of notes or bonds issued by such Trusts, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan, is included in the Schedules or has filed a proof of claim or interest.

8.    Pursuant to the terms of the August 2010 Plan, the Make and Wait Lender Settlement, Make and Hold Settlement, Securitization Trust Settlement and Key Access Program Settlement are deemed approved pursuant to Rule 9019 of the Bankruptcy Rules. Any property transferred pursuant to the terms of the August 2010 Plan (including, without limitation, Cash, defaulted loans or distributions in respect of Allowed Claims) in respect of such Make and Wait Lender Settlements, Make and Hold Settlements, Securitization Trust Settlements and Key Access Program Settlements will be free and clear of any and all liens, claims and encumbrances. Nothing in the August 2010 Plan or this Order shall impair the charging lien of the applicable indenture trustee, trustee or administrator under its respective indenture or other governing document.

9.    The amounts, priorities, secured status, and classifications of Claims for purposes of the distributions to be made under the August 2010 Plan shall be governed solely by the terms of the Plan. Except as set forth in the August 2010 Plan, including the Exhibits thereto, or this

19

Order, no entity shall have a claim against or any right, title or interest in any asset of the Debtor, the Debtor in Possession, Reorganized TERI or the Plan Trust. **In the event that there is any inconsistency or conflict between the Disclosure Statement or Supplemental Disclosure and the Plan, the terms of the August 2010 Plan shall control**. The amounts, priorities, secured status, and classifications set forth on the Ballots tendered to or returned by the Debtor's creditors in connection with voting on the August 2010 Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the August 2010 Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual amount, priority, secured status, or classification of such Claims under the August 2010 Plan for distribution purposes, and (c) shall not be binding on the Debtor or Reorganized Debtor for any purpose other than with respect to voting on the August 2010 Plan.

10.    The August 2010 Plan and its provisions shall be binding upon the Debtor, the Reorganized Debtor, the Plan Trust, the Plan Trustee, each and every entity acquiring or receiving property or a distribution under the Plan, and each and every holder of a Claim against the Debtor, including all federal, state, and local governmental entities, whether or not the Claim of such holder is impaired under the August 2010 Plan and whether or not such holder or entity has accepted the August 2010 Plan.

11.    Except as otherwise provided in the August 2010 Plan or this Order, upon the Effective Date, the Plan Trust Assets shall vest in the Plan Trust and the Reorganized TERI Assets shall vest in Reorganized TERI, as provided in the August 2010 Plan, free and clear of all Claims, liens, encumbrances, charges, rights, alleged rights and other interests and alleged interests, and all such Claims, liens, encumbrances, charges, and other interests shall be discharged and extinguished, provided, however that Restricted Charitable Funds shall remain

subject to all charitable use restrictions enforceable under non-bankruptcy law unless the use of such Restricted Charitable Funds are otherwise permitted pursuant to the terms of the August 2010 Plan.

12.    Pursuant to Article VIII, Section 8.1 of the Plan, and except as otherwise provided in the August 2010 Plan, as of the Confirmation Date, all executory contracts and unexpired leases that existed between the Debtor and any Person or entity prior to the Commencement Date are rejected, except for any executory contract or unexpired lease (a) that has been assumed pursuant to an order of this Court entered prior to the Effective Date, (b) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date or (c) that is specifically designated as a contract or lease to be assumed on schedules contained in the Plan Supplement.

13.    Pursuant to the Order Authorizing The Education Resources Institute, Inc. to Reject and Terminate Certain Executory Contracts and Approving Settlement Under Fed. R. Bankr. P. 9019 of Claims and Disputes Over the Consequences Thereof – Wachovia Bank of Delaware, N.A. – Loan Origination and Guaranty Agreements, dated October 15, 2008, the provisions of paragraph 7(b) of such Order shall survive entry of this Confirmation Order and Wells Fargo Bank, N.A., as successor by merger to Wachovia Bank National Association, shall be an intended beneficiary and shall have the right to enforce such provision.

14.    Stephen S. Gray of CRG Partners is hereby appointed Plan Trustee and is authorized to enter into any agreement or execute any document necessary to fulfill his duties as Plan Trustee, including without limitation, authorization to enter into the Plan Trust Agreement and Collection Contract.

21

15.    TERI and Reorganized TERI and their respective directors, officers, members, the

Plan Trustee and its respective agents and attorneys are authorized and empowered to issue,

execute, deliver, file, or record any agreement, document, or security, including, without

limitation, the documents contained in the Plan Supplement, as modified, amended, and

supplemented, in substantially the form included therein, and to take any action necessary or

appropriate to implement, effectuate, and consummate the August 2010 Plan in accordance with

its terms. or take any or all actions authorized to be taken pursuant to the August 2010 Plan, and

any release. amendment, or restatement of any bylaws, articles of organization, charter or other

organization documents of the Debtor and Reorganized Debtor, whether or not specifically

referred to in the August 2010 Plan or the Plan Supplement, and, except as may be specifically

set forth in the August 2010 Plan, without further notice to any entities or order of the Court, and

any or all such documents shall be accepted by each of the respective state filing offices and

recorded in accordance with applicable state law and shall become effective in accordance with

their terms and the provisions of state law. U.S. Bank National Association (in its capacity as

Indenture Trustee or as custodian, bank or agent for a Collateral Account or the "Segregated

Recoveries Account" established under the order of the Bankruptcy Court dated June 13, 2008,

as the case may be) and the Administrator for each Securitization Trust or Other Trust (solely in

its respective capacity as administrator) are each hereby authorized (but not directed; without

prejudice to the option of Reorganized TERI or the Plan Trustee to seek direction) to take such

actions as directed by Reorganized TERI or the Plan Trustee, as may be necessary for such

Administrator or U.S. Bank National Association, as applicable, to implement and comply with

the terms of the August 2010 Plan, including, without limitation, executing any instruments and

taking any other action necessary to release or convey property, including without limitation,

financed student loans from the lien of the applicable indenture or trust agreement with the
Securitization Trust or Other Trust as required by the August 2010 Plan (and the settlements
therein contained). Reorganized TERI and the Plan Trustee are authorized to file any
termination statements necessary to terminate any UCC-1 financing statements naming the
Debtor as debtor and a Creditor (including for such purposes a Securitization Trust or Other
Trust and/or the Indenture Trustee) as secured party.

16.     The Plan Trustee is authorized (but not directed) to retain the services of FMER
without further order of this court on terms mutually agreeable to the parties, including in respect
of a transition agreement for the servicing and collection of defaulted loans.

17.     TERI, the Plan Trustee, and/or their respective agents (regardless of whether
TERI and the Plan Trustee cooperate or consent) may, in their sole discretion, file or record this
Order in any domestic or foreign jurisdiction seeking recognition and/or enforcement of the
terms of the August 2010 Plan; provided, however, that nothing herein shall require TERI, the
Plan Trustee, and/or their respective agents to take any such actions under any circumstances.

18.     The Plan Trust will pay all fees required to be paid to the Office of the United
States Trustee pursuant to section 1930 of Title 28 of the United States Code from and after the
Effective Date until a final decree is entered closing the Chapter 11 Case.

19.     The documents contained in the Plan Supplement and any amendments,
modifications, and supplements thereto, and all documents and agreements introduced into
evidence by the Debtor in support of confirmation of the August 2010 Plan (including all
exhibits and attachments thereto and documents referred to therein), and the execution, delivery,
and performance thereof by the Debtor, Reorganized TERI or the Plan Trustee, are authorized
and approved. Without need for further order or authorization of the Bankruptcy Court, (i) prior

23

to the Effective Date, the Debtor with the consent of the Creditors' Committee, or (ii) after the

Effective Date, Reorganized TERI or the Plan Trustee without the consent of the Creditors'

Committee are authorized and empowered to make any and all modifications to any and all

documents included as part of the Plan Supplement that do not materially modify the terms of

such documents and are consistent with the August 2010 Plan and this Confirmation Order.

     20.    This Confirmation Order shall constitute all approvals and consents required, if

any, by the laws, rules, or regulations of any state or any other governmental authority with

respect to the implementation or consummation of the Plan and any documents, instruments, or

agreements referred to in, or contemplated by, the Plan, and any amendments or modifications to

any such documents, instruments or agreements, and any other acts referred to in or

contemplated by the August 2010 Plan, the Disclosure Statement, and any documents,

instruments, or agreements referred to in, or contemplated by, the Plan, and any amendments or

modifications to any such documents, instruments or agreements.

     21.    The sale, transfer, assumption and assignment of the Debtor's assets, already

approved by this Court or to be made prospectively pursuant to the August 2010 Plan (including,

without limitation, transfers to the Plan Trust or transfers to Creditors in satisfaction of such

Creditors' Allowed Claims, including in respect of Make and Wait Settlements, Securitization

Trust Settlements and Key Access Program Settlements) are deemed to have been, or to be, in

furtherance of, or in connection with, the August 2010 Plan and shall be exempt from state and

local transfer taxes under section 1146(c) of the Bankruptcy Code to the fullest extent

permissible under applicable law.

     22.    The Plan Trustee shall have all of the rights, powers, benefits and privileges

conferred by Section 12.6 of the Plan and the right, to the exclusion of all others, to make, file

and prosecute objections to Claims with this Court and shall serve such objections upon the

holders of each of the Claims to which objections are made as set forth in Section 7.2 of the

August 2010 Plan.

23.    All entities seeking an award by this Court of compensation for services rendered

or reimbursement for fees and/or expenses incurred prior to and including the Effective Date

under section 330 or 503(b) of the Bankruptcy Code must file their respective final applications

for allowance of compensation for services rendered and reimbursement of expenses incurred

through the Effective Date by no later than the date that is thirty (30) days after the Effective

Date.  Any entity granted such an award by the Bankruptcy Court must be paid in full by the

Plan Trustee, in such amounts as are Allowed, within ten (10) days after the order granting such

award becomes a Final Order.

24.    On and after the Effective Date, any current or former officer, director, member or

employee of the Debtor; any attorney or financial advisor engaged by the Debtor in respect of

Chapter 11 Case; and any attorney, accountant, financial advisor or other professional of the

Creditors' Committee and any members of the Creditors Committee in such capacity are released

by the Debtor Releasors from any and all Claims, obligations, rights, suits, damages, causes of

action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen,

existing or hereafter arising, in law, equity or otherwise, that the Debtor, or any Person or Entity

claiming derivatively through or on behalf of the Debtor would have been legally entitled to

assert in their own right (whether individually or collectively) or on behalf of the holder of any

Claim or other Person or Entity, based in whole or in part upon any act or omission, transaction,

agreement, event or other occurrence taking place on or before the Effective Date other than for

claims based upon gross negligence or willful misconduct; provided, however, that the foregoing

DM3\1524622.4

release does not include a release of any objection or defense that the Debtor Releasors may have with respect to Allowance of any Claim; provided, further, that that nothing in this paragraph shall be deemed to be a release by any of the Debtor Releasors of any Person or Entity of any Causes of Action or of any obligations imposed on any of them pursuant to the August 2010 Plan.

25.    Except as otherwise expressly provided in this Order or the August 2010 Plan, the rights afforded in the August 2010 Plan and the treatment of all Allowed Claims therein shall be in exchange for and in complete satisfaction, settlement, and release of any and all Claims of any nature whatsoever, including any interest, fees, or penalties accrued on or relating to such Claims, whether before or after the Petition Date, against the Debtor, its estate, or any of its property.

26.    Pursuant to Section 12.4 of the August 2010 Plan, as of the Confirmation Date, except as provided in the August 2010 Plan or this Order, all Persons or Entities who, directly or indirectly, have held, hold or may hold Claims against the Debtor or, as to Claims which are derivative of the Debtor and released pursuant to Section 12.4(b) of the August 2010 Plan, the Released Parties, are permanently enjoined from taking any of the following actions on account of any such Claims, debts, interests or liabilities, other than actions brought to enforce any rights or obligations under this August 2010 Plan:  (i) commencing or continuing in any manner any action or other proceeding against the Debtor, the Reorganized Debtor, the Plan Trustee, the Released Parties or their respective properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor, the Plan Trustee, the Released Parties or their respective properties; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor, the Reorganized Debtor, the Plan Trustee,

26

the Released Parties or their respective properties; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor, the Reorganized Debtor, the Plan Trustee, the Released Parties or their respective properties and (v) commencing or continuing, in any manner or any place, any action that does not comply with or is inconsistent with the provisions of the August 2010 Plan or the Confirmation Order. Nothing in the August 2010 Plan or this Order shall be deemed to (a) be a release by any of the Debtor Releasors, or any Person or Entity other than Released Parties, of any Causes of Action; (b) enjoin the prosecution by the Plan Trustee of the Causes of Action (other than to the limited extent provided for in the Plan against the Released Parties); (c) subject to section 5.5(h) of the August 2010 Plan, enjoin any Person or Entity from asserting any defense or claims as a defense in any civil action, including, without limitation, in the Trust Adversary Proceeding; (d) affect the right of a debtor in any bankruptcy case from asserting that any obligation to pay a student loan is dischargeable under section 523(a)(8) of the Bankruptcy Code; (e) affect the rights or obligations of the parties under that certain Stipulation Resolving Claims of First Marblehead Education Resources, Inc., The First Marblehead Corporation, and First Marblehead Data Services, Inc. dated as of October 7, 2010, including with respect to the Database Dispute as defined therein; or (f) enjoin the Nellie Mae Adversary Proceeding. Notwithstanding any language to the contrary herein or in any other document, as to any Entity (including the Released Parties), nothing herein shall impair or enjoin the Plan Trustee from seeking to enforce, or to assert rights and recover damages with respect to any breach of the terms of the August 2010 Plan.

27.      Nothing in this Order or in the August 2010 Plan shall impair or enjoin any Person or entity injured by any willful violation of such injunction from recovering actual

DM3\1524622.4

damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages from the willful violator.

28.    The Debtor, the Released Parties, KeyBank National Association, as Administrator and Master Servicer of the KeyCorp Trusts, The Bank of New York Mellon Trust Co., N.A., as Eligible Lender Trustee and as Indenture Trustee for certain KeyCorp Trusts, The Bank of New York (Delaware), as Owner Trustee for certain KeyCorp Trusts, Deutsche Bank Trust Company Americas, as Indenture Trustee and Owner Trustee for certain KeyCorp Trusts, FMDS, solely in its capacity as Administrator to the Securitization Trusts, U.S. Bank National Association, solely in its capacity as Indenture Trustee, trustee and eligible lender trustee to the Securitization Trusts and Other Trusts, and in any capacity in which it was named as a defendant in the Trust Adversary Proceeding, and as bank or agent with respect to the Collateral Accounts, MBIA Insurance Corporation and Ambac Assurance Corporation, and their respective members and professionals (acting in such capacity), shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of the August 2010 Plan, the Disclosure Statement, the Supplemental Disclosure or any contract, instrument, release or other agreement or document created or entered into in connection with the August 2010 Plan, or any act taken or omitted to be taken in connection with, in contemplation of, during or in any way related to the Chapter 11 Case (all of the foregoing being collectively referred to as the "Exculpated Acts"), except for transactions, acts or omissions (i) as a result of willful misconduct or gross negligence, (ii) with respect to transactions occurring pursuant to the "Order Pursuant to Sections 105, 362 and 363 of the Bankruptcy Code Authorizing and Directing Debtor to Honor Certain of its Guaranty

Obligations and Purchase Defaulted Loans Using Cash in Certain Pledged Accounts Established

for the Benefit of the Trusts" entered by this Court on June 23, 2008, (iii) occurring pursuant to

the Transition Services Agreement among The First Marblehead Corporation, First Marblehead

Education Resources, Inc. and the Debtor approved by the Bankruptcy Court on June 23, 2008,

or (iv) pursuant to any contracts between or among the Debtor and any entity entered into prior

to the commencement of this Bankruptcy Case. This provision does not exculpate the foregoing

Persons, including the Debtor, from performing their duties under the August 2010 Plan and

effectuating the Plan. Nothing in this Order or section 12.4 of the August 2010 Plan (i)

exculpates the Debtor or Reorganized TERI from performing its obligations under any contract

or agreement not rejected under this Plan pursuant to 11 U.S.C. §365 or (ii) exculpates any

Person from obligations it may owe to any other Person under any contract unrelated to the

Exculpated Acts.

29.     From and after the Effective Date, all holders of Claims that voted in favor of the

Plan or accept distributions under the Plan Trust are deemed to have specifically consented to the

injunctions set forth in Article XII, Section 12.4 of the Plan.

30.     The August 2010 Plan and this Order shall supersede any orders of the

Bankruptcy Court issued prior to the Effective Date that are inconsistent with either the August

2010 Plan or this Order; provided, however, (i) in the event of any inconsistency between the

provisions of the Order Authorizing Debtor, Creditors' Committee, First Marblehead Education

Resources, Inc., The First Marblehead Corporation and First Marblehead Data Services, Inc., to

enter into Stipulation Resolving Claims of First Marblehead Education Resources, Inc., The First

Marblehead Corporation, and the First Marblehead Data Services, Inc., dated October 18, 2010

(the "Order Approving Stipulation") or the Stipulation Resolving Claims of First Marblehead

Education Resources, Inc., The First Marblehead Corporation, and First Marblehead Data

Services, Inc., dated October 7, 2010 (the "FMC Stipulation"), on the one hand, and the August

2010 Plan or this Order, on the other hand, the provisions of the FMC Stipulation or the Order

Approving Stipulation, as applicable, shall govern and (ii) in the event of any inconsistency

between the provisions of the Transition Services Agreement dated May 30, 2008, among the

Debtor, FMC, and FMER (as amended and together with any terms of the Database Agreement

referenced therein as they relate to the Database Dispute (as defined in the FMC Stipulation, the

"TSA"), as such provisions may be interpreted in connection with any consensual or judicial

resolution of the Database Dispute (as defined in the FMC Stipulation) or the June 23, 2008

Order approving the TSA, on the one hand, and the August 2010 Plan or this Order, on the other

hand, the provisions of the TSA or the June 23, 2008 Order approving the TSA, as applicable,

shall govern.

   31. On and after the Effective Date, all transfers, sales and assignments of assets by

the Reorganized Debtor or the Plan Trustee contemplated by the August 2010 Plan (i) are hereby

authorized, ratified and approved subject to the terms of the August 2010 Plan, (ii) are or will be

legal, valid and effective transfers of property, (iii) vest or will vest in the transferee good title to

such property free and clear of all Claims, Interests, and Liens, except those provided for in the

August 2010 Plan or this Order, (iv) do not and will not constitute fraudulent conveyances under

any applicable law and (v) do not and will not subject the Reorganized Debtor or property so

transferred to any liability by reason of such transfer under applicable law or any theory of law

including, without limitation, any theory of successor or transferee liability.

   32. In the event that the Effective Date does not occur, then (i) the August 2010 Plan,

(ii) any document or agreement executed pursuant to the Plan, and (iii) any actions, releases,

DM3\1524622.4

waivers, or injunctions authorized by this Order or any order in aid of consummation of the

August 2010 Plan shall be deemed null and void. In such event, nothing contained in this

Confirmation Order, any order in aid of consummation of the August 2010 Plan, or the August

2010 Plan, and no acts taken in preparation for consummation of the August 2010 Plan, (a) shall

be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other

persons or entities, to prejudice in any manner the rights of the Debtor or any person or entity in

any further proceedings involving the Debtor or otherwise, or to constitute an admission of any

sort by the Debtor or any other persons or entities as to any issue, or (b) shall be construed as a

finding of fact or conclusion of law in respect thereof.

     33.     On or before the fifth (5th) Business Day following the date of entry of this

Confirmation Order, the Debtor shall serve notice of entry of this Confirmation Order pursuant

to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors, the United States Trustee,

and other parties in interest, by causing notice of entry of the Confirmation Order (the "Notice of

Confirmation"), to be delivered to such parties by first-class mail, postage prepaid. The Notice

of Confirmation described herein is adequate under the particular circumstances and no other or

further notice is necessary.

     34.     Within ten (10) Business Days following the occurrence of the Effective Date, the

Reorganized Debtor or Plan Trustee shall file notice of the occurrence of the Effective Date and

shall serve a copy of same on the parties identified in the general service list in the Chapter 11

Case.

     35.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the

provisions of this Confirmation Order, the August 2010 Plan and the Plan Supplement shall

apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

36.     Each term and provision of the August 2010 Plan is valid and enforceable pursuant to its terms. To the extent of any inconsistency between the provisions of the August 2010 Plan and this Order, the terms and conditions contained in this Order shall govern. The provisions of this Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated otherwise by further order of this Court.

Dated: _October 29_, 2010

_____
HONORABLE HENRY J. BOROFF
UNITED STATES BANKRUPTCY JUDGE

32